Deborah R. Rosenthal (# 184241)
drosenthal@simmonsfirm.com
**SIMMONS HANLY CONROY LLC**
100 N. Sepulveda Blvd., Suite 1350
Los Angeles, CA 90245
Phone: (415) 536-3986

Gregory F. Coleman*
greg@gregcolemanlaw.com
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080; Fax: (865) 522-0049

Daniel K. Bryson*
Dan@wbmllp.com
J. Hunter Bryson*
Hunter@wbmllp.com
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan St.
Raleigh, NC 27603
Tel: 919-600-5000; Fax: 919-600-5035
* *pro hac vice*

*Attorneys for Plaintiffs*
*Additional Attorneys on Signature Page*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE MADANI, SHANT BAKALIAN, ERIC WALLEY, RICHARD DEVICO, and ROMSIN OUSHANA on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> VOLKSWAGEN GROUP OF AMERICA, INC., VOLKSWAGEN AG, and AUDI AG, <br><br> Defendants. | Case No.: 4:17-cv-07287-HSG <br><br> **[CORRECTED] FIRST AMENDED CLASS ACTION COMPLAINT** <br><br><br> **DEMAND FOR JURY TRIAL** |

1

**FIRST AMENDED CLASS ACTION COMPLAINT**

2

Plaintiffs[1] Mike Madani, Eric Walley, Richard DeVico and Romsin Oushana ("Plaintiffs"),

3

individually and on behalf of all others similarly situated, by and through the undersigned counsel, hereby

4

set forth their claims against Defendants Volkswagen Group of America, Inc., Volkswagen AG, and Audi

5

AG (collectively, "Defendants" or "Audi") in this class action complaint. Plaintiffs allege the following

6

based upon personal knowledge as to their own acts, and based upon the investigation conducted by their

7

counsel, as to all other allegations:

8

**NATURE OF THE CASE**

9

1.      This proposed class action is brought by Plaintiffs who allege that defective direct-shift

10

gearbox ("DSG") transmissions are installed in the following vehicles models and model years: 2010-

11

2015 Audi S4; 2010-2015 Audi S5; 2010-2015 Audi S6; 2010-2015 Audi S7; 2010-2015 Audi RS5 (the

12

"Class Vehicles") sold or leased to consumers, including Plaintiffs, throughout the United States.

13

2.      The Class Vehicles were sold or leased pursuant to express and implied warranties. Every

14

class vehicle is backed by a 48-month/50,000-mile express New Vehicle Basic Limited Warranty

15

("Limited Warranty"). This warranty expressly covers any repairs needed to correct defects in materials

16

or workmanship, and specifically applies to the engine, transmission and transaxle, drivetrain, front-

17

wheel-drive system, and rear-wheel drive system. This warranty expressly applies to all original

18

purchasers and lessees throughout the United States. These warranties also transfer to subsequent

19

purchasers.

20

3.      The express warranties assured consumers that Audi would repair or replace any part that

21

is defective in materials or workmanship under normal use and the Class Vehicles were properly

22

equipped for the use for which they were intended. At the time each class vehicle was sold or leased,

23

Audi breached its express and implied warranties because each class vehicle was equipped with a

24

dangerous and defective transmission.

25

26

27

28

---

[1] The Complaint, Doc. 1, included Plaintiffs Brian Gillard and Shant Bakalian. Plaintiff Brian Gillard was voluntarily dismissed in March 2018, *see* Doc. 12. Plaintiff Shant Bakalian, likewise, will be voluntarily dismissed concurrent with the filing of this amended complaint.

4.      The transmissions in all of the Class Vehicles are defective. The transmissions cause sudden, rough, unexpected shaking and violent jerking (commonly referred to as "juddering" or "shuddering") when drivers attempt to accelerate Class Vehicles and shift into 2nd, 3rd, or 4th gear and attempt to decelerate. Further, Class Vehicles exhibit clunky downshifting and inhibited gear shifting. For example, the transmissions hesitate before responding to a driver's input on the accelerator pedal, which prevents Class Vehicles from accelerating as intended by the driver, especially when accelerating from a complete stop. The Class Vehicles power surges while driving. The transmissions cause a hard downshift or clunk when drivers either slow down or accelerate at low speed (herein referred to as the "transmission defect"). This defect creates unreasonably dangerous situations while driving and increases the risk of a crash as the driver is unable to accelerate the vehicle when needed or as expected. Often, the defect leaves the driver helpless and unable to sufficiently accelerate in order to keep up with traffic.

5.      The shuddering, juddering, hesitation of acceleration, surge, and hard clunk described above are all manifestations of the transmission defect in the Class Vehicles.

6.      Audi sold, leased, and continues to sell and lease the Class Vehicles despite knowing of the transmission defect and it poses a danger to Class Vehicle drivers and the public.

7.      Audi has chosen financial gain at the expense of the safety of drivers and the public by failing to disclose its knowledge of this critical safety defect to consumers.

8.      Audi knew or should have known about the safety hazard posed by the transmission defect before the sale of the first Class Vehicles from various sources, including but not limited to: pre-market testing, warranty claims, NHTSA, internal complaints, and other sources. These sources of information and knowledge underlie Audi's Technical Service Bulletins acknowledging problems with the transmissions of Class Vehicles. Audi should not have sold, leased, or marketed the Class Vehicles without a full and complete disclosure of the Class Vehicles' transmission defect, and should have voluntarily recalled the Class Vehicles as soon as Audi knew the extent and pervasiveness of the defect.

9.      Plaintiffs bring this action on behalf of themselves and all others similarly situated ("Class," "Subclass," "Class Members," or "Subclass Members,") for Audi's breach of express and implied warranties, Magnuson-Moss Warranty Act, California Legal Remedies Act ("CLRA"), Song-Beverly Consumer Warranty Act violations, California's Unfair Competition Law, declaratory and

equitable relief, and unjust enrichment. Plaintiffs seek damages, injunctive and declaratory relief, restitution, disgorgement of profits, attorneys' fees and costs, and the repair or replacement of Class Vehicles or refund of money paid to own or lease all Class Vehicles in the United States.

## JURISDICTION AND VENUE

10.     The United States District Court for the Northern District of California has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act because there is minimal diversity, the proposed Class and Subclasses each exceeds one hundred members, and the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interests and costs. 28 U.S.C. § 1332(d)(2)(A).

11.     The United States District Court for the Northern District of California can exercise personal jurisdiction over Audi because Audi's actions summarized in this complaint occurred in this District so as to subject them to specific jurisdiction in this District.

12.     The United States District Court for the Northern District of California can exercise supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)-(c). Audi does substantial business in the State of California and within this Judicial District, is registered to and is doing business within the State of California, and otherwise maintains requisite minimum contacts with the State of California. Audi distributes Class Vehicles in this District and receives substantial compensation and profits from the sale and lease of Class Vehicles in this District.  Additionally, more than one of the Plaintiffs are domiciled in the District, purchased a Class Vehicle in this district, and had their vehicle serviced in the District.

## PARTIES

14.     Plaintiff Mike Madani, a proposed Class and Subclass representative, is an adult citizen of California who resides in Rolling Hills Estates (Los Angeles County).

15.     Plaintiff Eric Walley, a proposed Class and Subclass representative, is an adult citizen of California who resides in Walnut Creek (Contra Costa County).

16.     Plaintiff Richard DeVico, a proposed Class and Subclass representative, is an adult citizen of California who resides in San Diego (San Diego County).

17.     Plaintiff Romsin Oushana, a proposed Class and Subclass representative, is an adult

citizen of California who resides in San Jose (Santa Clara County).

18.    Defendant Volkswagen Group of America, Inc. is a corporation organized and in existence under the laws of the State of New Jersey. At all times relevant herein, Volkswagen Group of America, Inc. was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in California and throughout the United States of America.

19.    Defendant Volkswagen AG is a foreign corporation headquartered at Berliner Ring 2 38440 Wolfsburg, Federal Republic of Germany. At all relevant times, Volkswagen AG took part in designing, engineering, manufacturing, testing, marketing, supplying, selling, and distributing motor vehicles, including Class Vehicles, in California, and throughout the United States of America. Through its wholly owned subsidiaries and agents, Volkswagen AG markets its products in a continuous manner in the United States, including California. Volkswagen AG maintains a Detroit Office and a Volkswagen AG Investor Relations office in Herndon, Virginia.

20.    Audi AG is a foreign corporation located at Auto-Union-Str. 2 D-85045, Ingolstadt, Germany. At all relevant times, Audi AG took part in designing, engineering, manufacturing, testing, marketing, supplying, selling, and distributing motor vehicles, including Class Vehicles, in California, and throughout the United States of America. Through its subsidiary, Audi of America, LLC, Audi AG markets its products in a continuous manner in the United States, including California. Audi of America, LLC is the entity through which Audi AG sells Audi Vehicles in the United States. Audi AG maintains its principle place of business in Herndon, Virginia.

## GENERAL ALLEGATIONS

### Audi Knowingly Sold Dangerously Defective Vehicles to Consumers.

21.    Audi began manufacturing Class Vehicles in approximately the middle of 2009.

22.    Class Vehicles were first sold or leased to members of the Class and Subclass in approximately September 2009.

23.    Upon information and belief, Audi was aware, or should have been aware, of the defect present in Class Vehicles before the first Class Vehicle was ever sold. The defect causes the transmission to malfunction in, at minimum, the following ways:  the Class Vehicles hesitate from a stop before

acceleration, surge in acceleration, hard downshift at low speeds, and suddenly shake and jerk violently (commonly known as "juddering" or "shuddering") (collectively, "transmission failures").

24.     Drivers' reports confirm that the transmission failures occur at especially critical points, including but not limited to:  when a driver is trying to accelerate from a stop, often with other cars behind the Class Vehicles; at low speeds when drivers intend to merge with traffic and shift gears to merge onto a highway; when a driver is accelerating to gain speed to drive uphill; when a driver is shifting gears at low speeds; and when a driver is attempting to decelerate the Class Vehicle. The transmission defect, especially in these scenarios, creates a safety risk that can lead to serious accidents, including those resulting in personal injuries or even deaths. The safety risks are to both the Audi drivers, their passengers, and the public.

25.     Audi has issued multiple TSBs that seek to remedy the transmission defect in the Class Vehicles.

26.     In September 2011, Audi issued TSB No. 2027295 to remedy "clacking or knocking issues" that "differ depending on driving situation or temperature." (As shown below.)

34 11 06 2027295/1 September 9, 2011.

**APPLICABLE MODELS AND YEARS**

| Model(s) | Year | VIN Range | Vehicle-Specific Equipment |
|---|---|---|---|
| S4 | 2010 - 2012 | All | S-Tronic Transmission |
| S5 Cabriolet | | | |

## CONDITION

Clacking or knocking noises directly after a load change:

- Overrun to acceleration.

    -OR-

- Acceleration to overrun.

These noises differ depending on driving situation or temperature.

## TECHNICAL BACKGROUND

Knocking noises are heard in the drivetrain.

## PRODUCTION SOLUTION

Not applicable.

## SERVICE

Such noises cannot be avoided and are normal.

It may be possible to reduce the noise by releasing tension on the drive train mountings.

1. Support engine in place using **10-222 A.**
2. Remove belly pan, front wheels, and front fender liners.
3. Remove and replace front motor mount through bolts right and left (Figure 1 and 2), but leave loose until step 5.

27.     On July 19, 2013, in another attempt to remedy the transmission defect suffered by the Class Vehicles, Audi issued TSB No. 2028715, which superseded the prior version issued in February 28, 2012. This bulletin, TSB No. 2028715, was issued to remedy "rough gear changes, both when accelerating and when slowing down" and "rough driving power disruption." (As shown below.)

Reference Number(s): GROUP 37, NO. 13-09 (2028715/2), Date of Issue: July 19, 2013
AUDI:   A3, TT 2004-2014; Q7 2007-2014; A4, A5, A6, A7, A8, and Q5 2006-2014; S4, S5, S6, S7, and RS5 2010-2014
GROUP: 37 - Automatic Transmission - Controls, Case
Superceded Bulletin(s): GROUP 37, NO. 12-40, Date of Issue: February 28, 2012

37 13 09 2028715/2 July 19, 2013. Supersedes Technical Service Bulletin Group 37 number 12-40 dated February 28, 2012.

**APPLICABLE MODELS AND YEARS**

| Model(s) | Year | VIN Range | Vehicle-Specific Equipment |
|---|---|---|---|
| A3, TT | 2004-2014 | All | All with 02E DSG Transmission |
| Q7 | 2007-2014 | All | All with 09D, 0AT or 0C8 AISIN Automatic Transmissions |
| A4, A5, A6, A7, A8, and Q5 | 2006-2014 | All | All with 09L, 09E, 0B6 or 0BK, ZF Automatic Transmissions |
| S4, S5, S6, S7, and RS5 | 2010-2014 | All | All with 0B5 DSG Transmissions |

**CONDITION**

- Rough gear changes, both when accelerating and when slowing down.
- There is a rough driving power disruption that occurs sporadically and lasts for less than a second.

**TECHNICAL BACKGROUND**

After a mechatronics, torque converter, or complete gearbox replacement, the clutches must be adapted to the new component. This requires a gradual move of the clutch linings toward the optimal operating points in the most diverse load conditions. As a result, sporadic driving power disruptions lasting for less than a second or reduced shift comfort are possible over the first 500 miles. This is normal, and these issues will decrease over time.

The issues can also occur if the adaptation values of the gearbox were deleted.

**PRODUCTION SOLUTION**

Not applicable.

**SERVICE**

28.     In November 2013, Audi issued Technical Service Bulletin No. 2030477/6 for the Class Vehicles. In this Technical Service Bulletin, Audi recommended a fix regarding a display that said

"Gearbox malfunction: you can continue driving." Technical Service Bulletin No. 2030477/6 was the sixth TSB issued related to this issue. (As shown below.)



# Technical Service Bulletin

- DTC P179D (Coolant oil valve electrical fault) with symptom code **8030**
- DTC P174C (Partial transmission 1 valve 2 Electrical error ) with symptom code **8026**
- DTC P174A (Valve 3 in the sub-gearbox 1, electric fault) with symptom code **8939**
- DTC P174E (Valve 3 in the sub-gearbox 2, electric fault) with symptom code **8940**
- DTC P1740 (Clutch temperature monitoring) with symptom code **8031**

- The following message appears in the information display: "Gearbox malfunction: you can continue driving".
- One or more of the following fault entries are stored in the transmission control module, J217 (address word 02):
  - DTC P17D8 (Torque limitation because of clutch temperature) with symptom code **8040**
  - DTC P0726 (RPM signal of engine control unit, implausible signal) with symptom code **7980**
  - DTC P174B (Valve 4 in the sub-gearbox 1, electric fault) with symptom code **8027**
  - DTC P174F (Valve 4 in the sub-gearbox 2, electric fault) with symptom code **8028**
  - DTC P179C (Main pressure valve, electric fault) with symptom code **8029**

29.     On October 14, 2016, TSB No. 2030477/9 was issued in an attempt to remedy the transmission defect suffered by the Class Vehicles. This TSB was added because "[g]earbox malfunction: you can continue driving" appeared on drivers' screens. Further, the appropriate repair was an "improved circuit board for the mechatronics unit." (As shown below.)

