UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE MANDANI, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., et al.,<br><br>    Defendants. | Case No. 17-cv-07287-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 56 |

On December 22, 2017, Plaintiffs Mike Madani, Eric Walley, Richard DeVico, and Romsin Oushana[1] brought this putative class action against Defendants Volkswagen Group of America, Inc. ("VWGoA"), Volkswagen AG ("VWAG"), and Audi AG ("Audi") for, among other things, purported breaches of express and implied warranties, and violations of various consumer protection laws based on allegedly defective direct-shift gearbox ("DSG") transmissions in Defendants' 2010–2014 Audi S4, S5, S6, S7, and RS5 vehicles ("Class Vehicles"). On April 23, 2018, Plaintiffs filed a first amended complaint. *See* Dkt. No. 50 ("FAC"). They seek to represent a nationwide class of "[a]ll persons who own or lease a Class Vehicle . . . with a DSG transmission in the United States." *Id.* ¶ 78. They also intend to seek certification of a subclass for purchasers in California. *Id.* ¶ 79.

Now pending before the Court is Defendants' motion to dismiss the operative complaint, briefing for which is complete. *See* Dkt. No. 56 ("Mot."), 58 ("Opp."), 61 ("Reply"). After carefully considering the parties' arguments, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

---

[1] The original complaint included other parties who have since been voluntarily dismissed. *See* Dkt. No. 12 (dismissing Brian Gillard); Dkt. No. 49 (dismissing Shant Bakalian).

## I. BACKGROUND

As alleged, Defendants "designed, manufactured, and sold" 2010–2014 Audi S4, S5, S6, S7, and RS5 vehicles with defective direct-shift gearbox transmissions. *See, e.g.*, FAC ¶¶ 1, 48. The DSG transmissions purportedly "cause sudden, rough, unexpected shaking and violent jerking (commonly referred to as 'juddering' or 'shuddering') when drivers attempt to accelerate Class Vehicles and shift into 2nd, 3rd, or 4th gear and attempt to decelerate." *Id.* ¶ 4. They are further alleged to "hesitate" to accelerate, "surge[] while driving," and "cause a hard downshift or clunk when drivers either slow down or accelerate at low speed." *Id.* ¶¶ 4–5. As described by Plaintiffs, the defective transmissions "create[] unreasonably dangerous situations while driving and increase[] the risk of a crash as the driver is unable to accelerate the vehicle when needed or as expected." *Id.* ¶ 4. Further, Plaintiffs contend that Defendants "sold, leased, and continue[] to sell and lease the Class Vehicles despite knowing of the transmission defect." *Id.* ¶ 6.

In September 2011, Defendants issued the first of several "Technical Service Bulletins" ("TSBs") related to issues with DSG transmissions. *See id.* ¶ 26. That TSB noted "[c]lacking or knocking noises" heard from the drivetrain, but stated that "[s]uch noises cannot be avoided and are normal." *Id.* In July 2013, Defendants issued another TSB to remedy "[r]ough gear changes, both when accelerating and when slowing down" and "rough driving power disruption[s]." *Id.* ¶ 27. This TSB posited that such "sporadic driving power disruptions" were "normal, and these issues will decrease over time." *Id.* In October 2019, Defendants issued a TSB that sought to resolve the issue, which recommended an "improved circuit board for the mechatronics unit." *Id.* ¶ 29.[2]

According to Plaintiffs, since at least October 2012, consumers have continuously submitted consumer complaints to Defendants through the National Highway Traffic Safety Administration ("NHTSA") and Audi dealerships. *Id.* ¶¶ 35–39. As to the named Plaintiffs in particular, each allege to have experienced symptoms of the DSG transmission defect; three of the four sought assistance from Audi dealerships; none have received any replacement or repairs that

---

[2] Plaintiffs cite other TSBs, all of which purportedly were "attempts, in one way or another, to remedy the known transmission defect." *Id.* ¶¶ 26–31.