Back To Article

**GEARBOX MALFUNCTION MESSAGE IN CLUSTER (DTCS P17D800, P179D00, P174000, P174C, P174B, P174F, P179C, P174A, P174E)**

**TECHNICAL SERVICE BULLETIN**

Reference Number(s): GROUP 35, NO. 16-24 (2030477/9),Â Date of Issue:Â  October 14, 2016
AUDI:    S4, S5 2010 - 2013; RS 5, S6, S7 2013
GROUP: 35 - Manual Transmission - Gears, Shafts
Superceded Bulletin(s): GROUP 35, NO. 16-21,Â Date of Issue:Â  April 18, 2016

## MODELS

35 16 24 2030477/9 October 14, 2016. Supersedes Technical Service Bulletin Group 35 number 16-21 dated April 18, 2016 for reasons listed below.

### APPLICABLE MODELS AND YEARS

| Model(s) | Year | VIN Range | Vehicle-Specific Equipment |
|---|---|---|---|
| S4, S5 | 2010 - 2013 | All | S-Tronic 7 speed transmission |
| RS 5, S6, S7 | 2013 | All | S-Tronic 7 speed transmission |

## CONDITION

### REVISION HISTORY

| REVISION HISTORY | | |
|---|---|---|
| Revision | Date | Purpose |
| 9 | - | Revised *Required Parts and Tools* (Added bolts and oil pipe) |
| 8 | 04/18/2016 | Revised *Required Parts and Tools* (Added oil pipe, O-ring and drain plug seal) |
| 7 | 02/01/2016 | Revised *Required Parts and Tools* (Added ATF) |

The following message appears in the information display: "Gearbox malfunction: you can continue driving". One or more of the following fault entries are stored in the transmission control module, J217 (address word 02):

- **DTC P17D8** (Torque limitation because of clutch temperature) with symptom code **8040**
- **DTC P0726** (RPM signal of engine control unit, implausible signal) with symptom code **7980**
- **DTC P174B** (Valve 4 in the sub-gearbox 1, electric fault) with symptom code **8027**
- **DTC P174F** (Valve 4 in the sub-gearbox 2, electric fault) with symptom code **8028**
- **DTC P179C** (Main pressure valve, electric fault) with symptom code **8029**
- **DTC P179D** (Coolant oil valve electrical fault) with symptom code **8030**
- **DTC P174C** (Partial transmission 1 valve 2 Electrical error) with symptom code **8026**
- **DTC P174A** (Valve 3 in the sub-gearbox 1, electric fault) with symptom code **8939**
- **DTC P174E** (Valve 3 in the sub-gearbox 2, electric fault) with symptom code **8940**
- **DTC P1740** (Clutch temperature monitoring) with symptom code **8031**

**Tip:** Fault codes and symptom codes must match *exactly* or this TSB should not be followed. Instructions for obtaining th  ymptom codes are in the Service section of this bulletin.

30.     On February 27, 2017, TSB No. 2027363/4 was issued regarding "[h]ard downshifting of multiple gears: 7-5, 4-3, 2-1. This may happen during just one of these shifts." Further TSB No. 2027363/4 was issued due to the notification of "[g]earbox complaint! Journey can be continued!" (As

shown below.)

Back To Article

**35 DRIVABILITY CONCERNS, S TRONIC TRANSMISSION (DTC P1724)**

**TECHNICAL SERVICE BULLETIN**

Reference Number(s): GROUP 35, NO. 17-25 (2027363/4),Â Date of Issue:Â February 27, 2017
AUDI:   S4, S4 cabriolet 2010 - 2011
GROUP: 35 - Manual Transmission - Gears, Shafts
Superceded Bulletin(s): GROUP 35, NO. 14-16,Â Date of Issue:Â May 1, 2014

## APPLICABLE MODELS AND YEARS

35 17 25 2027363/4 February 27, 2017. Supersedes Technical Service Bulletin Group 35 number 14-16 dated
May 1, 2014 for reasons listed below.

**APPLICABLE MODELS AND YEARS**

| Model(s) | Year | VIN Range | Vehicle-Specific Equipment |
|---|---|---|---|
| S4, S4 cabriolet | 2010 - 2011 | All | 0B5 Transmission |

## CONDITION

**REVISION HISTORY**

| Revision | Date | Purpose |
|---|---|---|
| 4 | - | Revised *Service* (SVM code updated and software versions updated) |
| 3 | 05/01/2014 | Revised title<br>Revised *Service* (SVM code updated, part number added)<br>Revised *Warranty* (Charge Battery Removed, Included in Software Update) |
| 2 | 06/11/2013 | Revised *Service* (SVM code updated, software versions updated)<br>Revised *Condition* (Added information about bump felt after a stop) |

One or multiple transmission-related concerns may be present, including:

- Harsh downshifting of multiple gears: 7-5, 4-3, 2-1. This may happen during just one of these shifts.
- A bump is felt after vehicle comes to a stop (2-1 downshift).
- Fluctuating engine speed after 5-4 shift with accelerator at 80-100% accelerator pedal position (kick-

down).

- The driver information system displays the message "Gearbox complaint! Journey can be continued." After a key cycle the complaint is fixed. The vehicle was parked in gear lever position N and the ignition switched off.
- **DTC P1724** (signal for immobilizer, short circuit to ground) is logged in the Transmission control module (TCM) (J217) (address word 0002).

## TECHNICAL BACKGROUND

Incorrect transmission software.

## PRODUCTION SOLUTION

Improved transmission software.

## SERVICE

### SVM UPDATE INSTRUCTIONS

1. Follow all instructions in TSB 2011732: *00 Software Version Management (SVM), operating instructions*.

2. Update the transmission control module using the SVM action code as listed in the table below if necessary:

### SOFTWARE INFORMATION

| Model | Engine and/or Transmission | Old Software Part Number | Old Software Version | New Software Part Number | New Software Version (or higher) | SVM Action Code |
|---|---|---|---|---|---|---|
| S4/S5 Cabriolet (MY 2010) | All with S-Tronic | 8K0 927 156 M | 0008 | 8K0 927 156 M | 0012 | 02A086 |
| | | 8K1 927 156 C | 0002 | 8K1 927 156 AD | 0006 | |
| | | 8K1 927 156 AD | 0002 | 8K1 927 156 AD | 0006 | |
| S4/S5 Cabriolet (MY 2011) | All with S-Tronic | 8K1 927 156 K | All | 8K1 927 156 K | 0013 | |

**Tip:** If the software version of the vehicle is lower than shown in the table for model year 2010, an update with SVM Code 02A002 may be necessary first.

**Tip:** If there is a concern with shifting after the software update, a basic setting and adaptation drive will be necessary. Follow GFF test plan.

31.   All of the above referenced TSBs are attempts, in one way or another, to remedy the known transmission defect. Despite Audi's knowledge of a problem that was widespread and serious

enough to send dealers this many TSBs related to the defect, Audi did not inform Plaintiffs or Class of the defect, continued to sell Class Vehicles with the defectively designed and/or manufactured transmissions, and yet Audi did nothing to recall the Class Vehicles for this defect. These TSBs evidence Audi's repeated inability to determine the cause of and a resolution for the transmission defect.

32.     Further, Audi continued to sell new and Certified Pre-Owned Class Vehicles even while issuing TSBs for the defect, advertising and warranting them as if they were defect-free. The Class Vehicles were defective from the time they were released by the manufacturer into the stream of commerce. Audi failed to disclose this material defect to Plaintiffs, Class and consumers.

33.     Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced the transmission defect. Complaints filed by consumers with the NHTSA and posted on the Internet demonstrate that the defect is widespread. The consumer complaints, as well as Audi's repeated TSBs, indicate that Audi was fully aware of the widespread and common defect and its potential danger to drivers and the public. See Section 2, infra.

34.     Audi continued to manufacture, market, and distribute new Class Vehicles into model year 2016 despite its failure to remedy the known transmission defect.

**Consumers Have Extensively Reported the Safety Defect to Audi.**

35.     NHTSA provides a system for motor vehicle owners to report complaints relating to safety defects that pose a risk of accidents, injuries, and even death in vehicles manufactured or imported in the United States, including safety defects relating to transmission malfunctions. The safety defect complaints are entered into NHTSA's consumer complaint automated database, which manufacturers can—and do—access. NHTSA also provides these consumer complaints to the vehicle's manufacturer, including Audi. Like other manufacturers, Audi reviews NHTSA consumer complaints. Given that the vast majority of vehicle owners are not aware of NHTSA and/or its reporting system, complaints received by NHTSA are a small minority of the overall number of complaints made to Audi, which also received complaints directly and/or through their authorized dealerships.

36.     Since *at least* October 2012, Audi has received complaints of transmission defects and safety concerns related to the Class Vehicles through NHTSA, Audi dealerships, and directly from owners of Class Vehicles. Upon information and belief, consumer complaints have been made directly

to Audi through its customer service department, information that it is the sole possession and control of Audi but can be inferred by the repeated efforts to provide dealers guidance to repair the transmissions.

37.     Despite Audi's knowledge of the transmission defect in the Class Vehicles and its safety implications for drivers who cannot confidently change gears or accelerate without their Class Vehicles juddering, Audi continues to conceal this knowledge. Audi has failed to disclose that its Class Vehicles' transmissions are defective and dangerous. Consumers continue to operate Class Vehicles and continue to experience dangerous manifestations of the defective transmission, putting drivers of Class Vehicles at increased risk for crashes.

38.     Many consumers have submitted individual NHTSA complaints regarding Class Vehicles experiencing the transmission defect described in Audi's Technical Service Bulletins. The number and content of NHTSA consumer complaints of "juddering," "down shifting," "hesitation," "surge," and loss of acceleration highlight the Class Vehicles' transmission defect.

39.     These consumer complaints filed with NHTSA, and (like virtually all other automobile manufacturers) regularly reviewed by Audi, highlight the safety risk caused by the defect, including reports of near accidents and expressions of concern for drivers' families without response or resolution by Audi. Audi received and was aware of these consumer complaints. Some of the complaints filed with NHTSA about the transmission defect are included below.

- NHTSA Complaint on October 23, 2012 for 2010 Audi S4: "THIS ISSUE CONCERNS MY AUDI 2011 S4, A CAR THAT I TOOK DELIVERY ON IN APRIL, 2011. I HAVE HAD NUMEROUS PROBLEMS WITH THE CAR SINCE THE DELIVERY, HOWEVER, IT IS A SAFETY CONCERN THAT HAS CAUSED THIS SPECIFIC FILING. THE PROBLEM SEEMS TO BE WITH THE DSG TRANSMISSION. ON OCCASION, THE CAR WILL STRUGGLE AND "BUCK" IN LOW GEARS AT A VERY SLOW SPEED (OR FROM A COMPLETE STOP) UPON ACCELERATION. THIS DOES NOT HAPPEN OFTEN BUT IT HAS HAPPENED SEVERAL TIMES SINCE TAKING DELIVERY. I HAVE TRIED ADDRESSING THE PROBLEM WITH AUDI CORAL SPRINGS IN THE PAST BUT BECAUSE I CANNOT DUPLICATE THE PROBLEM, THEY ARE UNABLE TO HELP. CONSEQUENTLY, I HAVE NOT BEEN ABLE TO ALWAYS DRIVE THE CAR IN THE MANNER THAT I WOULD LIKE TO. HOWEVER, ON OCTOBER 9, 2012, THE PROBLEM HAPPENED AGAIN, ONLY THIS TIME, IT OCCURRED WHILE ATTEMPTING TO MERGE INTO TRAFFIC. I WAS IN A MERGE LANE, TRAVELING APPROX 3-5 MPH AND WHEN

THE OPPORTUNITY AROSE, I ACCELERATED INTO THE TRAFFIC. AT THAT PRECISE MOMENT, THE CAR BUCKED VIOLENTLY (AS IT HAS DONE IN THE PAST) AND I HAD TO LIFT OFF THE THROTTLE TO CORRECT THE ISSUE. LET ME EXPRESS THAT I IN NO WAY AM ATTEMPTING TO CAUSE PROBLEMS FOR AUDI. I AM ONLY CONCERNED FOR MY SAFETY. ITS QUITE CONCEIVABLE THAT WHEN MY CAR HAS THIS TROUBLE WHILE MERGING INTO TRAFFIC THAT I COULD GET HIT FROM BEHIND AS I MUST IMMEDIATELY LIFT OFF THE ACCELERATOR TO RESOLVE THE ISSUE. *TR"

- NHTSA Complaint on May 13, 2017 for 2010 Audi S4: "MY S4 THREW THE "GEARBOX MALFUNCTION, REVERSE DISABLED" AS WELL AS A TPMS ERROR CODE WHILE IN TRAFFIC, AND WENT INTO LIMP MODE AND WOULD NOT ALLOW ME TO ACCELERATE. VERY DANGEROUS, AND INCONVENIENT. LIMPED HOME AT VERY SLOW SPEED WHILE TRANSMISSION CLUNKED AND STRUGGLED TO CHANGE GEARS. THE CODE HAS GONE AWAY SINCE I RESTARTED THE VEHICLE, AND NOW IT LUNGES FORWARD WHEN YOU'RE COMING TO A STOP, WHICH MAKES YOU FEEL LIKE YOU'VE BEEN HIT FROM BEHIND. TAKING OFF FROM A STOP IS BOUNCY AND SUPER JERKY. IF I HESITATE BEFORE ACCELERATING FROM A STOP, IT WILL SOMETIMES GO SMOOTHLY. THE ENGINE RPM'S SURGE WHILE COASTING TO A STOP, OR GOING DOWN, HILL ESPECIALLY WITH FOOT OFF THE PEDAL."

- NHTSA Complaint on April 8, 2017 for 2010 Audi S4: "WHEN DRIVING IN REGULAR DRIVE BOX INDICATOR COMES ON. SAYING GEARBOX MALFUNCTION LIMITED FUNCTION. I ONLY HAVE 63125 MILES AND KEEP MY CAR MAINTENANCE."

- NHTSA Complaint on March 9, 2017 for 2010 Audi S4: "ONE WEEK AFTER PURCHASING CAR, CAR EXHIBITING SYMPTOMS OF MECHATRONICS UNIT FAILURE (BANG/JERK WHEN STOPPING, RPM JUMPY IN 1/2ND GEAR, REVERSE IS JUMPY)."

- NHTSA Complaint on January 4, 2017 for 2010 Audi S4: "TPMS & GEARBOX MALFUNCTION CAR WILL NOT DRIVE IN REVERSE AND JERK IN FORWARD GEARS WHILE ALSO INCREASING REVS ALL BY ITSELF. MAJOR SAFETY HAZARD AS THE CAR WAS IN MOTION ON A MAJOR BUSY ROAD!"

- NHTSA Complaint on November 30, 2016 for 2010 Audi S4: "MY S4 LUNGES AT STOPS, OR IT FEELS LIKE I'VE BEEN HIT FROM BEHIND. TAKEOFF FROM A STOP IS BOUNCY, BOUNCY REVERSING, ESPECIALLY UPHILL. IF I TAKE MY FOOT OFF THE BREAKS AND HESITATE BEFORE ACCELERATING, SOMETIMES IT'S SMOOTH. THE TAC BOUNCES WHILE COASTING TO A STOP, OR GOING DOWN HILL WITH FOOT OFF THE PEDAL. THESE ISSUES HAVE BEEN INTERMITTENT THE LAST SEVERAL YEARS, BUT ARE NOW MORE PROFOUND. I'VE TAKEN THE CAR TO MY LOCAL DEALER SEVERAL TIMES

TO NO AVAIL. VERY FRUSTRATING TO PAY 50K FOR A CAR THAT DRIVES LIKE THIS, WHILE AUDI PRETENDS IT'S NOT A PROBLEM. LOTS OF THESE ISSUES IN VARIOUS FORUMS."