1    adequately resolved the alleged defect  *Id.* ¶¶ 54–77.

**II. LEGAL STANDARD**

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citations and quotation marks omitted).

**III. DISCUSSION**

Plaintiffs bring nine causes of action: (1) Breach of Express Warranty; (2) Breach of Implied Warranty of Merchantability; (3) Violation of the Magnuson-Moss Warranty Act

3

("MMWA"), 15 U.S.C. § 2301, *et seq.*; (4); Violation of the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), California Civil Code § 1791, *et seq.*; (5) Violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*; (6) Violation of the California Unfair Competition Law ("UCL"), California Business and Professions Code, § 17200, *et seq.*; (7) Declaratory Judgment; (8) Unjust Enrichment; and (9) Equitable Injunctive and Declaratory Relief. FAC ¶¶ 94–178. Defendants move to dismiss all causes of action. This order addresses each claim, in order.

### A. Breach of Express Warranty (Claim 1)

Plaintiffs contend that Defendants breached express written warranties issued with the sale of Class Vehicles, as well as a purported express warranty relating to Defendants' marketing of the Class Vehicles as "safe" and "reliable." FAC ¶¶ 94–106.

#### i. Express Written Warranty

As to the express written warranty, Plaintiffs allege that every new vehicle of Defendants is backed by a New Vehicle Limited Warranty ("NVLW"), which "covers any repairs needed to correct defects in materials or workmanship." *Id.* ¶ 2. The NVLW lasts for 48 months or 50,000 miles, whichever comes first. *Id.* Defendants also offer a Certified Pre-Owned Vehicle Warranty, which extends warranty coverage through 6 years or 100,000 miles, whichever comes first. *Id.* ¶ 72. Plaintiffs contend that the alleged transmission defect violated Defendants' warranties. *Id.* ¶¶ 94–106.

Defendants move for dismissal on three bases. First, Defendants argue that Plaintiffs cannot sue Defendants VWAG or Audi under the written warranties, because only VWGoA issued the warranties. Mot. at 5–7. Second, Defendants argue that the express written warranty claims of Plaintiffs Madani, Walley, and DeVico fail because the operative complaint does not allege that these Plaintiffs experienced transmission problems within the express warranty period. *Id.* Third, Defendants argue that the express written warranty does not apply to design defects, and yet the Plaintiffs "allege that a single common transmission defect existed in every putative class vehicle." *Id.*

//

### a. Defendants VWAG and Audi

Defendants move to dismiss any breach of express written warranty against Defendants VWAG and Audi because VWGoA alone issued the NVLWs applicable to Plaintiffs vehicles. Mot. at 5 ("VWGoA issued the NVLWs applicable to Plaintiffs' vehicles.").[3] Defendants argue that by bringing a claim under the written warranty against Defendants who were not parties to that contract, Plaintiffs have impermissibly "lumped" Defendants together, without pleading specific wrongdoing for each Defendant. *Id.* (citing *Magney v. Cty. of Humboldt*, No. 17-cv-02389-HSG, 2018 WL 1156817, at *4 n.7 (N.D. Cal. Mar. 5, 2018)).

Plaintiffs do not dispute that they allege no facts tying the disputed warranties to Defendants VWAG and Audi; rather, Plaintiffs argue that they may lump Defendants together under this claim because all three allegedly "collaborate[d] in designing, manufacturing, marketing, selling, and warranting the Class Vehicles." Opp. at 3. Plaintiffs conclude that "[w]hether discovery might ultimately reveal that less than all of the Defendants are ultimately liable for a breach of the express warranty is a mixed question of law and fact that does not foreclose pursuit of Plaintiffs' express warranty claim at the pleading stage." *Id.*

Plaintiffs misunderstand the law. Whatever corporate structure Defendants might have, only one entity is alleged to have issued the express warranties at issue here: VWGoA. And nothing in the operative complaint alleges a relationship between the other entities and issuance of the written warranties. Plaintiffs thus fail to state a breach of express warranty claim against VWAG and Audi. *See Wicks v. Chrysler Grp., LLC*, No. S-10-3214 LKK/KJN, 2011 WL 3876179, at *2 (E.D. Cal. Sept. 1, 2011).