- <u>NHTSA Complaint on August 11, 2016 for 2010 Audi S4</u>: "WARNING: GEARBOX MALFUNCTION- YOU CAN CONTINUE DRIVING" APPEARS AFTER ABOUT 15 MINUTES OF DRIVING. THE CAR DOES NOT MALFUNCTION, CHANGES GEARS WITHOUT PROBLEMS, AND WARNING REMAINS ON SCREEN. CAR HAS 58K MILES AND HAS BEEN WELL MAINTAINED. TOOK TO AUDI DEALERSHIP AND ADVISED MODULE G676 IS BAD. COST TO REPAIR: $5334.39. THERE IS A TSB FOR THIS WARNING ON THIS ISSUE FOR SEVERAL YEARS OF AUDIS. AUDI WILL NOT COVER ANY OF THE COSTS TO REPAIR ALTHOUGH THEY REALIZE THIS IS A COMMON FAILURE AMONG THIS VEHICLE. THIS IS A MANUFACTURER ISSUE!! WHY ARE THEY NOT BEING HELD ACCOUNTABLE? HARD CLUNK WHEN SELECTING GEARS FROM P TO R TO D. WHEN COMING TO A STOP IN TRAFFIC THE CAR LURCHES FORWARD LIKE BEING REAR ENDED. SOMETIMES AFTER A COMPLETE STOP HAS BEEN MADE THE CAR WILL SURGE FORWARD A CONSIDERABLE AMOUNT WHICH MAY POSSIBLY CAUSE ME TO HIT THE CAR IN FRONT OF ME."

- <u>NHTSA Complaint on June 20, 2016 for 2010 Audi S4</u>: "MECHATRONIC FAILURE. CAR WAS FULLY SERVICED AND MAINTAINED BY AUDI HOWEVER AUDI WILL NOT PAY FOR COST OF REPLACEMENT. COST OF REPLACEMENT IS $3,000 USD. CAR DISPLAYED GEARBOX MALFUNCTION LIMITED DRIVING ABILITY, PARKING BRAKE FAILURE THEN LOST ALL DRIVE AND CAR WAS STUCK IN N. I WAS UNABLE TO SHIFT OUT OF GEAR AND PUT THE CAR IN PARK THIS IS A SAFETY ISSUE."

- <u>NHTSA Complaint on September 30, 2015 for 2010 Audi S4</u>: "THE S-TRONIC/DSG TRANSMISSION IS HAVING ISSUES DOWNSHIFTING. IT WILL REV UP HIGH WHEN COMING TO A STOP AS WELL. THERE IS ALSO A HARSH CLUNK WHEN SHIFTING FROM NEUTRAL-DRIVE-PARK. AUDI RECOMMENDED REPLACING THE MECHATRONICS UNIT IN THE TRANSMISSION. THE MECHATRONICS CIRCUIT BOARD HAS ALREADY BEEN REPLACED AT OWNERS COST AND NOW THEY WANT ME TO REPLACE THE ENTIRE MECHATRONIC UNIT AT MY COST ($3800+). THIS IS A COMMON ISSUE WITH THESE CARS AND THERE NEEDS TO BE A RECALL FOR THESE TRANSMISSIONS. IT IS KNOWN THAT THESE TRANSMISSIONS ARE FAULTY AND AUDI DOES NOT WANT TO TAKE RESPONSIBILITY FOR THESE ISSUES."

- <u>NHTSA Complaint on September 30, 2015 for 2010 Audi S4</u>: "AT APPROX 55K MILES, MECHATRONICS UNIT FAILED. EXTREMELY ROUGH SHIFTS FROM 1-2 AND 2-1, LURCHING FORWARD AFTER COMING TO COMPLETE STOP. DEALERSHIP REPLACED MECHARONICS UNIT. AT 74K MILES ENTIRE DSG GEARBOX FAILED, WHILE ON HIGHWAY WITH VIRTUALLY NO POWER OR ABILITY TO ACCELERATE. LUCKILY TRAFFIC WAS AT NEAR STOP DUE TO RUSH HOUR,

WAS ABLE TO MAKE IT TO NEXT OFFRAMP IN WHAT THEY CALL 'LIMP MODE'. DEALERSHIP IS REPLACING ENTIRE TRANSMISSION."

- <u>NHTSA Complaint on April 12, 2015 for 2010 Audi S4</u>: "I HAVE JUST RECENTLY PURCHASED THIS CAR FROM AN OLDER MAN WHO WAS VERY KIND TO THE CAR. I HAVE HAD THIS VEHICLE FOR THE WHOLE TWO MONTHS WHEN I ENTERED MY GARAGE TO LEAVE FOR THE DAY I RECEIVED A"GEAR BOX MALFUNCTION, YOU MAY CONTINUE DRIVING: LIMITED FUNCTIONALITY CODE" I HAVE DONE MY HOURS OF RESEARCH AND HAVE FOUND OUT THIS IS A SIMPLY A PROBLEM LOT OF PEOPLE ARE HAVING. THIS IS SOMETHING AUDI IS SELLING ON THEIR CARS KNOWING THESE HAVE ISSUES!!!!! I WANT TO TAKE FURTHER ACTION, AUDI SHOULD STEP UP AND REPAIR ALL THE BROKEN UNITS THEY HAVE BEEN SELLING. THESE UNITS HAVE GIVEN 95 PERCENT OF AUDI OWNERS PROBLEMS. REALLY MAKES ME FEEL LIKE I'LL NEVER BUY ANOTHER. *TR"

- <u>NHTSA Complaint on April 5, 2015 for 2010 Audi S4</u>: "I WAS DRIVING AND CAME UP TO STOP LIGHT. CAR FLASHED UP WARNING SAYING GEARBOX MALFUNCTION LIMITED FUNCTIONALITY. CAR WOULD NOT CHANGE UP OR DOWN SMOOTHLY OR QUICKLY. LOSS OF POWER ON EVERY SHIFT FOR OVER A SECOND. HAD AUDI OF STEVENS CREEK CHANGE DSG FLUID A COUPLE OF WEEK PRIOR. *TR"

- <u>NHTSA Complaint on April 4, 2015 for 2010 Audi S4</u>: "THE DSG TRANSMISSION IS VERY JERKY IN 1-2 GEARS IT OPERATES AS THOUGH THE CLUTCH IS NOT ENGAGING/DISENGAGING PROPERLY. WHEN TRAVELING AT HIGHWAY SPEEDS WITH THE CRUISE CONTROL ENGAGED THE ENGINE RPMS WANDER AS THOUGH THE CLUTCH IS ENGAGING AND DISENGAGING. STARTING FROM A DEADSTOP OR DRIVING AT LOW SPEEDS ARE VERY UNCOMFORTABLE DUE TO THE JERKY-NESS. *TR"

- <u>NHTSA Complaint on August 3, 2014 for 2010 Audi S4</u>: "WHILE DRIVING IN RUSH HOUR BUMPER TO BUMPER TRAFFIC THE 2010 AUDI S4 WITH THE DSG S-TRONIC TRANSMISSION BECOMES VERY JERKY, CAUSING IT TO SURGE WHEN STARTING AND STOPPING OR DRIVING AT LOW SPEEDS. AS A RESULT IT IS HARD TO CONTROL, ESPECIALLY IN TIGHT TRAFFIC, PARKING AREAS, OR AROUND PEDESTRIANS. ADDITIONALLY, WHEN COMING TO A COMPLETE STOP WHEN IN THIS CONDITION THE SHIFT FROM 2ND GEAR TO FIRST HAPPEN IN SUCH A WAY THE IT GIVE THE FEELING THAT THE CAR HAS BEEN REAR ENDED. *TR"

- <u>NHTSA Complaint on October 5, 2014 for 2010 Audi S4</u>: "I WAS DRIVING ON A NORMAL STRETCH OF FLAT HIGHWAY APPROXIMATELY 65MPH AND THE DASH LIT UP LIKE A CHRISTMAS TREE OUT OF THE BLUE. CAR INDICATED REVERSE GEAR NOT AVAILABLE, TRANSMISSION WARNING LIGHTS, AND

TIRE PRESSURE MONITOR SYSTEM PROBLEM ALL AT THE SAME TIME. CAR WENT IN TO A "LIMP MODE" AND IT ONLY SHIFTED IN EVEN NUMBER GEARS, AND FELT LIKE THE CAR WAS DANGEROUSLY UNSTABLE DUE TO ERRATIC MISSED SHIFTING. THE CAR HAD RECENTLY BEEN IN PRIOR FOR A SERVICE CHECK AND HAD NO CODES OR CHECK ENGINE LIGHT PROBLEMS AT ALL! AFTER A LITTLE RESEARCH IT IS A WELL DOCUMENTED PROBLEM THAT THE MECHATRONICS FAILS ON THIS VEHICLE RATHER OFTEN. THAT WAS THE PROBLEM. COST OF REPAIR WAS NEAR 3300$. I WAS APPROXIMATELY 4K MILES OUT OF WARRANTY WHEN THIS OCCURRED, AFTER NUMEROUS PERSISTENT EXCHANGES WITH AUDI OF AMERICA THEY FINALLY DECIDED TO COVER THE FAILURE AS I WAS CONSIDERING SEEKING LEGAL ACTION. ( I HAD THE PART IN HAND AND COULD SUBMIT IT TO FAILURE ANALYSIS ENGINEERING FOR CAUSE). ON AN POLL ON A POPULAR AUDI WEBSITE, APPROXIMATELY 15% OF THESE MECHATRONICS HAVE FAILED. THE DESIGN ISSUE IS A CIRCUIT CARD EMBEDDED IN HOT TRANSMISSION FLUID THAT AFFECTS THE HYDRAULIC CONTROL OF THE TRANSMISSION. IF THE TRANSMISSION IS DAMAGED IT CAN BE OVER A +10K$ REPAIR. *TR"

- NHTSA Complaint on August 2, 2014 for 2010 Audi S4: "PULLED OUT OF PARKING LOT AND RECEIVED A GEARBOX MALFUNCTION WARNING ALONG WITH A TPMS MALFUNCTION. WARNING ON DASH INDICATED THAT I COULD CONTINUE DRIVING. I DROVE VEHICLE FOR APPROXIMATELY ANOTHER MILE AND WHILE GOING THRU A ROUNDABOUT, THE CAR SHUT OFF. I WAS ABLE TO PULL OVER TO THE SIDE OF THE ROAD AND GET THE VEHICLE STARTED AGAIN. I CONTINUED THE REST OF THE WAY HOME FOR ABOUT 2 MORE MILES. THE MECHATRONIC UNIT WAS DETERMINED TO BE FAULTY AND WAS REPLACED. *TR"

- NHTSA Complaint on January 29, 2014 for 2010 Audi S4: "MECHATRONICS UNIT FAILURE IN DSG TRANSMISSION. HARD SHIFTS FROM 1ST TO 2ND AND 2ND TO 1ST WHILE STOPPING. (VEHICLE MAKES LOUD DRIVETRAIN BANG NOISE, SHAKES AND STOPS ABRUPTLY WHEN SLOWING DOWN AND TRYING TO COME TO A STOP, ALMOST AS IF YOU SLOWED DOWN TO 5-10MPH AND THEN SLAMMED ON THE BRAKES.) *TR"

- NHTSA Complaint on December 17, 2013 for 2010 Audi S4: "MECHATRONICS UNIT FAILED IN THE VEHICLE AUTOMATIC TRANSMISSION. TRANSMISSION FAILURE MESSAGE LISTED ON CAR DASHBOARD. CAR WOULD NOT SHIFT OUT OF 1ST GEAR AND THERE WAS NO REVERSE GEAR. CAR HAD TO BE TOWED TO THE DEALERSHIP FOR REPAIR. MULTIPLE WEB FORUM POSTS STATED THE AUDI B8 MODELS SUFFERED THIS FAILURE FREQUENTLY. "

- NHTSA Complaint on November 12, 2013 for 2010 Audi S4: "THE TRANSMISSION BEGINS TO JERK AND SLAM CAUSING THE VEHICLE TO ACCELERATE JUST PRIOR TO STOPPING IN STOP/GO TRAFFIC. NOTICED THAT THIS HAPPENS

ONLY AFTER DRIVING IN STOP/GO SITUATIONS AND USUALLY AROUND 5MPH. ALSO CLANKS/JERKS WHILE IN REVERSE. DEALER KEEPS SAYING THEY CANNOT REPRODUCE"

- NHTSA Complaint on April 10, 2017 for 2011 Audi S4: "GEARBOX MALFUNCTION WARNING AND THE TPMS MALFUNCTION CAME ON AT SAME TIME. CONTINUED TO DRIVE IN LIMP MODE FOR ABOUT 1 MILE AND THE CAR SHUT COMPLETELY OFF. START THE CAR BACK UP AND STILL SHOWING WARNINGS. GET IT HOME AND ATTEMPT TO PUT INTO REVERSE AND THE CAR WON'T ENGAGE. I JUST HAPPENED TO START THE CAR AGAIN AND ALL LIGHTS WERE GONE. CAR WENT INTO ALL GEARS, DROVE FINE, AND GOT IT TO THE DEALER. TWO HOURS LATER I GET IN TO GO TO THE STORE AND AS SOON AS I SHIFT INTO D, THE TPMS AND GEARBOX MALFUNCTION LIGHT FLASH UP TELLING ME I HAVE NO REVERSE AND I'M STILL GOOD TO DRIVE. SO I DECIDE TO DRIVE DOWN THE STREET AND SEE WHAT THE ISSUE IS. AS SOON AS THE CAR WENT TO SHIFT FROM 1ST TO 2ND IT SKIPPED, REVVED IN NEUTRAL FOR ABOUT 2 SECONDS THEN DROPPED HARD INTO 3RD GEAR. THE NEXT MORNING I WENT TO DRIVE THE CAR AND DROVE AROUND THE NEIGHBORHOOD WITH NO PROBLEM - NO ERROR MESSAGE, NO FAULTY SHIFTING, NO JERKING OR ANYTHING. SO I DECIDED TO RUN TO THE STORE ABOUT 4 MILES AWAY AND SEE HOW IT HELP UP. I MADE IT TO THE STORE AND HALFWAY BACK BEFORE BOOM - IT HAPPENED AGAIN. CAR WILL START IN 1ST GEAR FINE, WENT SHIFTING INTO 2ND IT SLIPS INTO NEUTRAL FOR ABOUT 2-3SEC THEN DROPS ABRUPTLY INTO 3RD, WHEN YOU HAVE ENOUGH SPEED IT DOES THE SAME THING TRYING TO SHIFT INTO 4TH - SKIPS AND DROPS INTO 5TH, SAME THING INTO 6TH - SLIPS OUT OF 5TH AND DROPS HARD INTO 7TH. SLOWING DOWN WAS NOT A HUGE PROBLEM AS LONG AS YOU HAVE PLENTY OF ROOM TO TAKE IT EASY. IF YOU SLOWED TO FAST THE GEARS WOULDN'T KEEP UP AND IT WOULD JERK VERY HARD. THIS IS A SERIOUS MATTER SINCE IT IS A SYSTEM FACTORY FAILURE WITH THE DSG UNIT SIMPLE AS THAT. REASON WHY I AM CONTACTING THIS AGENCY AS THE CAR SHUT OFF ON ME WHILE YOU WERE DRIVING IT IN THE MIDDLE OF THE HIGHWAY AND I COULD HAVE BEEN HIT/KILLED THE FIRST TIME IT HAPPENED."