### b. Plaintiffs Madani, Walley, and Devico

Plaintiffs do not dispute that Madani, Walley, and Devico never experienced transmission problems within their express warranty periods. Opp. at 4 (responding only that Plaintiff Oushana

---

[3] At the hearing on this motion, all parties agreed that the Court may incorporate the NVLWs into the operative complaint by reference. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (explaining that under the incorporation-by-reference doctrine, a court may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached [to] the [plaintiff's] pleading" (citation omitted)).

experienced problems within the warranty period).  At the hearing on this motion, however, Plaintiffs' counsel argued that these named Plaintiffs may nonetheless advance a claim for breach of the express written warranty on account of Defendants' alleged fraudulent concealment of the defects.  But well-established Ninth Circuit and California case law forecloses this argument.  *See, e.g.*, *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022–23 (9th Cir. 2008) ("The general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed.") (citing *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 122 (Ct. App. 2006)).  Courts thus reject express warranty claims based on "a latent defect, discovered outside the limits of a written warranty, . . . [even] if the warrantor knew of the defect at the time of sale."  *Daugherty*, 51 Cal. Rptr. at 122.

                c. Express Written Warranties and Design Defects

Last, Defendants challenge all Plaintiffs' express written warranty claims because, in their view, Plaintiffs only allege design defects.  Mot. at 5–7.  In response, Plaintiffs contend that this argument is "premature and is not amenable to disposition at the motion to dismiss stage," as it requires the Court to resolve a factual dispute over whether the alleged defect resulted from a manufacturing or a design problem.  Opp. at 4–5 (citing *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2016 WL 7734558, at *26 (N.D. Cal. Sept. 14, 2016)).

Under California law, a "defect in the manufacture of a product exists if the product differs from the manufacturer's intended result or if the product differs from apparently identical products from the same manufacturer."  Cal. Jury Instr.—Civ. 9.00.3.  "A design defect, by contrast, cannot be identified simply by comparing the injury-producing product with the manufacturer's plans or with other units of the same product line, since by definition the plans and all such units will reflect the same design."  *Barker v. Lull Eng'g Co.*, 573 P.2d 443, 454 (Cal. 1978).

At this stage, the Court cannot say that Plaintiffs' allegations are limited to design defects. The first amended complaint identifies a number of purported symptoms which could plausibly be attributable to material or workmanship defects.  And that Plaintiffs allege defects present in a class of vehicles "does not necessarily mean that the defect must be in the design."  *Falk v. Nissan N. Am., Inc.*, No. 17-cv-04871, 2018 WL 2234303, at *2 (N.D. Cal. May 16, 2018).  Thus, even

6

accepting as true that the warranties at issue here only cover materials and workmanship defects under California law, *see Troup v. Toyota Motor Corp.*, 545 Fed. Appx. 668, 668 (9th Cir. 2013), Plaintiffs have plausibly alleged the existence of such a defect at this stage to survive Defendants' motion to dismiss.