- NHTSA Complaint on December 29, 2016 for 2011 Audi S4: "DEC 5 2016, WHILE PULLING OUT OF MY DRIVEWAY IN ROUTE TO A SCHEDULED SERVICE APPOINTMENT AT AUDI OF ASHEVILLE, MY 2011 AUDI S4 LURCHED AND SEVERAL WARNINGS CAME UP INCLUDING 'DSG FAILURE, NO REVERSE, TPMS WARNING', FOLLOWED BY 'YOU MAY CONTINUE TO DRIVE'. WITHIN 5 MILES AND AT A SPEED OF APPROX 35 MPH THE VEHICLE SUFFERED A CATASTROPHIC LOSS OF DRIVE AND CAME TO A STOP IN A TWO LANE ROAD, THE ENGINE WAS STILL RUNNING, BUT NO CONNECTION WITH THE REST OF THE DRIVE-TRAIN WAS EVIDENT. I BELIEVE THE "MECHATRONICS" CONTROL UNIT FAILED CAUSING TOTAL LOSS OF DRIVE AND UNCONTROLLED, UNSYNCED GEAR CHANGES. I WAS APPROX 5 MILES

FROM BEING ON AN INTERSTATE WITH A 6% GRADE. VEHICLE IS ONE ONER, ORDERED AND SERVICED EXCLUSIVELY BY AUDI, 70000 MILES, NOT ABUSED. REQUIRES COMPLETE TRANSMISSION REPLACEMENT, WITH THE NOTED EXCEPTION OF THE TRANSMISSION THERE WAS NOTHING MECHANICALLY WRONG WITH THE REST OF THE VEHICLE."

- NHTSA Complaint on August 22, 2016 for 2011 Audi S4: "AT ABOUT 49K MILES THE CAR WOULD SOMETIMES LURCH BACKWARDS WHEN IN REVERSE OR GOING FROM REVERSE TO PARK. TOOK INTO MECHANIC. NO DIAGNOSTIC CODES SHOWED UP. AROUND 60K MILES THE CAR OVERHEATED. AUDI STATED IT NEEDED A NEW THERMOSTAT WHICH WAS AROUND $1000. DROVE THE CAR ACROSS COUNTRY FROM CA TO CO. AROUND 62K MILES CAR WENT INTO LIMP MODE AND WOULD NOT GET OUT OF 1ST OR 2ND GEAR. "GEARBOX MALFUNCTION" WARNING CAME ON. STATED NOT TO GO INTO REVERSE. DROVE HOME SLOWLY. NEXT MORNING ALL WARNING LIGHTS WERE OFF. TOOK TO MECHANIC. NO PROBLEMS COULD BE FOUND. MAY 2016 AT 69K MILES CAR WENT INTO LIMP MODE AGAIN. COULDN'T GET RPMS UP. RESET CODES USING DIAGNOSTIC TOOL. DROVE FROM UTAH TO CO. CAR WENT INTO LIMP MODE PROBABLY 40 TIMES ON I-70. CAR WOULD LURCH FORWARD. MADE IT TO DEALER (PRESTIGE IN LAKEWOOD, CO). MECHATRONICS FOUND TO BE FAULTY AND CAR IN NEED OF ENTIRELY NEW TRANSMISSION. COST $12,000. DEALERSHIP "PAID" $8000. I PAID $4000. THIS SEEMS TO BE A COMMON PROBLEM WITH THIS MAKE/MODEL/YEAR."

- NHTSA Complaint on April 19, 2016 for 2011 Audi S4: "DSG MECHATRONIC FAILURE. WAS REPLACED UNDER CPO WARRANTY. HOWEVER PROBLEM PERSISTS. WHILE DRIVING CAR GOES INTO NEUTRAL WITH TPMS + GEARBOX MALFUNCTION. THIS IS A KNOWN PROBLEM WITH AUDI S4 2010 AND 2011."

- NHTSA Complaint on February 3, 2016 for 2011 Audi S4: "THIS VEHICLE SUFFERS FROM A FAULTY MECHATRONICS UNIT, CAUSING THE CAR TO MIS-SHIFT AND SURGE WHILE DRIVING, OR FAIL TO MOVE FORWARD WHEN STOPPED IN TRAFFIC IN "D" DRIVE, DUE TO PARKING BRAKE DRIVE-SELECT MALFUNCTIONS. IN THESE CASES THE CAR MUST BE TURNED OFF, IN TRAFFIC IN ORDER TO MOVE FORWARD AGAIN. THIS TECHNIQUE HAS WORKED SO FAR BUT I AM AFRAID THIS WILL NOT WORK EVENTUALLY, AND BECOME A SAFETY ISSUE ON THE ROADWAY."

- NHTSA Complaint on September 2015 for 2011 Audi S4: "VEHICLE WOULD EXHIBIT STRANGE SHIFTING BEHAVIOR IN LOW GEARS. WHEN UPSHIFTING OR DOWNSHIFTING FROM 1-2-3 AND VICE VERSA THE TRANSMISSION WOULD SOMETIMES HESITATE OR SHIFT INAPPROPRIATELY. AUDI DEALERSHIP UPDATED SOFTWARE AND CHECKED THE PROBLEM NUMEROUS TIMES. THEY COULD NOT FIND ANY PROBLEMS NOT ANY ERROR CODES. PROBLEM

WOULD COME AND GO USUALLY WHEN IT WAS HOT OUTSIDE. A LITTLE OVER A YEAR (SEPT 2015) CAR HAS AGAIN BEEN ODDLY SHIFTING IN LOW GEARS AND EVEN REVVING TO HIGH RPMS BEFORE DOWNSHIFTING IN AUTOMATIC MODE. CAR FINALLY THREW AND ERROR CODE SAYING GEARBOX MALFUNCTION AND CAR WENT INTO LIMP MODE. THE TRANSMISSION COULD NOT FIND THE RIGHT GEARS TO SHIFT. CAR HAS BEEN EXHIBITING SYMPTOMS OF MECHATRONIC UNIT FAILURE FOR OVER A YEAR NOW."

- NHTSA Complaint on September 22, 2015 for 2011 Audi S4: "AFTER TURNING MY CAR ON A GEARBOX MALFUNCTION WARNING APPEARED BUT SAID I COULD CONTINUE DRIVING. AFTER DRIVING THE MESSAGE AND SERVICE LIGHT EVENTUALLY WENT OFF WITH EVERYTHING GOING BACK TO NORMAL. THE CAR APPEARS TO HAVE A VERY COMMON MECHATRONIC UNIT ISSUE THAT IS PART OF THE FAULTY DSG THAT AUDI HAS PUT IN THE B8 S4 MODEL."

- NHTSA Complaint on September 16, 2015 for 2011 Audi S4: "ROUGH/CLUNKING SHIFTING IN STOP AND GO TRAFFIC. CAR WILL LURCH FORWARD, OR LACK POWER WHEN ACCELERATING"

- NHTSA Complaint on January 7, 2015 for 2011 Audi S4: "I WAS ACCELERATING, AFTER LEAVING A RESTAURANT, INTO TRAFFIC. I RECEIVED THE "DSG MALFUNCTION LIGHT" AND SUDDENLY AT ABOUT 20MPH MY LURCHED FORWARD AND FAILED TO RESPOND TO THE THROTTLE AND SHUT OFF IN TRAFFIC. CAR RESTARTED AFTER ABOUT 30 SECONDS BUT DEFINITELY NOT SOMETHING THAT SHOULD GO WITHOUT NOTICE. IF I WAS ON THE INTERSTATE AND THROTTLE WENT OUT SITUATION COULD HAVE BEEN MUCH WORSE. *TR"

- NHTSA Complaint on January 6, 2015 for 2011 Audi S4: "I WAS CRUISING AT APPROX. 55MPH ON MY WAY TO WORK. I HAD NO SYMPTOMS OF ANYTHING PRIOR TO THE TRANSMISSION FAILURE. SUDDENLY THE CAR STARTED VIBRATING AND DECELERATING AS IF I HAD A FLAT TIRE. I MADE AN EMERGENCY MERGE INTO THE CENTER MEDIAN AND WAS LUCKILY NOBODY REAR ENDED ME. AFTER INSPECTION OF MY TIRES WHICH WERE OK I GOT BACK IN CAR. D OR R WOULD NOT WORK. THE CAR WOULD NOT MOVE."

- NHTSA Complaint on December 28, 2014 for 2011 Audi S4: "TRANSMISSION SHIFTS CLUNK WHEN COMING TO A STOP FROM 3, 2, TO 1, AND SHIFTS NOISILY AND ABRUPTLY PARTICULARLY IN STOP AND GO TRAFFIC, OR IN EXTREME TEMPERATURES IE MIDDLE OF SUMMER ON A HOT DAY. *TR"

- NHTSA Complaint on December 1, 2014 for 2011 Audi S4: "AUDI RECENTLY

REPLACED MY 2ND THERMOSTAT (1ST WAS 11/2012 AND THE 2ND WAS 11/24/2014), NOT UNDER WARRANTY, AND RETURNED MY CAR TO ME AFTER HOLDING ONTO MY CAR FOR TWO WEEKS. I WAS TOLD THAT MY VEHICLE CHECKED OUT OKAY VIA A DIAGNOSTIC AND MECHANICS REVIEW. I DROVE MY S4 FOR TWO DAYS AND WHILE DRIVING, I RECEIVED AN INDICATOR WARNING THAT READ, GEARBOX MALFUNCTION REVERSE NOT AVAILABLE, YOU CAN STILL DRIVE. I THEN NOTICED THAT THE CAR BEGAN TO VIOLENTLY BUCK WHEN I ACCELERATED. THE CAR SURGED FORWARD WHILE DRIVING IN TRAFFIC WHICH WAS ALARMING TO BOTH MY 10YR OLD DAUGHTER AND I. OTHER CARS HAD TO DRIVE AROUND US AND ONE VEHICLE ALMOST HIT MY CAR IN THE REAR. I CONTINUED TO DRIVE AT A LIMITED SPEED AND IMMEDIATELY, THE TPMS WARNING INDICATOR LIT UP AND THE CAR LOST SPEED. THE CAR WOULD BARELY MOVE AT 10 MPH AND I LIMPED BACK TO A RELATIVES UNDERGROUND PARKING GARAGE. ONCE I PARKED I COULD NOT GET THE CAR TO REVERSE OUT OF THE PARKING SPACE. I CALLED AUDI AND THEY STATED THAT I WOULD HAVE TO TOW THE VEHICLE TO THE NEAREST AUDI SERVICE CENTER. THE VEHICLE WAS TOWED TO AUDI AND I AM WAITING TO HEAR THE RESULTS OF THEIR FINDINGS. I HAVE ALREADY INVESTED OVER $1,750 IN VEHICLE REPAIRS (THERMOSTAT AND REAR BRAKES/ROTORS). I DO NOT WANT TO CONTINUE TO INVEST MONEY INTO THIS VEHICLE PIT. AUDI NEEDS TO RECALL THESE FAULTY PARTS (THERMOSTAT AND MECHATRONIC) AND STAND BEHIND THEIR PRODUCT. I'VE SEEN NUMEROUS COMPLAINTS IN FORUMS AND ON THIS SITE REFERENCING THESE SAME ISSUES. *JS"

- NHTSA Complaint on August 17, 2014 for 2011 Audi S4: "I CURRENTLY DRIVE A 2011 AUDI S4 DSG AUTOMATIC VEHICLE. THE CAR BUCKS INTERMITTENTLY WHEN GOING FROM STOP TO 1ST-2ND-3RD GEAR OR VICE VERSA. IT USUALLY OCCURS IN SLOW TRAFFIC AND WHEN THE CAR/TRANSMISSION HAS BEEN ON FOR AWHILE. THE CAR WAS TAKEN TO AUDI FOR REPAIR AND THE SOFTWARE AND ADAPTABILITY WAS UPDATED. THIS HELPED SMOOTH OUT THE SHIFTS BUT THE CAR STILL CONTINUED TO BUCK AT TIMES (ESPECIALLY IN DYNAMIC MODE), THE CAR WAS TAKEN BACK TO AUDI AGAIN, BUT THE TECHNICIANS DID NOT FIND ANY PROBLEMS WHEN DRIVING THE CAR. THE PROBLEM SEEMS TO BE A FAULTY MECHATRONIC UNIT WHICH IS KNOWN TO FAIL IN EARLY 2010-2011 S4'S. MULTIPLE PEOPLE HAVE GONE THROUGH THE SAME PROBLEMS UNTIL THIS UNIT WAS REPLACED. AUDI OF AMERICA HAS BEEN CONTACTED AND DID NOT OFFER ANY SOLUTION AT THIS TIME."