### ii. Express Marketing Warranty

Aside from the written warranty, Plaintiffs also allege a breach of express warranty based on Defendants "warrant[ing] that the Class Vehicles are 'safe' and 'reliable' while failing to disclose to Plaintiffs and Class members any hint of the risks posed by the transmission defect, which renders the Class Vehicles dangerous and unreliable." FAC ¶ 100. Defendants move to dismiss any claim for express warranty based on these statements, arguing that the statements constitute "non-actionable puffery." Mot. at 7. Defendants further contend that even if such statements could sustain a claim, Plaintiffs do not allege facts to show where such statements appeared, "let alone that Plaintiffs saw or relied upon them." *Id.*

The Court agrees that Plaintiffs fail to allege facts to sustain this theory of express warranty liability. As many cases have found before, general "safety" claims are nonactionable puffery. *See, e.g.*, *Smith v. LG Elecs. U.S.A., Inc.*, No. C 13-4361 PJH, 2014 WL 989742, at *5 (N.D. Cal. Mar. 11, 2014) ("Vague statements regarding reliability, dependability, and safety are not actionable express warranties. District courts within the Ninth Circuit have found that words such as 'reliable' and 'dependable' are inherently vague and general, and therefore are non-actionable, and that words regarding 'safety' and 'fitness for use' are not the unequivocal sorts of statements that can give rise to contractual obligations."). And Plaintiffs make no argument in opposition to Defendants' dismissal motion as to why this case is in any way distinguishable from that case law.

For these reasons, the Court **DISMISSES** all express warranty claims except Plaintiff Oushana's claim against VWGoA based on breach of the express written warranty.

//

//

//

7

### B. Implied Warranty (Claim 2)

Plaintiffs allege that Defendants breached an implied warranty "that the Class Vehicles, which it designed, manufactured, and sold or leased to Plaintiffs and the Class or members of the California Subclass, were merchantable, fit and safe for their ordinary use, not otherwise injurious to consumers, and equipped with adequate safety warnings." FAC ¶ 108. Defendants' dismissal motion counters with two arguments. Defendants first argue that Madani's implied warranty claim is untimely, because the initial action commenced more than four years after Madani purchased his vehicle, which is beyond the relevant statute of limitations. Mot. at 8–10 (citing *Gerstle v. Am. Honda Motor Co.*, No. 16-cv-04384-JST, 2017 WL 2797810, at *12 (N.D. Cal. June 28, 2017), and *Durkee v. Ford Motor Co.*, No. C 14-0617 PJH, 2014 WL 7336672, at *5 (N.D. Cal. Dec. 24, 2014)). Second, Defendants argue that all Plaintiffs' implied warranty claims fail for lack of the privity required under California law. *Id.*

At the hearing on this motion, the Court asked why the parties only analyzed the implied warranty claim under California law, given that Walley and DeVico purchased their vehicles in Texas and New York, respectively. The Court permitted supplemental briefing on this choice-of-law question. In those supplemental briefs, Plaintiffs continued to argue that California law applies to all Plaintiffs. *See* Dkt. No. 65. Defendants, on the other hand, now argue that Texas law applies to Walley's implied warranty claim and New York law applies to DeVico's claim. *See* Dkt. No. 64. Defendants then argue that under those states' laws, implied warranty limitations in the NVLWs for both Walley and DeVico's vehicles preclude any implied warranty claims. *Id.* at 4–5.

Because the Court finds that dismissal is warranted regardless of which law applies, the Court need not now resolve which law applies to Walley and DeVico's claims.

#### i. California Law

Turning first to California law—which at a minimum applies to Madani and Oushana's implied warranty claims—the Court finds that Plaintiffs have failed to state a claim because the operative complaint does not allege facts to satisfy California law's stringent privity requirement.

As the Ninth Circuit has explained, under California law "[a] buyer and seller stand in

8

privity if they are in adjoining links of the distribution chain." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citing *Osborne v. Subaru of Am. Inc.*, 243 Cal. Rptr. 815, 820 n.6 (Ct. App. 1988)). "Thus, an end consumer . . . who buys from a retailer is not in privity with a manufacturer." *Id.* And the *Clemens* court, which was asked to create an exception to this tight vertical privity requirement, "decline[d] th[e] invitation," because although the requirement "may be an archaism in the modern consumer marketplace," California courts "have painstakingly established the scope of the privity requirement . . . and a federal court sitting in diversity is not free to create new exceptions to it." *Id.* at 1024.