- NHTSA Complaint on January 7, 2014 for 2011 Audi S4: "WHILE TRAVELING AT APPROXIMATELY 40 MPH, A WARNING MESSAGE CAME UP DO THE DASHBOARD SAYING "GEARBOX MALFUNCTION, REVERSE GEAR NOT AVAILABLE, YOU CAN STILL DRIVE". AT THE SAME TIME, THE TPMS WARNING INDICATOR CAME ON. THE CAR BEGAN TO LOOSE SPEED AND WOULDN'T RESPOND TO THE THROTTLE, AFTER A FEW SECONDS IT WOULD

SURGE FORWARD, AND THEN LOOSE SPEED AGAIN. THIS REPEATED A FEW TIMES, UNTIL I CAME TO A STOP AT AN INTERSECTION. AT THE INTERSECTION, I TURNED OFF THE IGNITION AND RESTARTED THE CAR. THE CAR BEHAVED NORMALLY FOR ABOUT 25 MINUTES OF DRIVING. THEN ON THE FREEWAY AT ABOUT 65 MPH THE PROBLEM RECURRED. I WAS ABLE TO LIMP TO THE NEAREST AUDI DEALERSHIP, WHERE THE CAR IS NOW BEING EVALUATED. I'M VERY CONCERNED ABOUT THIS ISSUE, BECAUSE AT TIMES I WAS UNABLE TO MAINTAIN THE SAME SPEED AS THE FLOW OF TRAFFIC AND AN ACCIDENT COULD HAVE OCCURRED. *TR"

- NHTSA Complaint on October 23, 2012 for 2011 Audi S4: "THIS ISSUE CONCERNS MY AUDI 2011 S4, A CAR THAT I TOOK DELIVERY ON IN APRIL, 2011. I HAVE HAD NUMEROUS PROBLEMS WITH THE CAR SINCE THE DELIVERY, HOWEVER, IT IS A SAFETY CONCERN THAT HAS CAUSED THIS SPECIFIC FILING. THE PROBLEM SEEMS TO BE WITH THE DSG TRANSMISSION. ON OCCASION, THE CAR WILL STRUGGLE AND "BUCK" IN LOW GEARS AT A VERY SLOW SPEED (OR FROMA COMPLETE STOP) UPON ACCELERATION. THIS DOES NOT HAPPEN OFTEN BUT IT HAS HAPPENED SEVERAL TIMES SINCE TAKING DELIVERY. I HAVE TRIED ADDRESSING THE PROBLEM WITH AUDI CORAL SPRINGS IN THE PAST BUT BECAUSE I CANNOT DUPLICATE THE PROBLEM, THEY ARE UNABLE TO HELP. CONSEQUENTLY, I HAVE NOT BEEN ABLE TO ALWAYS DRIVE THE CAR IN THE MANNER THAT I WOULD LIKE TO. HOWEVER, ON OCTOBER 9, 2012, THE PROBLEM HAPPENED AGAIN, ONLY THIS TIME, IT OCCURRED WHILE ATTEMPTING TO MERGE INTO TRAFFIC. I WAS IN A MERGE LANE, TRAVELING APPROX 3-5 MPH AND WHEN THE OPPORTUNITY AROSE, I ACCELERATED INTO THE TRAFFIC. AT THAT PRECISE MOMENT, THE CAR BUCKED VIOLENTLY (AS IT HAS DONE IN THE PAST) AND I HAD TO LIFT OFF THE THROTTLE TO CORRECT THE ISSUE. LET ME EXPRESS THAT I IN NO WAY AM ATTEMPTING TO CAUSE PROBLEMS FOR AUDI. I AM ONLY CONCERNED FOR MY SAFETY. ITS QUITE CONCEIVABLE THAT WHEN MY CAR HAS THIS TROUBLE WHILE MERGING INTO TRAFFIC THAT I COULD GET HIT FROM BEHIND AS I MUST IMMEDIATELY LIFT OFF THE ACCELERATOR TO RESOLVE THE ISSUE. *TR"

- NHTSA Complaint on July 6, 2017 for 2012 Audi S4: "PREMATURE TRANSMISSION MECHATRONIC FAILURE. CAR UNABLE TO REVERSE DURING A 3 POINT TURN IN A ROADWAY ACROSS TRAIN TRACKS. SINCE NEW THE CAR HAD A CLUNKY TRANSMISSION. IT PROGRESSIVELY GOT WORSE BUT WHEN BROUGHT TO THE DEALER IT WAS ALWAYS, "OPERATING WITHIN MANUFACTURER'S SPECIFICATIONS" THIS IS THE 2ND AUDI IN A ROW THAT HAS BEEN BROUGHT IN MULTIPLE TIMES FOR A PROBLEM THAT THE DEALER CLAIMS ISN'T A PROBLEM AND IS "OPERATING IN SPECS OF THE MANUFACTURER".

- NHTSA Complaint on June 14, 2017 for 2012 Audi S4: "DSG TRANSMISSION IS SHIFTING VERY ROUGH AND SOMETIMES SLIPS. ALSO LURCHES FORWARD

SUDDENLY FROM A STOP CAUSING THE CAR TO LUNGE FORWARD."

- NHTSA Complaint on April 17, 2017 for 2012 Audi S4: "GEARBOX MALFUNCTION (WITH CODES P179E AND P179F) MAY CAUSE THE CAR ENTER ONE OF THE "LIMP MODE" STATES, WHICH CAN CUT ENGINE POWER FROM THE TRANSMISSION. A MESSAGE ON THE DASH MAY SAY "GEARBOX MALFUNCTION" WITH A MESSAGE IF THE CAR IS DRIVEABLE OR MUST BE BROUGHT TO THE REPAIR SHOP. IN SOME CASES, THIS LOSS OF POWER CAN MAKE THINGS DIFFICULT TO PULL OVER SAFELY, AS THE STALL CAN HAPPEN IN AN INTERSECTION, OR IN STOP AND GO TRAFFIC ON THE FREEWAY. AUDI HAS RECOGNIZED THIS PROBLEM IN THE FORM OF A TSB (2032211), HOWEVER, ALL CARS WITH THIS PARTICULAR TRANSMISSION MAY EXPERIENCE A SIMILAR ISSUE, AT ANY TIME, DESPITE FOLLOWING MANUFACTURER SERVICE INTERVALS. THE ISSUE MAY APPEAR TO BE INTERMITTENT AND MAY NOT ENTER FULL LIMP MODE UNTIL MANY MILES LATER. MY INITIAL ENCOUNTER WITH QUESTIONABLE TRANSMISSION BEHAVIOR WAS ABOUT 10-15K MILES PRIOR. THIS PARTICULAR CASE DOCUMENTED WAS THE WORST SCENARIO, BUT SIMILAR SCENARIOS (COMING OFF THE FREEWAY AND STALLING SHORTLY AFTER STOPPING, OR NOT BEING ABLE TO ENGINE BRAKE PROPERLY DUE TO TRANSMISSION REFUSING TO SHIFT) HAVE ALSO BEEN EXPERIENCED."

- NHTSA Complaint on October 24, 2015 for 2012 Audi S4: "DSG TRANSMISSION STARTED TO SHIFT POORLY. SHIFTS WOULD "SLIP" BETWEEN GEARS AND SOMETIMES IT WOULD DOWN SHIFT VERY HARD. THIS OCCURED MOSTLY IN URBAN DRIVING, STOP AND GO."

- NHTSA Complaint on September 16, 2015 for 2012 Audi S4: "VERY ABRUPTLY SHIFTS UP OR DOWN LAUNCHING THE CAR FORWARD WITHOUT WARNING"

- NHTSA Complaint on March 19, 2015 for 2012 Audi S4: "I OWN A 2012 AUDI S4 WITH A 7 SPEED DSG TRANSMISSION AND NOTICE HARD SHIFTING IN 1-2 AND 2-1 AND ALSO INTO REVERSE AND DRIVE. I HAVE READ ABOUT THIS BEING A MECHTRONICS UNIT OR WHOLE REPLACEMENT OF THE TRANSMISSION CAN BE NEEDED. AFTER BRINGING THE CAR INTO AUDI 4 TIMES WITH THESE ISSUES THEY FINALLY SAID THAT I NEED TO REPLACE THE TCU AND UPDATE SOFTWARE ON THE ECU. I ASKED IF THIS WILL FIX THE ISSUE AND THEY SAID THAT THIS REPAIR WILL BE THE FIRST IN AN ORDER OF PARTS TO BE REPLACED TO HOPEFULLY FIX THE PROBLEM. NEXT WOULD BE THE MECHTRONICS OR THE ENTIRE TRANSMISSION. I BOUGHT THE CAR WITH 29K MILES AND 8 MONTHS LEFT ON THE FACTORY WARRANTY FROM A LOCAL SMALL DEALERSHIP. AFTER PURCHASING THE CAR AND GOING TO THE DEALER WITH THESE ISSUE 4 TIMES..NOW THEY TELL ME AUDI VOIDED THE POWER TRAIN WARRANTY OF THE CAR AT 5K MILES DUE TO A ECU TUNE. SO THEY ARE DENYING THE CLAIM. I TALKED TO A LOCAL TUNER TO SEE IF THE CAR HAD A TUNE ON THE ECU..THEY SAID NO..I ALSO CALLED

SEVERAL NATIONWIDE TUNERS TO ASK THEM IF MY CARS VIN WAS ON RECORD OF GETTING A TUNE AND THEY SAID NO. SO SINCE IT WAS BEFORE I BOUGHT THE CAR I DO NOT KNOW WHAT COMPANY OR FOR HOW LONG IT WAS TUNED FOR. THE LOCAL DEALER NEVER TOLD ME WHILE BRINGING THE CAR IN FOR TRANSMISSION ISSUES THAT I DID NOT HAVE A POWER TRAIN WARRANTY UNTIL A MAJOR COST WAS INVOLVED. HEY KNOW THERE ARE PROBLEMS WITH THESE TRANSMISSION HENCE THE UPDATED TCU AND SOFTWARE UPDATE TO THE ECU AS WELL AS THE UPDATED PART# OF THE MECHTRONICS UNIT THEY WOULD REPLACE IT WITH. THIS SHOULD BE SOMETHING AUDI SHOULD COVER UP TO 100K WITH A TUNE ECU OR NOT. A ECU TUNE HAS NO CONTROL OVER THE TRANSMISSION TCU OR THE PARTS IN THE TRANS."

- NHTSA Complaint on November 8, 2016 for 2013 Audi S4: "THE PROBLEMS STARTED BY A WARNING ON MY DISPLAY SAYING TO PULL OVER GEAR BOX OR TRANSMISSION FAILURE. YOU HAVE SECONDS TO PULL OVER BEFORE THE CAR NO LONGER FUNCTIONS. EVEN THOUGH YOU ARE IN GEAR ALL THAT HAPPENS IS THE ENGINE REVS AND YOU GO NO WHERE. MY CAR HAS ONLY 38,500 MILES ON IT AND IS OUT OF WARRANTY BY A COUPLE OF MONTHS. I HAD THE CAR TUNED ADDING SOMEWHERE AROUND 100 HP 6,000 MILES BEFORE THIS HAPPENED AND AUDI SAYS THIS IS WHAT CAUSED THE ISSUE. TO FIX THE SENSOR ERROR CODE P179E00 WAS AROUND $5,000. 00 EVEN THOUGH THERE HAS BEEN A SERVICE BULLETIN OUT FOR THIS PROBLEM FOR MORE THAN A YEAR. AFTER LOOKING AROUND DECIDED TO HAVE AUDI DO THE REPAIR BUT WITHIN AN HOUR OF LETTING THEM KNOW TO GO AHEAD WITH REPAIRS THEY CALLED ME BACK AND TOLD ME THAT IT COULD BE THE WHOLE TRANSMISSION WHEN THEY TESTED THE FLUID IT CAME BACK WITH SOME METAL SHAVING IN IT. THIS WOULD BE A $12,000.00 REPAIR. THE SAFETY OF THIS TRANSMISSION IS IN QUESTION FOR THE FACT THAT THERE HAS BEEN A SERVICE BULLETIN OUT FOR THIS TRANSMISSION EVEN THOUGH AUDI OF AMERICA DENIES THAT MY VIN IS PART OF THE SERVICE RECALL. IT IS PRETTY SCARY WHEN YOU DRIVING AND THE TRANSMISSION JUST SHUTS DOWN AND YOU AND YOU CAR ARE JUST STUCK IN TRAFFIC AS CARS DODGE YOU AND FLY BY YOU AND YOU DEAD CAR."

- NHTSA Complaint on October 15, 2016 for 2014 Audi S4: "WHILE DRIVING, A SUDDEN BRAKE FOLLOWED BY A QUICK ACCELERATION LEADS TO BUCKING WITH ACCELERATION AND THE ENGINE REMAINING REVVED UP. WITH BRAKING, THE CAR LUNGES FORWARD. THE ONLY WAY TO CHANGE IT IS BY SHUTTING THE CAR OFF ENTIRELY. HAS OCCURRED AT LEAST 7 TIMES IN PASSED 2.5 YEARS. RESEARCH INDICATES A FAULTY MECHATRONICS UNIT, BUT 2 NY DEALERSHIPS CONTINUE TO STATE NO ISSUE."

- NHTSA Complaint on March 23, 2016 for 2010 Audi S5: "2010 AUDI S5 S-TRONIC

1

TRANSMISSION JUMPS AND JERKS WHEN COMING TO A COMPLETE STOP."

2

3

- NHTSA Complaint on September 18, 2016 for 2010 Audi S5: "WHEN DRIVING IN HOT WEATHER, ON A BUSY BOULEVARD, COMING TO A RED LIGHT, AS AUTOMATIC TRANSMISSION SHIFTS DOWN TO FIRST GEAR, CAR LURCHES FORWARD WITH A STRONG BANG IN THE TRANSMISSION. ALMOST HIT PEDESTRIANS IN THE CROSSWALK. IF I WAS NOT HEAVY ON THE BRAKE PEDAL THERE WOULD NO DOUBT HAVE BEEN INJURIES. THIS IS NOT AN ISOLATED INCIDENT. IT HAS HAPPENED MANY TIMES AND WITHOUT WARNING. AUDI SERVICE TELLS ME IT IS THE MECHATRONIC UNIT IN THE TRANSMISSION MALFUNCTIONING WHEN IT GETS HOT. NEEDS TO BE REPLACED. I HAVE BEEN COMPLAINING ABOUT THIS TO AUDI SERVICE FOR MORE THAN FOUR YEARS AND IT IS GETTING WORSE. AUDI HAS BEEN STALLING AND HAS REFUSED TO REPLACE THE MECHATRONIC UNIT UNDER WARRANTY."

4

5

6

7

8

9

10

11

- NHTSA Complaint on November 20, 2015 for 2010 Audi S5: "TL* THE CONTACT OWNS A 2010 AUDI S5. THE CONTACT STATED THAT THE VEHICLE LUNGED FORWARD WITHOUT WARNING WHEN THE GEAR ENGAGED. THE DEALER DIAGNOSED THAT THE MECHATRONICS WAS DEFECTIVE AND NEEDED TO BE REPLACED. THE VEHICLE WAS REPAIRED; HOWEVER, THE FAILURE PERSISTED. THE CONTACT MENTIONED THAT THE VEHICLE WENT BACK TO THE DEALER TWO MORE TIMES AND THE TECHNICIAN DIAGNOSED THAT THE TRANSMISSION NEEDED TO BE REPLACED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 65,000."

12

13

14

15

16

17

18

- NHTSA Complaint on October 9, 2015 for 2010 Audi S5: "THERE IS A KNOWN PROBLEM WITH THE AUDI S-TRONIC TRANSMISSION WHERE THE MECHATRONICS UNIT WHICH CONTROLS THE SHIFTS IS DEFECTIVE. THIS WILL RESULT IN THE MECHATRONIC NEEDING TO BE REPLACED TO THE TUNE OF 4 THOUSAND DOLLARS OR AT WORST THE TRANSMISSION TO BE REPLACED FOR 11 THOUSAND DOLLARS. THE CAR WILL START DOING HARD 2 TO FIRST SHIFTS AND ALMOST THROW YOU INTO THE CAR IN FRONT OF YOU IF YOU DO NOT PUSH DOWN HARD ON THE BRAKES. THIS HAPPENS ON A CITY STREET OR IN HEAVY TRAFFIC ON THE HIGHWAY AND BEGINS WHEN THE TRANSMISSION OIL GETS HOT. TECHNICALLY THE VEHICLE CAN BE IN MOTION OR STATIONARY AS IT HAPPENS WHEN IT SHIFTS DOWN TO FIRST GEAR. THIS TRANSMISSION IS IN THE 2010 AUDI S5 CABRIOLET ONLY AS THE COUPE HAS A DIFFERENT DRIVETRAIN. THE AUDI S4 HAS THE TRANSMISSION AS WELL AND EXPERIENCES THE SAME ISSUES."