Plaintiffs ask this Court to ignore *Clemens*'s mandate against creating exceptions to California's tight vertical privity requirement and find that Plaintiffs were intended third-party beneficiaries. *See* Opp. at 6–7.[4] The Court recognizes that federal district courts are split on whether to create a third-party beneficiary exception to the privity requirement under California law. *See In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 786–88 (N.D. Cal. 2017) (summarizing the split). But this Court finds such an exception incompatible with *Clemens*'s mandate. *See id.* ("[T]his Court cannot square that outcome with Clemens."). As *Clemens* explained, finding exceptions undermines a rule "painstakingly established" by California courts. 534 F.3d at 1024. And "[i]t is difficult to imagine a more thorough nullification of the rule stated in *Clemens* than to hold that consumers, simply by virtue of their status as end users of a product, are implied beneficiaries of distribution contracts between manufacturers and retailers, and thus entitled to bring implied warranty claims." *In re Seagate Tech. LLC Litig.*, 233 F. Supp. at 787.

The Court thus finds there is no third-party beneficiary exception to California's privity requirement. And because Plaintiffs do not allege that they and Defendants were "adjoining links of the distribution chain," the Court finds that Plaintiffs have failed to state an implied warranty claim under California law. *See Clemens*, 534 F.3d at 1023.

//

---

[4] In the alternative, Plaintiffs argue that there may be privity through Defendants' "agency relationship" with authorized dealerships Opp. at 6–7. The first amended complaint, however, contains no allegations that could plausibly establish an agency relationship.

### ii. New York and Texas Law

Both New York and Texas law permit the limitation of implied warranties to the duration of their express warranties, if done clearly and conspicuously. *See* N.Y. U.C.C. § 2-316; Tex. Bus. & Com. Code § 2.316. The NVLWs applicable to Walley and DeVico's vehicles both conspicuously limit implied warranties to the NVLW's duration. *See* Dkt. No. 56-15 Ex. A, at 14 ("Any implied warranty, including any warranty of merchantability or warranty of fitness for a particular purpose is limited in duration to the stated period of these written warranties."); Ex. B, at 9 ("Any implied warranty, including any warranty of merchantability or warranty of fitness for a particular purpose, is limited in duration to the stated period of these written warranties."), 15 (same). The first amended complaint, however, does not allege that either Walley or DeVico experienced problems related to the purported transmission defect until after the expiration of the NVLW. Texas and New York law thus compel dismissal of any implied warranty claims by Walley and DeVico. *See Deburro v. Apple*, No. A-13-CA-784-SS, 2013 WL 5917665, at *6 (W.D. Tex. Oct. 31, 2013); *Rochester-Genesee Reg'l Transp. Auth v. Cummins Inc.*, No. 09-cv-6370-MAT, 2010 WL 2998768, at *5 (W.D.N.Y. July 28, 2010).

For these reasons, the Court finds that dismissal of Walley and DeVico's implied warranty claims is warranted regardless of which state's law applies.

### C. Magnuson-Moss Warranty Act (Claim 3)

All parties agree that Plaintiffs' MMWA claim rises and falls with the express and implied warranty claims. *See* Mot. at 10; Opp. at 7. Thus, those Plaintiffs who have failed to state a claim for breach of express or implied warranties also fail to state a claim under the MMWA. *See* 15 U.S.C. § 2310(d)(1). Accordingly, the Court **DISMISSES** all MMWA claims except as to Plaintiff Oushana against VWGoA.