19

20

21

22

23

24

25

26

27

- NHTSA Complaint on September 16, 2015 for 2010 Audi S5: "AFTER DRIVING IN STOP AND GO DRIVING FOR A PERIOD OF TIME THE TRANSMISSION STARTS TO ACT UP. WHEN COMING TO A COMPLETE STOP THE CAR WILL SHIFT DOWN INTO FIRST GEAR AFTER THE STOP AND CAUSE THE CAR TO LEAP

28

FORWARD. I HAVE ALMOST REAR ENDED SEVERAL CARS AS A RESULT OF THIS. IT IS A WELL KNOW PROBLEM WITH THE AUDI S-TRONIC TRANSMISSIONs FOUND IN THE AUDI S5 CABRIOLET AND THE AUDI S4 MODELS. THE OIL IN THE MECHATRONICS UNIT HEATS UP AND CAUSES PROBLEMS WITH THE CIRCUITRY WHICH CAUSES THE ISSUE. I HAVE ALREADY HAD IT IN ONCE FOR A "SOFTWARE UPDATE" TO THE TUNE OF 800 DOLLARS WHICH DID NOTHING. NOW IT IS LOOKING LIKE THEY WILL NEED TO REPLACE THE COMPONENT WHICH CAN COST UP TO 11 THOUSAND DOLLARS IF THE TRANSMISSION HAS BEEN DAMAGED."

- NHTSA Complaint on January 18, 2017 on 2011 Audi S5: "UNABLE TO GET PARTS FOR FAULTY MSE TRANSMISSION CURRENTLY IN MY 2011. AUDI UPGRADED BECAUSE OF KNOWN PROBLEMS TO NSY MODEL TRANSMISSION AND EXPECTS OWNER TO PAY EXPENSE. THEY DID NOT AND HAVE NOT MAKE THE CUSTOMER/CONSUMER AWARE OF THIS UNTIL YOU FORCED TO TAKE IT IN FOR SERVICE DUE TO SENSORS AND LIMITED FUNCTIONALITY IN DRIVING CAPABILITIES. VEHICLE HESITATES AND DROPS GEARS WHILE IN MOTION. THIS OCCURRED ON A MAJOR HIGHWAY CREATING A HAZARDOUS EVENT, IN ADDITION THEY WILL ALSO CHARGE YOU FOR A DIAGNOSIS AND BOGUS SERVICE WHILE THEY ARE ALREADY AWARE THAT THE PARTS ARE NOT AVAILABLE FOR THAT TRANSMISSION. UPON RESEARCH I HAVE FOUND THIS IS NOT AN ISOLATED PROBLEM, OR DUE TO DRIVING, MILEAGE, WEAR AND TEAR, PREVIOUS OWNER, LACK OF WARRANTY OR WHATEVER ELSE THEY WANT TO COME UP WITH. *TR"

- NHTSA Complaint on October 17, 2017 for 2013 Audi RS5: "THE MECHATRONIC UNIT ON MY VEHICLE NEEDED TO BE REPLACED. I WAS DRIVING AND A WARNING POPPED UP ON MY DASHBOARD SAYING "TRANSMISSION MALFUNCTION, YOU MAY CONTINUE DRIVING". I WAS QUOTED $5000 FOR THE . THIS IS A COMMON ISSUE NOT ONLY WITH MY MODEL, BUT ACROSS ALL AUDI MODELS WITH THE DSG TRANSMISSION. AUDI CUSTOMERS SHOULD NOT BE FORCED TO PAY FOR AUDI PUTTING FAULTY EQUIPMENT IN THEIR VEHICLES."

### Audi Did Not Disclose the Safety Defect to Plaintiffs, the Class, or Subclass Members.

40.    Despite Audi's knowledge of the defect present in Class Vehicles, Audi failed to disclose this unresolved safety defect to new and subsequent purchasers and lessees of Class Vehicles, and instead chose to omit conveying this information to buyers at the time they were considering purchasing Class Vehicles. Upon information and belief, Audi continues to manufacture and sell Class Vehicles equipped with the defective transmissions without any disclosure to consumers about these hidden safety defects.

41.   Audi's Technical Service Bulletins concerning the transmission problems in Class Vehicles are not directly sent to purchasers and did not fully disclose the pervasiveness of the defect, the safety issues arising from the defect, or the uncertain nature of the prescribed fixes.

42.   Plaintiffs, Class Members, and Subclass Members would not have purchased or leased their vehicles, or would have paid significantly less for them, had they known of the transmission defect or safety hazard at the point of sale. Plaintiffs, Class Members, and Subclass Members were denied information that was material to their purchase or lease and material to their willingness to use their Class Vehicles when Audi did not disclose the defect to them at the point of sale. Such information was material to a reasonable consumer in making a decision to purchase, lease, or use a Class Vehicle.

**Audi's Express and Implied Warranties Cover Repairs and Replacements Associated with the Transmission Defect, But Audi Has Been Unable to Repair the Defect.**

43.   For each Class Vehicle sold by Audi, an express written warranty was issued which covered the vehicle, including but not limited to, the transmission system.

44.   Audi provided all purchasers and lessees of the Class Vehicles with a New Vehicle Basic Limited Warranty. The Limited Warranty "begins on the date the vehicle is delivered to either the original purchaser or the original lessee; or if the vehicle is first placed in service as a demonstrator or company car, on the date such vehicle is first placed in service."

45.   Under its New Vehicle Basic Limited Warranty, Audi expressly warranted that: "Audi provides Limited New Vehicle Warranty coverage for your vehicle. The warranty duration is 4 years or 50,000 miles from your vehicle's in-service date, whichever occurs first, and covers defects in manufacturer's material and workmanship." The express warranty provides that "The warranty covers repair or replacement to correct a defect in manufacturer's material and workmanship. Your authorized Audi dealer will repair the defective part or replace it with a new or remanufactured Genuine Audi Part free of charge."

46.   Upon information and belief, when Audi has replaced its defective transmissions under warranty, it is replacing the transmissions with equally defective transmissions.

47.   In addition, Audi sold or leased the Class Vehicles to the Plaintiffs, Class, and Subclass Members under an implied warranty of merchantability. Audi's express warranty confirms that Audi

1   offers implied warranties, including the implied warranty of merchantability, for the same duration as

2   the express warranty. Audi impliedly warranted that the Class Vehicles were merchantable in that they

3   were in a safe and non-defective condition for use by their owners or lessees for the ordinary purpose

4   for which they were intended, and were not otherwise injurious. Audi is under a duty to design, construct,

5   manufacture, inspect, and test the Class Vehicles so as to make them suitable for the ordinary purposes

6   of their use—to safely transport the driver and any passengers during ordinary use.

7        48.    Audi breached its warranties for the Class Vehicles when it designed, manufactured, and

8   sold Class Vehicles with defects in the transmission system, and when it refused to or was unable to

9   repair the defect in the transmission when the transmission failed under warranty. The Class Vehicles

10  are defective, unsafe, unfit for the ordinary purposes for which they are intended to be used, and

11  therefore, not merchantable.

12                      **PLAINTIFFS' INDIVIDUAL ALLEGATIONS**

13       49.    Like all new or certified pre-owned Audi vehicles, Plaintiffs' Class Vehicles each came

14  with Audi's New Vehicle Basic Limited Warranty. This warranty was a material factor in Plaintiffs'

15  decisions to purchase their respective Class Vehicles.

16       50.    At the time of Plaintiffs' purchases, Audi failed to disclose, concealed, and/or omitted

17  divulging to Plaintiffs and other potential buyers its knowledge of consumer complaints, malfunctions,

18  safety hazards, and material facts related to the Class Vehicles' defective transmission.

19       51.    Before Plaintiffs purchased their respective Class Vehicles, Plaintiffs were never

20  informed of, or aware of, the Class Vehicles' transmission failures. Plaintiffs were unaware of the

21  Technical Service Bulletins that address the Class Vehicles' defect and recommend a complete

22  Mechatronic replacement and other significant repairs to address the transmission defect.

23       52.    Had Audi disclosed the transmission defect, Plaintiffs would not have purchased the

24  Class Vehicles or would have paid significantly less for them. Plaintiffs were denied information

25  material to their purchases and that would affect their willingness to drive the Class Vehicles. Instead,

26  Plaintiffs relied upon Audi's express and implied warranties that the Class Vehicles were fit and safe

27  for their ordinary purpose, merchantable, and were sold free from defects.

28       53.    Plaintiffs used their Class Vehicles in a reasonable manner and followed maintenance

1  recommendations.

2  **Mike Madani**

3      54.    On or about April 10, 2013, Plaintiff Madani purchased a new 2013 Audi S7 from Audi

4  of Downtown L.A. in Los Angeles, California. Plaintiff Madani paid approximately $100,000 for his

5  class vehicle. Before and at the time of his purchase, the transmission defect was not disclosed to

6  Plaintiff Madani.

7      55.    In approximately October 2017, with approximately 53,000 miles on his Class Vehicle,

8  Plaintiff Madani was driving his class vehicle when his vehicle started to buck and jerk when he

9  attempted to accelerate from a stopped position. He felt as though someone was crashing into him from

10  behind when attempting to shift his vehicle into gear. This bucking and jerking occurred repeatedly

11  throughout his entire trip with his vehicle. Plaintiff Madani sought an inspection of the class vehicle at

12  Pacific Tire Motorsports in Redondo Beach, California by his regular mechanic.

13      56.    On approximately October 15, 2017, Plaintiff Madani discussed the bucking and jerking

14  and the problems attempting to accelerate from a stopped position with his mechanic. His mechanic

15  mentioned that Audi issued a "bulletin or something regarding the transmission." Plaintiff Madani's

16  mechanic took the Class Vehicle to Audi Pacific in Torrance, California for answers.

17      57.    At Audi Pacific, the service department updated the vehicle's software and changed the

18  oil in the vehicle. Plaintiff Madani was charged $420.00 for the software update.

19      58.    Immediately after the software update, the vehicle resumed bucking and jerking when he

20  attempted to shift into gear from a stopped position. He took his vehicle to Pacific Tire for a second

21  inspection.

22      59.    At Pacific Tire, his mechanic discovered the vehicle was "GOING INTO LIMP MODE

23  AFTER HARD 1-2 AND 2-3 TRANSMISSION SHIFTS," so his mechanic performed a transmission

24  fluid service and filter replacement, then took the vehicle back to Audi Pacific for a second software

25  update. At Audi Pacific, due to "harsh shifts from 3-2 in sport mode TSB 2035049/2," the Service

26  Department performed a TCM update on the vehicle.

27      60.    Plaintiff Madani was charged $1,042.96 by Pacific Tire for the work and was told that

28  this repair would not be covered under the vehicle's New Vehicle Limited Warranty.

61.     Today, Plaintiff Madani's Class Vehicle still suffers from the transmission defect. His vehicle's transmission "kicks" during its use. Plaintiff Madani would not have purchased the vehicle had he known of the transmission defect. He did not receive the benefit of his bargain.

**Eric Walley**

62.     On November 1, 2016, Plaintiff Walley purchased a used 2013 S7 from Empire Exotic Motors in Addison Texas. Plaintiff Walley paid $55,000 for his vehicle before taxes and the vehicle had approximately 46,000 miles on its odometer at the time of his purchase.

63.     On November 1, 2017, with approximately 55,100 miles on his Class Vehicle , Plaintiff Walley attempted to put his vehicle in reverse, but the vehicle started to buck and jerk back and forth. The bucking and jerking of his Class Vehicle was so severe that he felt as though his vehicle was being bumped by another vehicle.

64.     In addition, when shifting gears and starting to accelerate, Plaintiff Walley noticed his Class Vehicle would "jerk" between gears and not shift smoothly.

65.     On November 1, 2017, Plaintiff Walley took his vehicle in for an inspection and repair at Audi Concord in Concord, CA. There, service technicians told Plaintiff Walley that the issue with his vehicle was normal, and they could not recreate either the bucking or jerking issue or the jerk between gear shifts. The service technicians did not remedy the transmission defect.

66.     The transmission defect, as described above, is still a problem for Plaintiff Walley. He would not have purchased the Class Vehicle had he known of the transmission defect. His transmission has not been replaced or repaired under the New Vehicle Limited Warranty.

**Richard DeVico**

67.     On October 10, 2016, Plaintiff Richard DeVico purchased a used 2010 Audi S4 with approximately 44,000 miles on its odometer. He purchased the Class Vehicle for approximately $27,900.00 from Habberstad BMW located in Huntington, New York.

68.     Prior to purchasing the vehicle, Plaintiff DeVico reviewed a CarFax on his vehicle's repair history. That CarFax report showed that his vehicle's engine was replaced on February 6, 2014 with 28,579 miles on the odometer, and that on June 20, 2014, the vehicle's transmission was replaced with 30,444 miles showing on the odometer.

69.     Soon after his purchase of the Class Vehicle, Plaintiff DeVico was forced to replace the power steering pump. At that time, the vehicle had approximately 46,000 miles on the odometer.

70.     Since his vehicle reached about 50,000 miles on the odometer, Plaintiff DeVico's vehicle's transmission clunks when rolling to a stop, and it jolts forward when accelerating from a stop, feeling as if the vehicle has been rear-ended. The dashboard a various times displays error warnings, including "DSG Malfunction, you may continue to drive" and "reverse gear malfunction." At times, it jumps gears (e.g., shifting from first to third gear or from second to fourth gear). Other times, it will not go into reverse at all. This is extremely dangerous for Plaintiff DeVico as being unable to reverse leaves him and his Class Vehicle vulnerable to getting stuck on rail tracks, unable to park in proper places, and not being able to safely back out of parking spaces or at all.

71.     Plaintiff DeVico's vehicle currently has approximately 60,000 miles on the odometer. Because he cannot afford to make extensive repairs on his vehicle, he is unable to drive it. He has not received the benefit of his bargain and would not have purchased the Class Vehicle if he had been aware of the defect.

**Romsin Oushana**

72.     On April 1, 2016, Plaintiff Romsin Oushana purchased a Certified Pre-Owned 2015 Audi S4 with approximately 7,000 miles on its odometer. He purchased the Class Vehicle for approximately $51,000.00 from Audi Sacramento located in Sacramento, California. When he purchased the Class Vehicle, it came with an Audi Certified Pre-Owned Vehicle Warranty that extends his warranty coverage through 6-years/100,000 miles. In addition, he purchased a supplemental warranty for his vehicle from the Audi dealership.

73.     Prior to purchasing the vehicle, Plaintiff Oushana spoke to the Audi salesperson and others at the dealership about the Class Vehicle. No one at the dealership before or during his purchase told him about the transmission defect or the Technical Service Bulletins that had already been released by Audi about the defective transmission. Had Plaintiff Oushana been told of the known problems, he would have purchased a different brand and/or model of car.

74.     In approximately June 2017, Plaintiff Oushana began experiencing the juddering and jerking of his Class Vehicle, primarily when he is traveling at slow or medium speeds. Sometimes when

the gas pedal is pushed, the vehicle will hesitate, jerk, then finally accelerate. Although the problem is most obvious at lower speeds, it occurs at any speed. When Plaintiff Oushana tries to accelerate in defensive driving situations where he needs to make a quick adjustment, his vehicle does not properly accelerate and places him at risk for an accident, a serious safety concern.

75.     Since he purchased his vehicle, all of its normal maintenance has been performed at an Audi dealership. He has spoken to the Audi dealership frequently about how his vehicle is running and about its reliability, in part because he has a long daily commute for work and must have safe and reliable transportation. Despite certain maintenance being included in the Certified Pre-Owned Warranty, the dealership has been difficult to deal with.