### D. Song-Beverly Act (Claim 4)

Plaintiffs concede they have not adequately pleaded claims under the Song-Beverly Act, but request leave to amend.[5] The Court thus **DISMISSES** Song-Beverly Act claims as to all

---

[5] In opposition to Defendants' motion to dismiss, Plaintiffs only conceded that they failed to state Song-Beverly Act claims as to Plaintiffs Walley, DeVico, and Oushana. Opp. at 8. At the hearing

10

1 Plaintiffs.

### E. CLRA and UCL (Claims 5–6)

Defendants move to dismiss Plaintiffs' claims under the CLRA and UCL for several reasons: (1) Plaintiffs Walley and DeVico purchased their vehicles outside of California; (2) Plaintiffs otherwise have an adequate remedy at law; (3) Plaintiffs failed to plead knowledge; (4) Plaintiffs' impermissible "lumping" together of Defendants violates Rule 9(b)'s pleading requirements; (5) Plaintiffs failed to identify actionable misrepresentations; and (6) Plaintiffs failed to plead reliance. Mot. at 12–19. Because the Court finds dismissal warranted as to all Plaintiffs for the first three reasons, the Court does not address Defendants' other arguments.

#### i. Plaintiffs Walley and DeVico

Plaintiffs "do not dispute that Plaintiffs Walley and DeVico cannot assert claims under the CLRA or UCL since they did not purchase their Class Vehicles in the State of California." Opp. at 8 n.1. The Court thus **DISMISSES** Plaintiffs Walley and DeVico's claims under the CLRA and UCL. And because Plaintiffs Walley and DeVico's purchase locations are undisputed, the Court finds that amendment would be futile. Nothing pleaded in an amended complaint would change Walley and DeVico's ability to advance CLRA and UCL claims, and thus "the pleading could not possibly be cured by the allegation of other facts." *See Lopez*, 203 F.3d at 1127.

#### ii. Availability of an Adequate Remedy at Law

Plaintiffs only seek equitable relief under the CLRA, and the UCL provides only equitable remedies. *See* FAC ¶¶ 136–45; *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003) ("A UCL action is equitable in nature; damages cannot be recovered."). But "there is no right to equitable relief or an equitable remedy when there is an adequate remedy at law." *Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, No. 14-cv-04809-HSG, 2015 WL 4941780, at *8 (N.D. Cal. Aug. 19, 2015); *see also Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 596–97 (Ct. App. 2011) (explaining "the general principle of equity that equitable relief (such as restitution) will not be given when the plaintiff's remedies at law are adequate"). And "several courts in this

---

on this motion, however, Plaintiffs' counsel clarified that all Song-Beverly Act claims as to currently named Plaintiffs fail.

1  district have barred claims for equitable relief—including claims for violations of California
2  consumer protection statutes—at the motion to dismiss stage where plaintiffs have alleged other
3  claims presenting an adequate remedy at law." *Munning v. Gap, Inc.*, 238 F. Supp. 3d 1195, 1203
4  (N.D. Cal. 2017); *see also Duttweiler*, 2015 WL 4941780, at *8.

Because Plaintiff Oushana has stated a viable claim for breach of an express warranty—for reasons noted above—Oushana has "an adequate remedy at law." *See Duttweiler*, 2015 WL 4941780, at *8. The Court thus **DISMISSES** Plaintiff Oushana's claims under the CLRA and UCL. And because no amendment can cure this deficiency, Oushana's CLRA and UCL claims are dismissed without leave to amend. *See Lopez*, 203 F.3d at 1127; *see also Munning*, 238 F. Supp. 3d at 1204 (dismissing with prejudice claims for equitable relief where the court found plaintiff had "sufficiently pleaded claims for breach of contract and breach of express warranty").

    iii. **Knowledge**

The first amended complaint broadly alleges that Defendants had knowledge of the purported transmission defect because of (1) pre-sale design and testing, (2) post-sale TSBs, and (3) NHTSA complaints. *See, e.g.*, FAC ¶¶ 8, 25–32, 39; *see also* Opp. at 14 (arguing the FAC adequately alleged knowledge). Defendants, on the other hand, contend that these allegations are insufficient to show pre-sale knowledge of the alleged defect. Mot. at 16–19.