76.     In addition to speaking to the Audi dealership, he has received advertising and mail from Audi since his purchase, but at no time has Audi or the Audi dealership mentioned the known transmission problem. His Class Vehicle has not been recalled for this defect.

77.     Plaintiff Oushana's Class Vehicle currently has approximately 54,000 miles on the odometer. He would not have purchased it if he had been aware of the transmission defect, or he would have expected to pay far less for the Class Vehicle. He fears that his vehicle is worth significantly less as a result of the transmission defect, and as a result, would have a severely diminished resale value. He did not receive the benefit of his bargain when he purchased his Class Vehicle.

## CLASS ACTION ALLEGATIONS

78.     Pursuant to Rules 23(b)(2), and/or 23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs will seek certification of a nationwide class defined as follows:

**All persons who own or lease a Class Vehicle (i.e., 2010 - 2015 Audi S4; 2010-2015 Audi S5; 2010-2015 Audi S6; 2010-2015 Audi S7; or 2010-2015 Audi RS5) with a DSG transmission in the United States (the "Class").**

79.     Plaintiffs also seek certification of a California Subclass defined as follows:

**All persons who own or lease a Class Vehicle (i.e., 2010 - 2015 Audi S4; 2010-2015 Audi S5; 2010-2015 Audi S6; 2010-2015 Audi S7; or 2010-2015 Audi RS5) with a DSG transmission and who purchased the vehicle in and/or reside in California.**

80.     Plaintiffs reserve the right to amend or change their class definitions prior to class

certification as necessary to conform with the facts as clarified through discovery and litigation.

81.  The Class and Subclass definitions specifically exclude:

a.  all persons who assert personal injury claims arising from or relating to the transmission failures in their class vehicle;

b.  all persons who have had their class vehicle re-purchased or "bought back" by Audi (whether the buy-back was required by law or was solely pursuant to agreement);

c.  any persons or other entity currently employed by or affiliated with Defendants;

d.  any person, firm, trust, corporation, or other entity who purchased a class vehicle strictly for resale from Defendants;

e.  any Judge presiding over this action; and

f.  all persons who properly execute and file a timely request for exclusion from the Class.

82.  <u>Numerosity</u>: the Class and Subclasses are comprised of tens of thousands of Audi owners throughout the United States, making joinder impractical. Moreover, the Class and Subclass are composed of an easily ascertainable, self-identifying set of individuals and entities who purchased Class Vehicles. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. The precise number of Class and Subclass Members can be ascertained only through discovery, which includes Defendants' sales, service, and complaint records. The disposition of their claims through a class action will benefit both the parties and this Court.  Furthermore, Members of the Class and Subclass may be identified from records maintained by Audi and its agents, and may be notified of the pendency of this action by mail, or other appropriate means, using a form of notice customarily used in consumer class actions.

83.  <u>Commonality</u>: The critical questions of law and fact common to the Class and Subclass that will materially advance the litigation include, but are not limited to, the following:

a.  Whether the transmissions installed by Defendants in the Class Vehicles were defective;

b.  Whether Defendants knew about the defective transmissions in Class Vehicles when they sold the Class Vehicles;

c.   Whether the transmission defect constitutes a breach of the implied warranty of merchantability;

d.   Whether refusing or failing to repair the transmission defect constitutes a breach of the express warranty;

e.   Whether the Defendants' concealment of and/or failure to disclose the defect in Class Vehicles constitutes unfair or deceptive acts or practices in violation of state consumer protection statutes;

f.   Whether information about the defect was material to a reasonable consumer in making a decision to purchase, lease, or use Class Vehicles;

g.   Whether Audi's express warranty has failed its essential purpose;

h.   Whether members of the Class and Subclass are entitled to be notified and warned about the transmission defect and are entitled to the entry of final and injunctive relief compelling Defendants to issue a notification and warning to all Class and Subclass Members concerning such a defect;

i.   Whether Defendants deliberately misrepresented or failed to disclose or concealed material facts to Plaintiffs and the Class and Subclass Members;

j.   Whether Audi's repairs to its transmissions are effective;

k.   Whether Audi replaces its defective transmissions with equally defective transmissions;

l.   Whether Audi acted or refused to act on grounds generally applicable to the Class and/or Subclass, thereby making the award of equitable relief and/or restitution appropriate to the Class as a whole;

m.   Whether Plaintiffs and Class and Subclass Members would have purchased their Class Vehicles, or whether they would have paid a lower price for them, had they known of the transmission failures;

n.   Whether Plaintiffs and Class and Subclass Members are entitled to actual damages; and

o.   Whether Plaintiffs and the Class and Subclass are entitled to restitution and/or disgorgement.

84.   <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the members of the Class and Subclass, as all such claims arise out of Defendants' conduct in designing, manufacturing, warranting, and selling the Class Vehicles with the same transmission defect.

85.   <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of the Class Members and have no interests antagonistic to those of the Class. Plaintiffs have retained counsel experienced in the prosecution of complex class actions including, but not limited to, consumer class actions involving, inter alia, breach of warranties, product liability, and product design defects.

86.   <u>Predominance</u>: This class action is appropriate for certification because questions of law and fact common to Class and Subclass Members predominate over questions affecting only individual members.

87.   <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class and Subclass Members is impracticable. Should individual Class and Subclass Members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court. Because the damages suffered by each Class and Subclass Member are relatively small compared to the expense and burden of prosecuting this compelling case against a well-financed, multibillion-dollar corporation, this class action is the best avenue for each Class and Subclass Member to redress the harm that Audi caused.

88.   This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that are generally applicable to the Class and Subclass Members, thereby making final injunctive relief appropriate with respect to the Class and Subclasses.

89.   This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure

23(b)(3) because the questions of law and fact common to the members of the Class and Subclass predominate over any questions that affect only individual Members, and because the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy.

## TOLLING OF STATUTES OF LIMITATIONS

90.     Discovery Rule. Plaintiffs' claims accrued upon discovery that the transmission system that Audi designed, manufactured, and installed into the Class Vehicles suffered from transmission failures, and that the transmission failures could not be repaired. While Audi knew and omitted the fact that the transmissions suffer from a defect that causes failures, Plaintiffs, Class Members, and Subclass Members could not and did not discover this fact through reasonable diligent investigation until after they experienced failures and reasonably excluded other potential causes of the failures.

91.     Active Concealment Tolling. Any statutes of limitations are tolled by Audi's knowing and active concealment of the fact that the transmission suffered from a defect. Audi kept Plaintiffs and all Class and Subclass Members ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on the part of Plaintiffs. The details of Audi's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and the Class and Subclass Members. Plaintiffs could not reasonably have discovered the fact that the transmissions suffered from a defect that would cause repeated and significant failures.

92.     Estoppel. Audi was and is under a continuous duty to disclose to Plaintiffs, as well as Class and Subclass Members, the true character, quality, and nature of the transmissions. At all relevant times, and continuing to this day, Audi knowingly, affirmatively, and actively misrepresented and omitted the true character, quality, and nature of the transmissions. The details of Audi's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class and Subclass Members. Plaintiffs and Class and Subclass Members reasonably relied upon Audi's knowing and/or active omissions. Based on the foregoing, Audi is estopped from relying upon any statutes of limitation in defense of this action.

93.     Equitable Tolling. Audi took active steps to omit the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased the Class Vehicles

with the defective transmissions. The details of Audi's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of the Plaintiffs and Class and Subclass Members. When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Audi wrongfully omitted its deceitful acts described above. Should it be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

**FIRST CLAIM FOR RELIEF**
**Breach of Express Warranty**
**(On behalf of the Class, or in the alternative, the California Subclass)**

94.     Plaintiffs, individually and on behalf of the Class, or in the alternative, for the California Subclass, hereby incorporate each and every allegation as though fully set forth herein.

95.     Each Class Vehicle sold by Audi included an express New Vehicle Limited Warranty that covered, in part, the transmission and warranted that it would repair or replace any defects in materials and workmanship in the Class Vehicles through 48-months or 50,000 miles. In addition, through its Certified Pre-Owned Vehicle program, Audi extends its warranty up to 72-months or 100,000 miles.

96.     Audi provided all purchasers and lessees of new Class Vehicles with a New Vehicle Limited Warranty, which is transferrable with the sale of the vehicle. The Express New Vehicle Limited Warranty states "Audi provides Limited New Vehicle Warranty coverage for your vehicle. The warranty duration is 4 years or 50,000 miles from your vehicle's in-service date, whichever occurs first, and covers defects in manufacturer's material and workmanship." Further, the express warranty further provides that "The warranty covers repair or replacement to correct a defect in manufacturer's material and workmanship. Your authorized Audi dealer will repair the defective part or replace it with a new or remanufactured Genuine Audi Part free of charge."

97.     The DSG transmissions of the Class Vehicles were defective at the point of sale, and when replaced under warranty, upon information and belief, are equally defective.

98.     Audi knowingly and actively concealed and conceals that its DSG transmission suffers from a defect from Plaintiffs, the Class, and the public. Despite its knowledge of the DSG transmission defect, Audi continues to manufacture, advertise, distribute, and sell the Class Vehicles without

disclosing the safety problems that prevent the Class Vehicles from properly changing gears, accelerating, or driving smoothly.

99.     The details of Audi's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and the Class and Subclass Members. Plaintiffs could not reasonably have discovered the fact that the transmissions suffered from a defect at the point of purchase.

100.     Further, Audi warranted that the Class Vehicles are "safe" and "reliable" while failing to disclose to Plaintiffs and Class Members any hint of the risks posed by the transmission defect, which renders the Class Vehicles dangerous and unreliable.

101.     Plaintiffs gave notice to Audi of their vehicles' defect through its dealers and agents and through its customer service division. Audi was also on notice of the defect by virtue of the NHTSA and other website complaints as set forth herein, as well as its internal investigation of the defect in Class Vehicles that, upon information and belief, began as early as 2010.

102.     Audi breached its warranties by offering for sale and selling defective vehicles that were defective and unsafe from the point of sale, and by refusing to recognize or permanently repair the defect, thereby subjecting the occupants of the Class Vehicles purchased or leased to damages, risks of loss and injury.

103.     Audi's warranty to repair the Class Vehicles fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs, the Class, and the Subclass whole. Audi has refused to replace the transmission with a different, functional transmission, and as Audi's Technical Service Bulletins demonstrate (*see supra* ¶¶ 26-32), Audi is incapable of repairing the defect, despite repeated attempts to do so.

104.     Accordingly, Plaintiffs, the Class, and the Subclass are not limited to the limited warranty of "repair," because the warranty fails of its essential purpose and Plaintiffs, the Class, and the Subclass seek all remedies allowed by law.

105.     Audi's breach of its express warranties proximately caused the Plaintiffs, the Class, and the California Subclass to suffer damages in excess of $5,000,000.00.

106.     Plaintiffs and the Class, or in the alternative the California Subclass, seek full

compensatory damages allowable by law, the diminished value of the Class Vehicles, repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and punitive damages and appropriate equitable relief including injunctive relief, restitution, a declaratory judgment, and a court order enjoining Audi's wrongful acts and practices, and any other relief to which Plaintiffs and the Class or the California Subclass may be entitled, including attorneys' fees and costs.

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Warranty of Merchantability**
**(On behalf of the Class or, in the alternative, California Subclasses)**

107.   Plaintiffs, individually, and for the Class or, in the alternative, the California Subclass, hereby incorporate each and every allegation as though fully set forth herein.

108.   Audi impliedly warranted that the Class Vehicles, which it designed, manufactured, and sold or leased to Plaintiffs and the Class or members of the California Subclass, were merchantable, fit and safe for their ordinary use, not otherwise injurious to consumers, and equipped with adequate safety warnings.

109.   Because the Class Vehicles are equipped with a defective transmission system, the vehicles purchased or leased and used by Plaintiffs, the Class, and Subclass Members are unsafe, unreliable, unfit for their ordinary use when sold, and not merchantable.  Audi breached the implied warranty of merchantability by selling or leasing Class Vehicles to Plaintiffs, the Class, and Members of the California Subclass.

110.   As a direct and proximate result of Audi's breach of the implied warranty of merchantability, Plaintiffs, the Class, and members of the California Subclass suffered damages in excess of $5,000,000.

111.   Plaintiffs and the Class, or alternatively the California Subclass, seek full compensatory damages allowable by law, the diminished value of the Class Vehicles, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and punitive damages, and appropriate equitable relief including injunctive relief, restitution, a declaratory judgment, and a court order enjoining Audi's wrongful acts and practices and any other relief to which Plaintiffs and the Class or, alternatively, the California Subclass, may be entitled, including attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301,** *et seq***.**
**(On behalf of the Class or, in the alternative, California, Subclasses)**

112.     Plaintiffs, individually and for the Class or, in the alternative, the California Subclass, hereby incorporate every allegation as though fully set forth herein.

113.     Plaintiffs, the Class, and Subclass Members are "consumers" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(3).

114.     Audi is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(4) and (5).

115.     The Class Vehicles at issue are "consumer products" within the meaning of the Magnuson-Moss Act, 15 U.S.C. § 2301(6).

116.     For each Class Vehicle, Audi issued an express New Vehicle Limited Warranty that covered the vehicle, including but not limited to the transmission, and which warranted that Audi would repair or replace any part that is defective in material or workmanship under normal use.

117.     Further, Audi warranted that the Class Vehicles are "safe" and "reliable" while failing to disclose to Plaintiffs and Class Members any hint of the risks posed by the transmission defect, which renders the Class Vehicles dangerous and unreliable.

118.     Audi breached its express warranties by offering for sale and selling defective vehicles that were, by construction, defective and unsafe at the point of sale, and failing to repair said vehicles, thereby subjecting the occupants of the Class Vehicles purchased or leased to damages and risks of loss and injury.

119.     Audi's written and implied warranties relate to the future performance of its vehicles because it promised that the transmission of the Class Vehicles would perform adequately for a specified period of time or mileage, whichever came first.

120.     Audi has breached and continues to breach its written and implied warranties of future performance, thereby damaging Plaintiffs and similarly situated Class and Subclass Members, because the Class Vehicles fail to perform as represented due to an undisclosed transmission defect that was present at the point of sale. Audi failed to fully cover or pay for necessary inspections, repairs and/or

vehicle replacements for Plaintiffs, the Class, and the Subclass.

121.    Audi is under a continuing duty to inform its customers of the nature and existence of potential defects in the Class Vehicles.

122.    Such irreparable harm includes, but is not limited to, likely injuries and crashes as a result of the defects in the Class Vehicles.

123.    Plaintiffs and the Class, or in the alternative the Subclass, seek full compensatory damages allowable by law, the diminished value of the Class Vehicles, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and punitive damages, and appropriate equitable relief including injunctive relief, restitution, a declaratory judgment, a court order enjoining Audi's wrongful acts and practices, and any other relief to which Plaintiffs and the Class or, alternatively, the California Subclass, may be entitled, including attorneys' fees and costs.

### FOURTH CLAIM FOR RELIEF
**Breach of Implied Warranty Pursuant to Song-Beverly Consumer Warranty Act, California Civil Code §§ 1791, *et seq.***
**(On behalf of the California Subclass)**

124.    Plaintiffs, individually and for the California Subclass, hereby incorporate each and every allegation as though fully set forth herein.