Critical to the present inquiry is that the Court need only consider whether Defendants had the requisite scienter before Madani's purchase, because—as just explained—the Court dismisses the CLRA and UCL claims of the other Plaintiffs for independently sufficient reasons. Fatal to Madani's claims, however, is that he purchased his Class Vehicle in April 2013. FAC ¶ 54. At that point, Defendants are only alleged to have issued one TSB, which only noted "[c]lacking or knocking noises directly after a load change." FAC ¶ 26. But Plaintiff Madani has not alleged any such noise defect in his vehicle; rather, he has claimed that his car began "bucking and jerking" in October 2017. *Id.* ¶ 55. This Court cannot conclude that one TSB notice related to noise issues, standing alone, means that Defendants had knowledge of a more-serious safety defect. *See Victorino v. FCA US LLC*, No. 16cv1617-GPC(JLB), 2018 WL 1083395, at *8 (S.D. Cal. Feb. 27, 2018) ("When addressing a defendant's pre-sale knowledge, courts have held that the

defendant must have knowledge of the specific defect alleged, not a general defect.").

In addition, of the forty-nine claimed NHTSA consumer complaints on which Plaintiffs rely to allege knowledge, only one pre-dates Plaintiff Madani's purchase. *Id.* ¶ 39.[6] And while that complaint noted similar "buck[ing]" issues as Madani ultimately experienced five years later, it involved a different year and model vehicle. One complaint about a different vehicle is insufficient to suggest that Defendants knew about a widespread defect, as Plaintiffs allege. *Compare Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1026–27 (9th Cir. 2017) (holding that an "unusually high volume of complaints," together with pleaded facts showing how the defendant responded to those complaints and "the mechanism through which information travelled from consumers to [the defendant]" supported a claim of pre-sale knowledge), *with Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) (affirming dismissal of a complaint where plaintiffs relied on fourteen complaints, twelve of which were undated, because it would be "speculative" at best to find that the defendant "knew of the alleged defect at the time of sale").

Finally, Plaintiffs' conclusory allegations of pre-purchase knowledge based on "pre-sale design and testing" are insufficient. *See Wilson*, 668 F.3d at 1147 (holding that "[t]he allegation that HP, as the manufacturer, had 'access to the aggregate information and data regarding the risk of overheating' is speculative and does not suggest how any tests or information could have alerted HP to the defect"); *Tietsworth v. Sears, Roebuck & Co.*, No. 09–cv–00288–JF, 2009 WL 3320486, at *4 (N.D. Cal. Oct. 13, 2009) (finding conclusory the allegation that defendants were in a "superior position to know the truth about the [product]").

For these reasons, the Court **DISMISSES** Plaintiff Madani's claims under the CLRA and UCL.

### F.     Declaratory and Injunctive Relief (Claims 7 and 9)

Plaintiffs ask this Court to "declare the rights and legal relations of any interested party seeking such declaration whether or not further relief is or could be sought," which will "generate

---

[6] Although Plaintiffs cite two NHTSA complaints dated October 23, 2012, one purportedly for a "2010 Audi S4" and another purportedly for a "2011 Audi S4," both complaints expressly refer to an "Audi 2011 S4." FAC ¶ 39. Whether there were one or two complaints, however, does not change the Court's conclusion.

13

common answers that will settle the controversy related to the alleged defective nature of the Class Vehicles and the reasons for their repeated failure." FAC ¶¶ 162–67. Defendants respond that (1) declaratory judgment is merely a remedy and not a cause of action, and (2) declaratory relief is unnecessary where an adequate remedy exists under some other cause of action. Mot. at 20–21 (citing *Vigdor v. Super Lucky Casino, Inc.*, No. 16-cv-05236-HSG, 2017 WL 2720218, *8 (N.D. Cal. June 23, 2017)).