125.    Plaintiffs and the California Subclass Members are "buyers" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(a).

126.    Audi is a "manufacturer" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(j).

127.    The Class Vehicles at issue are "consumer goods" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791(a).

128.    The New Vehicle Limited Warranty is an "express warranty" within the meaning of the Song-Beverly Consumer Warranty Act, California Civil Code § 1791.2.

129.    At all relevant times, Audi manufactured, distributed, warranted, and/or sold the Class Vehicles. Audi knew or had reason to know of the specific use for which the Class Vehicles were

1   purchased or leased.

2       130.    Audi provided an implied warranty to Plaintiffs and California Subclass Members

3   warranting that the Class Vehicles, including the component parts, are merchantable and fit for the

4   ordinary purposes for which they were sold. However, inter alia, the transmissions in the Class Vehicles

5   suffer from an inherent defect at the time of sale and, thereafter, are not fit for their ordinary purpose of

6   providing reasonably safe and reliable transportation.

7       131.    Audi impliedly warranted that the Class Vehicles are of merchantable quality and fit for

8   such use. The implied warranty includes, among other things: (i) a warranty that the Class Vehicles

9   manufactured, supplied, distributed, and/or sold by Audi are safe and reliable for providing

10  transportation; and (ii) a warranty that the Class Vehicles are fit for their intended use.

11      132.    Contrary to the applicable implied warranties, the Class Vehicles, at the time of sale and

12  thereafter, were not fit for their ordinary and intended purpose of providing Plaintiffs and California

13  Subclass Members with reliable, durable, and safe transportation. Instead, the transmissions in Class

14  Vehicles are defective and suffer from transmission failures that compromise the reliability, durability,

15  and safety of Class Vehicles.

16      133.    As a result of Audi's breach of the applicable implied warranties, owners and/or lessees

17  of the Class Vehicles have suffered an ascertainable loss of money, property, and/or value of their Class

18  Vehicles. Additionally, as a result of the transmission defect, Plaintiffs and California Subclass Members

19  were harmed and suffered actual damages in that the Class Vehicles' transmissions are substantially

20  certain to fail or have failed before their expected useful life has run. The transmission failures create a

21  high risk of accidents, injuries, and even death.

22      134.    Audi's actions, as complained of herein, breached the implied warranty that the Class

23  Vehicles were of merchantable quality and fit for such use, in violation of California Civil Code §§ 1792

24  and 1791.1, et seq.

25      135.    Plaintiffs and the California Subclass seek full compensatory damages allowable by law,

26  the diminished value of the Class Vehicles, the repair or replacement of all Class Vehicles, the refund

27  of money paid to own or lease all Class Vehicles, and any other relief to which Plaintiffs and the

28  California Subclass may be entitled, including attorneys' fees and costs.

**FIFTH CLAIM FOR RELIEF**
**Violation of the California Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(On behalf of the California Subclass)**

136.   Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

137.   Plaintiffs assert this cause of action on behalf of themselves and the California Class.

138.   Audi is a "person" within the meaning of Civil Code §§ 1761(c) and 1770, and has provided "goods" within the meaning of Civil Code §§ 1761(b) and 1770.

139.   Plaintiff and members of the proposed California Subclass are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770, and have engaged in a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

140.   Audi's acts and practices, which were intended to result and which did result in the sale of Class Vehicles with defective transmissions, violate § 1770 of the Consumers Legal Remedies Act for at least the following reasons:

   a.   Audi represents that its vehicles and transmissions had characteristics, uses, or benefits which they do not have;

   b.   Audi advertises its goods with intent not to sell them as advertised;

   c.   Audi represents that its vehicles and transmissions are of a particular standard, quality, or grade when they are not;

   d.   Audi represents that a transaction conferred or involved rights, remedies, or obligations which they do not; and

   e.   Audi represents that its goods have been supplied in accordance with a previous representation when they have not.

   f.   Audi knew but concealed that transmission defect be obvious to the consumer until after warranty coverage expired and that many of the defective transmissions would fail prematurely, but outside the warranty period.

141.   Audi's practices, acts, policies, and course of conduct, including its omissions as described above, were intended to induce, and did induce, Plaintiffs and members of the California

Subclass to purchase or lease the Class Vehicles with defective transmissions.

142.   Audi sold and/or leased the Class Vehicles knowingly concealing that they contained the defects alleged.

143.   Had Audi adequately disclosed the defect, Plaintiffs, members of the proposed Class, and reasonable consumers would not have purchased or would have paid less for their vehicles with the defective transmissions. Furthermore, Audi charges for repairs of Plaintiffs' and class members' transmissions without disclosing that the problem is widespread and that the repairs do not address the root cause of the defect.

144.   Audi's acts are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the Class Vehicles.

145.   Pursuant to the provisions of Cal. Civ. Code § 1782(a), Plaintiffs have or will send notice letters to Audi to provide them with the opportunity to correct their business practices. If Audi does not thereafter correct its business practices, Plaintiffs will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the Consumers Legal Remedies Act.

<u>**SIXTH CLAIM FOR RELIEF**</u>
**Violation of the California Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On behalf of the National Class, or alternatively, the California Subclass)**

146.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs of this complaint.

147.   Plaintiffs bring this claim individually and on behalf of the National Class against Audi, or alternatively, the California Subclass.

148.   California Business & Professions Code § 17200, et seq. ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

149.   Plaintiff s and Class Members are reasonable consumers who do not expect their Class Vehicles to suffer from a variety of transmission defects that include but are not limited to, bucking, jerking, failure to properly accelerate, and failure to transition smoothly or correctly from one gear to

1    another.

2        150.    Further, Audi advertised the Class vehicles as "safe" and '"reliable" while failing to

3    disclose to Plaintiff and Class Members any hint of the risks posed by the transmission defect-which is

4    dangerously unreliable and present at the point of sale.

5        151.    Audi knew the Class Vehicles suffered from inherent defects, were defectively designed

6    or manufactured, would fail to operate as intended, and were not suitable for their intended use.

7        152.    In failing to disclose the transmission defect, Audi knowingly and intentionally concealed

8    material facts and breached its duty not to do so.

9        153.    By their conduct, Audi has engaged in unfair competition and unlawful, unfair, and

10   fraudulent business practices.

11       80.     Audi had a duty to Plaintiff and Class Members to disclose the defective nature of the

12   Class Vehicles because:

13           a.  Audi was in a superior position to know the true facts about the Class Vehicles' safety

14               defect;

15           b.  Audi made partial disclosures about the quality of the Class Vehicles without revealing

16               the defective nature of the Class Vehicles; and

17           c.  Audi actively concealed the defective nature of the Class Vehicles from Plaintiffs and

18               Class Members.

19       154.    The facts regarding the transmission defect that Audi concealed from or failed to disclose

20   to Plaintiff and Class are material in that a reasonable person would have considered them to be

21   important when deciding whether to purchase or lease Class Vehicles.   Had Plaintiffs and Class

22   Members known that the Class Vehicles were defective and posed a safety hazard, they would not have

23   purchased or leased Class Vehicles, or would have paid less for them.

24       155.    Audi continues to conceal the defective nature of the Class Vehicles, even after Class

25   Members have reported problems.

26       156.    Audi's conduct was and is likely to deceive consumers.  Audi's unfair or deceptive acts

27   or practices occurred repeatedly in Audi's trade or business, and were capable of deceiving a substantial

28   portion of the purchasing public.

157.    Audi's acts, conduct, and practices were unlawful in California, in that they constituted:

    a.   Violations of the CLRA;

    b.   Violations of the Song-Berly Consumer Warranty Act; and

    c.   Breaches of the express and implied warranties in violation of California and federal law.

158.    As a result of their reliance on Audi's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Additionally, as a result of the transmission defect, Plaintiffs and Class Members were harmed and suffered actual damages in that the Class Vehicles' are worth less than they would be if they were not prone to the transmission defect.

159.    As a direct and proximate result of Audi's unfair and deceptive practices, Plaintiffs and Class Members have suffered and will continue to suffer actual damages.

160.    Audi has been unjustly enriched and should be required to make restitution to Plaintiffs and the Class pursuant to §§ 17203 and 17204 of the California Business & Professions Code.

161.    Plaintiff and the Class seek all remedies available pursuant to § 17070, et seq. of the California Business & Professions Code, including: full restitutionary damages allowable by law; the diminished value of the Class Vehicles; the repair or replacement of all Class Vehicles; the refund of money paid to own or lease all Class Vehicles, and appropriate equitable relief including injunctive relief, restitution, a declaratory judgment; a court order enjoining Audi's wrongful acts and practices; and any other relief to which Plaintiffs and the Class may be entitled, including attorneys' fees and costs.

**SEVENTH CLAIM FOR RELIEF**
**(Declaratory Judgment Act, 28 U.S.C. § 2201, et seq. and Fed. R. Civ. P. 57)**
**(On behalf of the Class or, in the alternative, the California Subclass)**

162.    Plaintiffs individually and for the Class or, alternatively, the California Subclass, hereby incorporate each and every allegation as though fully set forth herein.

163.    Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

164.    There is an actual controversy between Audi and Plaintiffs concerning whether the Class Vehicles' transmission defect creates an unreasonable safety hazard. Pursuant to 28 U.S.C. § 2201, the

Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

165.    Despite long knowing the nature of the Class Vehicles' defect and its likelihood of placing Plaintiffs, the Class, California Subclass, and the public at risk of grave injury, Audi refuses to publicly acknowledge that the Class Vehicles contain a dangerous defect. Instead, Audi has not advised its consumers and other members of the public of the defect. Audi has uniformly refused to permanently repair the defect and, upon information and belief, does not always cover the defect under the warranty.

166.    Accordingly, based on Audi's failure to act, Plaintiffs seek a declaration that the Class Vehicles are defective, as alleged herein, covered under the New Vehicle Limited Warranty has failed of its essential purpose because Audi cannot repair or replace the defective transmissions. The defective nature of the Class Vehicles is material and requires disclosure to all persons who own them.

167.    The declaratory relief requested herein will generate common answers that will settle the controversy related to the alleged defective nature of the Class Vehicles and the reasons for their repeated failure. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

**EIGHTH CLAIM FOR RELIEF**
**(Unjust Enrichment, pled in the alternative)**
**(On behalf of the Class or, in the alternative, the California Subclass)**

168.    Plaintiffs, individually and for the Class or, alternatively, the California Subclass, hereby incorporate each and every allegation as though fully set forth herein.

169.    Audi knew or should have known that Plaintiffs, the Class, and the California Subclass paid for the Class Vehicles with the expectation that they would perform as represented.

170.    Plaintiffs, the Class, and the California Subclass conferred substantial benefits on Audi by purchasing the defective Class Vehicles. Audi knowingly and willingly accepted and enjoyed those benefits.

171.    Audi's retention of these benefits is inequitable.

172.    As a direct and proximate cause of Audi's unjust enrichment, Plaintiffs, the Class or, in the alternative, the California Subclass, are entitled to an accounting, restitution, attorneys' fees, costs and interest.

**EQUITABLE INJUNCTIVE AND DECLARATORY RELIEF**
**(On behalf of the Class or, in the alternative, the California Subclass)**

173.    Plaintiffs, individually and on behalf of the Class or, in the alternative, the California Subclass, hereby incorporate each and every allegation as though fully set forth herein.

174.    Audi is under a continuing duty to inform its customers of the nature and existence of potential defects in the vehicles it sells.

175.    Audi acted uniformly towards Plaintiffs, the Class, and Members of the California Subclass by refusing to adequately warn about the dangers of the transmission defect or offer a permanent repair of the defect.

176.    Plaintiffs, the Class, members of the California Subclass, and the public will suffer irreparable harm if Audi is not ordered to properly repair all of the Class Vehicles immediately, offer rescission to the Class the California Subclass by repurchasing their Class Vehicles for their full cost and reimbursing the lessees of the Class Vehicles the monies they have paid toward their leases, recalling all defective vehicles that are equipped with the defective transmissions, and ceasing and desisting from marketing, advertising, selling, and leasing the Class Vehicles.

177.    Such irreparable harm includes, but is not limited to, likely injuries as a result of the transmission defects to the Class Vehicles.

178.    Based on the facts alleged herein, and the conduct of Audi in failing to disclose, address, or resolve the problems with the Class Vehicles, Plaintiffs and the Class, or alternatively the California Subclass, seek appropriate equitable relief, including injunctive relief, a declaratory judgment, a court order enjoining Audi's wrongful acts and practices, the repair or replacement of all Class Vehicles, the refund of money paid to own or lease all Class Vehicles, and any other relief to which they may be entitled.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for a judgment against Audi as follows:

A.    For an order certifying the Class and/or Subclass, appointing Plaintiffs as the representatives of the Class and each Subclass, and appointing the law firms representing Plaintiffs as counsel for the Class;

B.    For a declaration that the transmissions in Class Vehicles are defective, the remedial work necessary to correct the defective transmissions is covered by the New Vehicle Limited Warranty, the New Vehicle Limited Warranty fails of its essential purpose, and that applicable statutes of limitations are tolled based upon Audi's knowing concealment of the defect;

C.    For other such injunctive, declaratory and equitable relief as is warranted by the facts and law;

D.    For compensatory damages and/or restitution or refund of all funds acquired by Audi from Plaintiffs as a result of Audi's unlawful, unfair, deceptive and unconscionable practices described herein and in the consumer protection statute of California, including actual, statutory, and/or trebled damages to the extent permitted by law in an amount to be proven at trial;

E.    Trebling of damages suffered by the Class and/or Subclass;

F.    Payment of costs and expenses of suit herein incurred;

G.    Both pre-and post-judgment interest on any amounts awarded;

H.    Payment of reasonable attorneys' fees and expert fees;

I.    An order enjoining Audi to repair or replace the transmissions in the Class Vehicles.

J.    Punitive damages where available; and

K.    Such other and further relief as the Court may deem proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, the Class, and the California Subclass hereby demand trial by jury of all issues triable by right.

Date: April 24, 2018                         s/ *Gregory F. Coleman*
                                             Gregory F. Coleman*
                                             greg@gregcolemanlaw.com
                                             Adam A. Edwards*

adam@gregcolemanlaw.com
Mark E. Silvey*
Mark@gregcolemanlaw.com
Lisa A. White*
lisa@gregcolemanlaw.com
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049

Daniel K. Bryson*
Dan@wbmllp.com
J. Hunter Bryson*
Hunter@wbmllp.com
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan St.
Raleigh, NC 27603
Telephone: 919-600-5000
Facsimile: 919-600-5035

Deborah R. Rosenthal (# 184241)
drosenthal@simmonsfirm.com
**SIMMONS HANLY CONROY LLC**
100 N. Sepulveda Blvd., Suite 1350
Los Angeles, CA 90245
Phone: (415) 536-3986

Mitchell M. Breit**
mbreit@simmonsfirm.com
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue, 7th Floor
New York, NY 10016
Phone:  (212) 784-6400

*pro hac vice*
**pro hac vice motion filed*

*Attorneys for the Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that the foregoing pleading, Plaintiffs' [Corrected] First Amended Complaint, was filed electronically with the Clerk of Court using the ECF system, which sent notification of such filing to all counsel of record on this 24rd day of April, 2018.


*s/ Lisa A. White*
Lisa A. White (*pro hac vice*)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929