Presented with a request for declaratory relief, "the district court may, in its discretion, determine whether maintaining jurisdiction over the declaratory judgment action is appropriate." *Transamerica Life Ins. Co. v. Jurin*, No. C 14-01881 LB, 2015 WL 355717, at *5 (N.D. Cal. Jan. 27, 2015) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287–88 (1995)). The Ninth Circuit has established that "[i]n general . . . when other claims are joined with an action for declaratory relief . . . the district court should not, as a general rule, remand or decline to entertain the claim for declaratory relief." *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1112 (9th Cir. 2001) (quoting *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)).

Here, Defendants articulate no prejudice that would result from these claims proceeding. The Court thus "finds that it is premature to dismiss Plaintiffs' claims for declaratory relief." *Falk*, 2018 WL 2234303, at *10–11; *see also Digby Adler Grp., LLC v. Mercedes-Benz U.S.A., LLC*, No. 14-cv-02349-TEH, 2015 WL 1548872, at *9 (N.D. Cal. Apr. 7, 2015) (denying defendant's motion to dismiss declaratory relief due to failure to show any prejudice that would result from allowing the claim to proceed). The Court thus **DENIES** Defendants' motion to dismiss Plaintiffs' claims for declaratory relief.

### G. Unjust Enrichment (Claim 8)

Plaintiffs' unjust enrichment claim contends that Plaintiffs "conferred substantial benefits on [Defendants] by purchasing the defective Class Vehicles," that Defendants "knowingly and willingly accepted and enjoyed those benefits," and that Defendants' "retention of these benefits is inequitable." FAC ¶¶ 170–71. Defendants counter that this claim should be dismissed for three reasons: (1) the claim "is not available where the parties are bound to a valid express contract," such as the express written warranties here; (2) as an equitable remedy, the claim fails unless

14

Plaintiffs plead that they have no adequate remedy at law, which they have not done; and (3) Plaintiffs DeVico and Walley purchased their cars "*used* in second-hand transactions from third-parties [and thus] failed to confer a benefit upon [Defendants]." Mot. at 19–20. In response, Plaintiffs argue that an unjust enrichment claim survives where the plaintiffs have "alleged actionable claims based upon fraud and misrepresentations," such as Plaintiffs' CLRA and UCL claims. Opp. at 16.

The Court finds that no Plaintiff has adequately stated a claim for unjust enrichment. As Defendants note—and Plaintiffs do not dispute—DeVico and Walley conferred no benefit upon Defendants because they purchased their cars from third parties. And while the other Plaintiffs conferred a benefit on Defendants, actions in quasi-contract cannot lie when an express contract between the same parties governs the subject matter in question. *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) ("Under both California and New York law, unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties."). That is precisely the circumstance before the Court. The express warranty "covers any repairs needed to correct defects in materials or workmanship, and specifically applies to the . . . transmission." FAC ¶ 2. Plaintiffs' contention that their unjust enrichment claim additionally covers fraud or bad-faith activities of Defendant separate from those covered by the express warranty is unconvincing, as Plaintiffs failed to plead any such fraudulent acts in the operative complaint.

Accordingly, the Court **DISMISSES** Plaintiffs' unjust enrichment claims. And because no amendment can change that Plaintiffs DeVico and Walley did not confer a benefit on Defendants, their unjust enrichment claims are dismissed without leave to amend. *See Lopez*, 203 F.3d at 1127.

## IV. CONCLUSION

The Court grants Defendants' motion to dismiss the first amended complaint as to all claims except Plaintiff Oushana's express warranty and MMWA claims, but only against Defendant VWGoA. Dismissal is with leave to amend, except as otherwise stated above. Any amended complaint must be filed within 28 days of the date of this order.

The Court **SETS** a case management conference ("CMC") for April 16, 2019 at 2:00 p.m. The Court also **DIRECTS** the parties to meet and confer before the CMC to discuss a proposed case schedule and to submit a joint CMC statement by April 9, 2019.

**IT IS SO ORDERED.**

Dated: 2/15/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge