UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE MADANI, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>    Defendant. | Case No. 17-cv-07287-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 72 |

On December 22, 2017, Plaintiffs Mike Madani, Eric Walley, Richard DeVico, and Romsin Oushana[1] brought this putative class action against Volkswagen Group of America, Inc. ("VWGoA"), Volkswagen AG, and Audi AG for, among other things, purported breaches of express and implied warranties, and violations of various consumer protection laws based on allegedly defective direct-shift gearbox ("DSG") transmissions in 2010–2014 Audi S4, S5, S6, S7, and RS5 vehicles. *See* Dkt. No. 1. On April 23, 2018, Plaintiffs filed a first amended complaint. *See* Dkt. No. 50 ("FAC"). Defendants filed a motion to dismiss the first amended complaint, which the Court granted in part and denied in part. *See* Dkt. Nos. 56, 69 ("Order"). Plaintiffs thereafter filed a second amended complaint, which (1) adds John Chess and Michael Warchut as Plaintiffs, (2) only names VWGoA as a Defendant, and (3) includes 2015 vehicle models. *See* Dkt. No. 71 ("SAC"). Plaintiffs seek to represent a nationwide class of "[a]ll persons who own or lease a Class Vehicle . . . with a DSG transmission in the United States." *Id.* ¶ 137. They also intend to seek certification of a subclass for purchasers in California. *Id.* ¶ 138.

Pending before the Court is Defendant's motion to dismiss the operative complaint,

---

[1] The original complaint included other parties who have since been voluntarily dismissed. *See* Dkt. No. 12 (dismissing Brian Gillard); Dkt. No. 49 (dismissing Shant Bakalian).

briefing for which is complete. *See* Dkt. Nos. 72 ("Mot."), 78 ("Opp."), 79 ("Reply"). After carefully considering the parties' arguments, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion.[2]

## I. BACKGROUND

As alleged, Defendant "designed, manufactured, and sold" 2010–2015 Audi S4, S5, S6, S7, and RS5 vehicles ("Class Vehicles") with defective DSG transmissions. *See, e.g.*, SAC ¶¶ 2, 90. The DSG transmissions purportedly "cause sudden, rough, unexpected shaking, and violent jerking (commonly referred to as 'juddering' or 'shuddering') when drivers attempt to accelerate Class Vehicles and shift into 2nd, 3rd, or 4th gear and attempt to decelerate." *Id.* ¶ 4. They are further alleged to "hesitate before responding," "surge[] while driving," and "cause a hard downshift or clunk when drivers either slow down or accelerate at low speed." *Id.* ¶¶ 4–5. As described by Plaintiffs, the defective transmissions "create[] unreasonably dangerous situations while driving and increase[] the risk of an accident, as the driver is unable to accelerate the vehicle when needed, or as expected." *Id.* ¶ 4. Further, Plaintiffs contend that Defendant "sold, leased, and continues to sell and lease the Class Vehicles despite knowing of the transmission defect that poses a danger to Class Vehicle drivers and the public." *Id.* ¶ 6.

In August 2009—prior to the sale of any Class Vehicle—Defendant recalled several of its vehicles with "the same type of DSG transmission" as is in the Class Vehicles, due to those vehicles losing power and going into "limp mode" while driven. *Id.* ¶¶ 21–25. And a contemporaneous investigation by the National Highway Traffic Safety Administration ("NHTSA") allegedly reported that such vehicles with DSG transmissions experienced "harsh/jerky shifting," but that Defendant "[did] not believe that the this [sic] condition is a safety defect because the changes in shift quality develop gradually over time, do not cause a loss of motive power and have not resulted in any fatalities, injuries or serious crashes." *Id.* ¶¶ 26–27.

In September 2011, Defendant issued the first of several "Technical Service Bulletins" ("TSBs") related to issues with DSG transmissions. *See id.* ¶ 37. That TSB noted "[c]lacking or

---

[2] The Court finds that this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

knocking noises" heard from the drivetrain, but stated that "[s]uch noises cannot be avoided and are normal." *Id.* ¶ 38. In July 2013, Defendant issued another TSB to remedy "[r]ough gear changes, both when accelerating and when slowing down" and "rough driving power disruption[s]." *Id.* ¶¶ 46–47. This TSB posited that such "sporadic driving power disruptions" were "normal, and these issues will decrease over time." *Id.* ¶ 47. In October 2016, Defendant issued a TSB that sought to resolve the issue, which recommended an "improved circuit board for the mechatronics unit." *Id.* ¶¶ 51–54.[3]

According to Plaintiffs, since at least February 2012, consumers have continuously submitted consumer complaints to Defendant through the NHTSA and Audi dealerships. *Id.* ¶¶ 69–81. As to the named Plaintiffs in particular, each allege to have experienced symptoms of the DSG transmission defect; five of the six sought assistance from Audi dealerships; none have received any replacement or repairs that adequately resolved the alleged defect. *Id.* ¶¶ 96–136.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

---

[3] Plaintiffs cite other TSBs, all of which purportedly were "attempts, in one way or another, to remedy the known transmission defect." *Id.* ¶¶ 37–57.

3

*Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988. A plaintiff can also "plead himself out of a claim by including unnecessary details contrary to his claims." *Id.*

Rule 9(b) heightens these pleading requirements for all claims that "sound in fraud" or are "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "[The Ninth Circuit] has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted). In short, a fraud claim must state the "who, what, when, where, and how" of the alleged conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false or misleading," *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 253 F.3d 423, 429 & n.6 (9th Cir. 2001). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citations and quotation marks omitted). But "where the Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is

particularly broad." *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (quotation marks and alterations omitted).

**III. DISCUSSION**

Plaintiffs' second amended complaint realleges nine causes of action: (1) Breach of Express Warranty; (2) Breach of Implied Warranty of Merchantability; (3) Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.*; (4); Violation of the Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), California Civil Code § 1791, *et seq.*; (5) Violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*; (6) Violation of the California Unfair Competition Law ("UCL"), California Business and Professions Code, § 17200, *et seq.*; (7) Violation of the Declaratory Judgment Act; (8) Unjust Enrichment; and (9) Equitable Injunctive and Declaratory Relief. SAC ¶¶ 153–235. Defendant move to dismiss all causes of action. This order addresses each claim, in order.

**A. Breach of Express Warranty (Claim 1)**

As in the first amended complaint, Plaintiffs again contend that Defendant breached express written warranties issued with the sale of Class Vehicles, as well as a purported express warranty relating to Defendant's marketing of Class Vehicles as "safe" and "reliable." SAC ¶¶ 153–65.

**1. Express Written Warranty**

As to the express written warranty, Plaintiffs reallege that every Class Vehicle is backed by a New Vehicle Limited Warranty ("NVLW"), which "covers any repairs needed to correct defects in materials or workmanship." *Id.* ¶ 3. The NVLW lasts for 48 months or 50,000 miles, whichever comes first. *Id.* ¶¶ 3, 87. Defendant also offer a Certified Pre-Owned Vehicle Warranty, which extends warranty coverage through 6 years or 100,000 miles. *Id.* ¶ 154. Plaintiffs contend that the alleged transmission defect violated Defendant's warranties. *Id.* ¶¶ 153–65.

Defendant moves for dismissal on two bases. First, Defendant argues that the Court should again find the express written warranty claims of Plaintiffs Madani, Walley, and DeVico fail because the operative complaint does not allege that these Plaintiffs experienced transmission

5

problems within the express warranty period. Mot. at 5. Second, Defendant argues that Plaintiff Warchut's express warranty claim is time-barred. *Id.* at 5–7.

### a. Plaintiffs Madani, Walley, and DeVico

The Court previously dismissed the express written warranty claims of Plaintiffs Madani, Walley, and DeVico because these Plaintiffs admittedly "never experienced transmission problems within their express warranty periods" and "well-established Ninth Circuit and California case law forecloses" any argument that they "may nonetheless advance a claim for breach of the express written warranty on account of Defendants' alleged fraudulent concealment of the defects." Order at 5–6 (discussing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022–23 (9th Cir. 2008) ("The general rule is that an express warranty does not cover repairs made after the applicable time or mileage periods have elapsed.")); *see also Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 122 (Ct. App. 2006).

Plaintiffs admit that the operative complaint in no way cures these defects as it relates to Plaintiffs Madani and Walley. Opp. at 5 ("To the extent the SAC seems to reassert express warranty claims on behalf of Plaintiffs Madani and Walley, Plaintiffs do not intend to pursue such claims."). Plaintiff DeVico, however, contends that he has adequately stated a claim when viewing all alleged facts in the operative complaint in the light most favorable to him. *Id.* at 5–6. Specifically, Plaintiff DeVico asserts that because his vehicle was a 2010 model, "it is reasonable to infer that the NVLW lasted until 2014 (given that the NVLW was good up to 50,000 miles or 4 years and when Plaintiff DeVico purchased the 2010 car in 2016, it only had 44,000 miles on it)." *Id.* at 5. He further argues that, although he purchased the car in 2016, he did so under the assumption that the transmission was replaced in 2014, and it is purportedly "reasonable to infer" that (1) the replacement occurred during the warranty period given that the warranty lasted until 2014, and (2) the replacement was due to the same transmission issues at issue in this case. *Id.* at 5–6. Thus, according to Plaintiff DeVico, some sort of "tolling and/or extending theories" ought to apply to preserve his claim. *Id.* at 6.

Setting aside whether Plaintiff DeVico might be entitled to "tolling and/or extending theories" under his theory of reasonable inferences to be drawn from facts as alleged in the

operative complaint, Defendant highlights in its reply brief that judicially noticeable material preclude the core fact from which one could make any such inferences. *See* Reply at 3–4. In particular, there is no reasonable basis for Plaintiff DeVico's assertion that the 2014 transmission replacement occurred during the warranty period because: (1) Plaintiff alleges the repair occurred on June 20, 2014, *see* SAC ¶ 111; and yet (2) "[t]he certified N.Y. Department of Motor Vehicles Certificate of Title for the DeVico vehicle demonstrates that the vehicle was initially titled to its first purchaser on May 19, 2010," Reply at 3 (citing Dkt. No. 79-2).[4] Given that judicially noticeable facts demonstrate that the 2014 transmission replacement did not occur during the warranty period, there is no reasonable factual basis to support Plaintiff DeVico's theories, which all derive from that core factual starting point.

### b. Plaintiff Warchut

Defendant contends that Plaintiff Warchut's express warranty claim is time-barred by the applicable four-year statute of limitations. *See* Mot. at 5–7; *see also* Cal. Com. Code § 2725 (providing the statute of limitations). Specifically, the operative complaint alleges that Plaintiff Warchut purchased his vehicle on July 14, 2011, discovered that his transmission was defective by at least April 25, 2012, and yet this action was commenced in 2017. *Id.* In response, Plaintiff Warchut only contends that "allegations as to when he discovered the defect and that the discovery occurred less than four years before his claim was made . . . . [are] factual issue[s] not ripe on a motion to dismiss." Opp. at 3.

The Court rejects Plaintiff Warchut's effort to avoid the statute of limitations by manufacturing a "factual issue," because when Warchut discovered the purported defect is undisputed based on allegations contained in the complaint. The operative complaint provides: "Within a month of purchase, Plaintiff Warchut noticed his Class Vehicle would surge at low speeds and 'buck' and 'lurch' forward when parked. Further, when he was slowing down the vehicle's transmission would 'judder' when shifting between second and first gear and 'judder'

---

[4] The Court finds that it may take judicial notice of the certified certificate of title, which is a matter of general public record. *See In re Sun*, 931 F.2d 61 (9th Cir. 1991) (finding a district court did not err in taking judicial notice of transfer certificates of title, which "were matters of public record").

7

1  when shifting between first and second gear." SAC ¶ 129. And Plaintiff Warchut claims to have
2  conveyed these issues to Audi dealerships on numerous occasions from October 2011 to April
3  2012, to no avail. *Id.* ¶¶ 130–32. These descriptions mirror the alleged defects in the disputed
4  DSG transmissions. *See id.* ¶ 4. There is thus no reasonable factual basis to dispute that Plaintiff
5  Warchut had actual knowledge of the alleged defect in his vehicle more than four years before the
6  commencement of this action. Plaintiff Warchut's express warranty claim is thus time-barred.

### 2. Express Marketing Warranty

The second amended complaint realleges a breach of express warranty claim based on Defendant "warrant[ing] that the Class Vehicles are 'safe' and 'reliable' while failing to disclose to Plaintiffs and Class Members any hint of the risks posed by the transmission defect, which renders the Class Vehicles dangerous and unreliable." *Compare* FAC ¶ 100, *with* SAC ¶ 159. The Court previously dismissed this exact theory of express warranty liability, *see* Order at 7, and Defendant contends that dismissal is equally warranted here, *see* Mot. at 7.

The operative complaint adds no new factual allegations from which the Court might reach a different conclusion on this theory of express warranty liability. Nor do Plaintiffs defend or otherwise respond to Defendant's argument in support of dismissal. Presented with no new argument or evidence, the Court finds that dismissal is warranted again.

For these reasons the Court **DISMISSES** all express warranty claims except those brought by Plaintiffs Oushana and Chess, but only based on an alleged breach of the express written warranty. And because Plaintiffs have "previously been granted leave to amend and [have] subsequently failed to add the requisite particularity" with respect to other Plaintiffs, the Court finds that leave to amend is unwarranted as to those Plaintiffs. *See Zucco Partners, LLC*, 552 F.3d at 1007.

### B. Implied Warranty (Claim 2)

As in the first amended complaint, Plaintiffs allege that Defendant breached an implied warranty "that the Class Vehicles, which it designed, manufactured, and sold or leased to Plaintiffs and the Class or members of the California Subclass, were merchantable, fit and safe for their ordinary use, not otherwise injurious to consumers, and equipped with adequate safety warnings."

8

FAC ¶ 108; SAC ¶ 167. The Court previously dismissed all then-named Plaintiffs' implied warranty claims because: (1) to the extent California law applies to any Plaintiff, they could not meet California's stringent privity requirement to support a claim because neither VWGoA nor any other then-named Defendant are an adjoining link with a Plaintiff in the relevant distribution chain, *see* Order at 8–9 (discussing *Clemens*, 534 F.3d at 1023); and (2) to the extent New York or Texas law applies to certain Plaintiffs, those parties' claims were barred because New York and Texas permit clearly and conspicuously limiting implied warranties to the duration of express warranties, the NVLWs applicable to the relevant Plaintiffs' vehicles limited the implied warranties in this manner, and the relevant Plaintiffs only alleged to have experienced problems related to the purported transmission defect after the expiration of the NVLW, *see id.* at 10.

The Court again finds that dismissal is warranted regardless of which law applies. Turning first to California law, Plaintiffs present no new argument not previously raised and rejected concerning California's stringent privity requirement. Presented with no new argument, the Court again finds that Plaintiffs have failed to state an implied warranty claim under California law, for reasons detailed in the Court's prior dismissal order. *See id.* at 8–9.

Turning next to New York and Texas law, yet again, Plaintiffs present no new argument not previously raised and rejected. Presented with no new argument to consider, the Court finds again that dismissal of Walley and DeVico's implied warranty claims is warranted even if New York and Texas law applies, for reasons detailed in the Court's prior dismissal order. *See id.* at 10.

For these reasons the Court **DISMISSES** all implied warranty claims. And because Plaintiffs have "previously been granted leave to amend and [have] subsequently failed to add the requisite particularity," the Court finds that leave to amend is unwarranted. *See Zucco Partners, LLC*, 552 F.3d at 1007.

**C.     Magnuson-Moss Warranty Act (Claim 3)**

All parties again agree that Plaintiffs' MMWA claim rises and falls with the express and implied warranty claims. *See* Mot. at 14; Opp. at 15. Thus, those Plaintiffs who have failed to state a claim for breach of express or implied warranties also fail to state a claim under the

9

MMWA. *See* 15 U.S.C. § 2310(d)(1). Accordingly, the Court **DISMISSES** all MMWA claims except as to Plaintiffs Oushana and Chess.

### D. Song-Beverly Act (Claim 4)

After Defendant moved to dismiss Plaintiffs' Song-Beverly Act claim as presented in the first amended complaint, Plaintiffs conceded that their claim as then pleaded was defective. *See* Dkt. No. 58 at 8 ("Plaintiffs concede that their implied warranty claim under the [Song-Beverly Act] fails as to Plaintiffs Walley, DeVico, and Oushana, who each purchased Class Vehicles either used or certified pre-owned. Plaintiffs seek leave to amend their Song-Beverly Warranty Act claim."). The Court accepted Plaintiffs' concession and dismissed the claim with leave to amend. Order at 10–11.

#### 1. Plaintiffs Walley, DeVico, and Oushana

Despite the opportunity to amend, the operative complaint presents identical factual allegations relevant to the Song-Beverly Act claims of Plaintiffs Walley, DeVico, and Oushana. *Compare* FAC ¶¶ 124–35, *with* SAC ¶¶ 183–94. But as Defendant highlights in its briefs, the Song-Beverly Act only applies to purchases made in California, meaning its protection is not available to Plaintiffs Walley and DeVico, who purchased their vehicles in Texas and New York. *See* Mot. at 14–15; *see also* Cal. Civ. Code § 1792 (applying to "every sale of consumer goods that are sold at retail in this state"); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 851 (N.D. Cal. 2012) ("By its terms, the Song-Beverly Act applies only to goods sold in California."). Further, the Song-Beverly Act only provides an implied warranty for the sale of new goods, and yet Plaintiffs Walley, DeVico, and Oushana purchased their vehicles used. *See* Mot. at 15; *see also* Cal. Civ. Code § 1791(a) (defining the class of protected consumer goods as "any new product or part thereof"). Given these threshold defects—to which Plaintiffs do not respond— dismissal of these Plaintiffs' Song-Beverly Act claims is warranted.

#### 2. Plaintiffs Madani, Warchut, and Chess

Although Plaintiffs Madani, Warchut, and Chess each purchased their vehicles new and in California, Defendant contends that dismissal is warranted nonetheless because these Plaintiffs' claims are time-barred. SAC ¶¶ 96, 121, 127; Mot. at 15. Specifically, each purchased their

10

vehicle no later than April 2013 and the relevant statute of limitations is four years. Mot. at 15; Cal. Com. Code § 2725 (providing the relevant statute of limitations); SAC ¶ 96 (providing that Madani purchased his vehicle in April 2013); *id.* ¶ 121 (providing that Chess purchased his vehicle in May 2010); *id.* ¶ 127 (providing that Warchut purchased his vehicle in July 2011). In response, Plaintiffs argue that (1) Madani's claim only accrued in 2017, when he first experienced the defect, and (2) although Chess and Warchut noticed the defect earlier, their claims were tolled by Defendant's active concealment of the defect. Opp. at 13–14.

The Court first finds that Madani's claim is not time-barred. Under the Song-Beverly Act, a claim accrues "when the breach is or should have been discovered." Cal. Com. Code § 2725(2). And as alleged in the operative complaint, Madani only first experienced issues with his vehicle associated with the alleged defect in 2017. *See* SAC ¶ 98 (noting that Madani first experienced his vehicle bucking and jerking in October 2017).

Turning next to Plaintiffs Chess and Warchut, the question is whether Plaintiffs adequately pleaded facts to invoke equitable tolling on the basis of fraudulent concealment.

### a. Fraudulent Concealment Doctrine

California courts have long described the doctrine of fraudulent concealment as a mechanism to deprive perpetrators of fraud "upon otherwise diligent suitors" of the statute-of-limitations liability shield. *Pashley v. Pac. Elec. Co.*, 153 P.2d 325, 328 (Cal. 1944). Because the doctrine protects diligent suitors, it is unavailable, "whatever the lengths to which a defendant has gone to conceal [the] wrongs, if a plaintiff is on notice of a potential claim." *Barber v. Superior Court*, 285 Cal. Rptr. 668, 672 (Ct. App. 1991) (quoting *Rita M. v. Roman Catholic Archbishop*, 232 Cal. Rptr. 685, 690 (Ct. App. 1986)). What constitutes "notice of a potential claim," however, is not notice of the availability of a particular cause of action. *See id.* Notice in this context concerns "aware[ness] of the relevant facts," from which a diligent plaintiff would learn of potential claims. *Rita M.*, 232 Cal. Rptr. at 690.

All told, a plaintiff alleging fraudulent concealment under California law must plead:

> (1) concealment or suppression of a material fact; (2) by a defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or

11

suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact.

*Hambrick v. Healthcare Partners Med. Grp., Inc.*, 189 Cal. Rptr. 3d 31, 60 (Ct. App. 2015) (quoting *Graham v. Bank of Am., N.A.*, 172 Cal. Rptr. 3d 218, 228 (Ct. App. 2014)). And fraudulent concealment must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 662 (9th Cir. 1999) (holding that because the Federal Rules of Civil Procedure control diversity cases, Rule 9(b) requires pleading circumstances constituting fraud with particularity, in the context of fraudulent concealment tolling). In other words, plaintiffs pleading fraudulent concealment must allege "when the fraud was discovered, the circumstances under which it was discovered, the circumstances indicating that [they were] not at fault for failing to discover it earlier, and the fact that [they] had no actual or constructive knowledge of facts sufficient to put [them] on inquiry." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1133 (C.D. Cal. 2010). Plaintiffs also must "plead why, in the exercise of reasonable diligence, [they] could not have discovered the defect earlier." *See Finney v. Ford Motor Co.*, No. 17-cv-06183-JST, 2018 WL 2552266 *4 (N.D. Cal. June 4, 2018) (quoting *Herremans v. BMW of N. Am., LLC*, No. CV 14-02363 MMM PJWX, 2014 WL 5017843, at *5 (C.D. Cal. Oct. 3, 2014)).

### b. Plaintiffs Warchut and Chess

The Court finds that the operative complaint does not allege facts to support a finding of fraudulent concealment as to Plaintiffs Chess and Warchut. And the fatal defect concerns Plaintiffs Chess and Warchut pleading too much, rather than too little, as these Plaintiffs affirmatively allege facts showing they had "actual or constructive knowledge of facts sufficient to put [them] on" notice of the alleged DSG defect in their Class Vehicles in 2011. *See Yumul*, 733 F. Supp. 2d at 1133; *Rita M.*, 232 Cal. Rptr. at 690. Plaintiff Warchut, for example, alleges that he experienced the very defects at issue in this case in 2011, knew the problems derived from "the vehicle's transmission," and refused to believe otherwise when his Audi dealer stated that his Class Vehicle's transmission issues were "an artifact of the design of the vehicle." *See* SAC ¶¶ 129–30. In other words, Warchut does not allege that, based on his Audi dealer's statements,

12

he was misled to believe his vehicle was in working order, such that he had no reasonable knowledge of facts to at least put him on inquiry notice that a defect existed. Warchut instead alleges that he knew his Audi dealer's statements were inadequate at the time, and thus nothing said by his Audi dealer concealed material facts that would have otherwise put Warchut on constructive notice that a defect was present. *See id.*

Plaintiff Chess fares no better. Chess similarly alleges that he experienced the DSG defects in 2011, and knew "the transmission was not working properly," but was told by his Audi dealer that there was nothing wrong with his vehicle. *See* SAC ¶ 123. To the extent Plaintiff Chess knew his transmission was defective, he knew his dealer's statements were untrue. Put differently, the dealer's statement does not render meaningless Chess's knowledge of his vehicle's manifestations of the alleged defect, and his knowledge that "the transmission was not working properly," at that time. *Id.* And Chess provides no explanation for why that knowledge did not at least constitute constructive knowledge of relevant facts sufficient to put him on inquiry notice of the alleged defect.

Each case on which Plaintiffs rely to oppose dismissal on this ground further supports the Court's conclusion. All of Plaintiffs' cases involved consumers reporting problems with their vehicles, followed by dealerships or manufacturers allegedly lying about resolving the problems—thus deceiving the consumers into believing their vehicles were in working order—only for the defects to re-manifest at a later date.[5] That is not the case here. Plaintiffs Warchut and Chess affirmatively allege that they (1) experienced manifestations of the defect in 2011, (2) knew at that time that the manifestations were the result of faulty transmissions, and (3) either were told nothing was wrong with their vehicle or refused to accept their dealership's explanations after lodging complaints. If these allegations do not demonstrate actual knowledge of a defective

---

[5] *See Aberin v. Am. Honda Motor Co., Inc.*, No. 16-cv-04384-JST, 2018 WL 1473085, at *6 (N.D. Cal. Mar. 26, 2018) (involving plaintiffs who "allege[d] that they had their cars repaired by dealerships who purported to fix the reported problems"); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 961 (N.D. Cal. 2014) (involving allegations that the car manufacturer "pretended to fix the problems . . . instead of actually admitting that the problems could not be fixed"); *Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 999 (N.D. Cal. 2013) (involving allegations that defendants only repaired defective headlamps temporarily or replaced them with other defective parts).

13

transmission, Plaintiffs Warchut and Chess have at least pleaded knowledge of "relevant facts" from which a diligent plaintiff would learn of potential claims. *Rita M.*, 232 Cal. Rptr. at 690. Thus, "whatever the lengths" Defendant went "to conceal [the] wrongs," Warchut and Chess were "on notice of a potential claim," precluding them from relying on the fraudulent concealment doctrine. *See Barber*, 285 Cal. Rptr. at 672. And while Plaintiffs need not have included some of these details in the operative complaint, the consequence of their inclusion is that Plaintiffs Warchut and Chess have pled themselves out of invoking fraudulent concealment to sustain their Song-Beverly Act claims. *See Sprewell*, 266 F.3d at 988.

For these reasons, the Court **DISMISSES** all Song-Beverly Act claims except as to Plaintiff Madani.

### E. CLRA and UCL (Claims 5–6)

The Court previously dismissed without leave to amend CLRA and UCL claims brought by Plaintiffs Walley, DeVico, and Oushana. Order at 11–12. With respect to Plaintiff Oushana in particular, the Court dismissed his CLRA and UCL claims because he stated a viable claim for breach of an express warranty and thus had "an adequate remedy at law," barring claims for equitable relief, including claims for violations of California consumer protection statutes. *Id.*

Although the Court has previously held, in this case and elsewhere, that an adequate remedy at law bars CLRA and UCL claims for equitable relief, the Court has since reviewed case law—cited by neither party here—that warrants reconsideration of this principle. In particular, another court in this district recently denied dismissal on these grounds in *Luong v. Subaru v. American, Inc.*, No. 17-cv-03160-YGR, 2018 WL 2047646, at *7 (N.D. Cal. May 2, 2018). In so ruling, the court there highlighted the CLRA and UCL's plain statutory text:

> Business & Professions Code section 17205 expressly states that the remedies provided for a UCL violation are "cumulative to each other and to the remedies or penalties available under all other laws of this state." The CLRA similarly provides "[t]he remedies provided herein for violation of any section of this title or for conduct proscribed by any section of this title shall be in addition to any other procedures or remedies for any violation or conduct provided for in any other law." The availability of monetary damages does not preclude a claim for equitable relief under the UCL and CLRA based upon the same conduct.

14

*Id.* (internal citations omitted). The court in *Luong* acknowledged that California district courts have split on whether to bar CLRA and UCL claims for equitable relief when plaintiffs have alleged a claim that would provide an adequate remedy at law. *Id.* at \*7 n.6 (citing cases). It was ultimately persuaded that, "at the pleading stage," dismissal is not warranted when considering "the broad remedial purposes of the California consumer protection statutes." *Id.*

*Luong*'s reasoning is persuasive and supported by the California Supreme Court's most-recent decision to address the outer limits of CLRA and UCL's protection. In *Loeffler v. Target Corp.*, California's highest court explained that the CLRA and UCL's remedies "are not exclusive, but are in addition to any other procedures or remedies for any violation or conduct provided for in any other law." 324 P.3d 50, 76 (Cal. 2014) (internal quotation marks omitted). In keeping with *Loeffler*'s reasoning, the Court is persuaded that, at the pleading stage, theories of equitable remedies are not barred by a plaintiff adequately pleading theories supporting monetary relief. The Court accordingly denies Defendant's request to dismiss any Plaintiff's CLRA and UCL claims on this ground, and focuses instead on whether individual Plaintiffs otherwise adequately plead such claims.[6]

### 1. Plaintiffs Warchut and Chess

The Court turns first to whether Plaintiffs Warchut and Chess have stated viable CLRA and UCL claims. And Defendant principally moves to dismiss their claims as time-barred. *See* Mot. at 17–18. CLRA and UCL claims are governed by three- and four-year statues of limitations, respectively. *See* Cal. Civ. Code § 1783 (providing a three-year limitations period for CLRA claims); Cal. Bus. & Prof. Code § 17208 (providing a four-year limitations period for UCL claims). As discussed above, however, Plaintiff Warchut alleges facts demonstrating that he had "reason to at least suspect that a type of wrongdoing [had] injured [him]" in 2011, far more than four years before the commencement of this action. *Felix v. Anderson*, No. 14-cv-03809-HSG, 2016 WL 3540980 (N.D. Cal. June 29, 2016) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 110

---

[6] The Court does not consider Plaintiffs Walley and DeVico, whose claims the Court previously dismissed without leave to amend because they purchased Class Vehicles outside of California. Order at 11. The Court, however, revisits Plaintiff Oushana's claims.

15

P.3d 914, 920 (Cal. 2005)); *see also* SAC ¶ 129 ("Within a month of purchase, Plaintiff Warchut noticed his Class Vehicle would surge at low speeds and 'buck' and 'lurch' forward when parked. Further, when he was slowing down the vehicle's transmission would 'judder' when shifting between second and first gear and 'judder' when shifting between first and second gear."). And as also discussed above, Plaintiff Chess's claims are similarly time-barred due to his failure, for one, to "plead why, in the exercise of reasonable diligence, [he] could not have discovered the defect" at least in 2011. *See Finney*, 2018 WL 2552266 *4 (quoting *Herremans*, 2014 WL 5017843, at *5).

### 2. Plaintiffs Madani and Oushana

Although the Court previously dismissed Plaintiff Oushana's CLRA and UCL claims without leave to amend due to the availability of an adequate remedy at law, the Court finds dismissal is no longer warranted on this ground, for the reasons discussed above. The Court thus reconsiders here whether Oushana's claims otherwise survive dismissal. And as to Plaintiff Madani, the Court previously dismissed his CLRA and UCL claims for failure to plead that Defendant had knowledge of the purported transmission defect before Madani's purchase. Order at 12–13.

#### a. Knowledge

Defendant again contends that Plaintiffs have failed to plead pre-sale knowledge to support CLRA and UCL claims. Mot. at 20–22. The operative complaint, however, includes new allegations that preclude dismissal on this ground. Specifically, the SAC alleges that in August 2009—prior to the sale of any Class Vehicle, including Plaintiffs Madani and Oushana's—Defendant recalled several of its vehicles with "the same type of DSG transmission" as is in the Class Vehicles, due to those vehicles experiencing similar transmission issues. SAC ¶¶ 21–25.

Defendant counters that the 2009 recall does not establish pre-sale knowledge because it did not apply to Class Vehicles. Mot. at 22 (arguing that the 2009 recall "applied only to certain 2007-2010 model year Audi A3 and Audi TT vehicles, and certain models and model year Volkswagen vehicles"). But Plaintiffs allege that vehicles subject to the 2009 transmission recall had "the same type of DSG transmission" as Class Vehicles and suffered similar transmission

16

malfunctions. *See* SAC ¶ 22. Accepting these alleged facts as true, as the Court must do at this stage, it is at least plausible that Defendant had pre-sale knowledge of transmission defects in the Class Vehicles.

### b. Reliance

Defendant further contends that dismissal is warranted because Plaintiffs fail to plead reliance. Mot. at 18–19. "To prove reliance on an omission" with respect to CLRA and UCL claims, "a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). "A plaintiff may do so by simply proving that, had the omitted information been disclosed, one would have been aware of it and behaved differently. That one would have behaved differently can be presumed, or at least inferred, when the omission is material." *Id.* (internal citations and quotation marks omitted). Defendant does not dispute that an omission related to the purported transmission defect would have been material. Defendant instead contends that the operative complaint "fail[s] to plead facts plausibly establishing" that any Plaintiff "'would have been aware of' the alleged defect if disclosed," since Plaintiffs "do not allege that they heard, read or saw any advertisements or other representations from Defendant prior to purchasing their vehicles." Mot. at 19 (quoting *Myers v. BMW of N. Am., LLC*, No. 16-cv-00412-WHO, 2016 WL 5897740, at *6 (N.D. Cal. Oct. 11, 2016)).

The standard for pleading reliance on account of an omission is low, and "[t]here are, of course, various ways in which a plaintiff can demonstrate that she would have been aware of a defect, had disclosure been made." *Daniel*, 806 F.3d at 1226; *see also Myers*, 2016 WL 5897740, at *6. But Plaintiffs Madani and Oushana plead no facts whatsoever to establish that they would have been aware of the safety defect, if it were disclosed. Despite this failure, Plaintiffs Madani and Oushana may readily cure this defect, such as by "present[ing] evidence that they interacted with and received information from sales representatives at authorized [Audi] dealerships prior to purchasing their [Class Vehicles]," which the Ninth Circuit has held "is sufficient to sustain a factual finding that Plaintiffs would have been aware of the disclosure if it had been made through [the] authorized dealerships." *Daniel*, 806 F.3d at 1226.

17

1    Because the Court finds Plaintiffs Madani and Oushana have failed to plead reliance to
2    support their CLRA and UCL claims, dismissal is warranted. Because this defect is readily
3    curable, and the Court has not previously dismissed any Plaintiff's CLRA and UCL claims on this
4    ground, it finds that leave to amend as to these Plaintiffs is warranted.

The Court accordingly **DISMISSES** all Plaintiffs' CLRA and UCL claims. Only Plaintiffs Madani and Oushana's claims are with leave to amend.

### F. Declaratory and Injunctive Relief (Claims 7 and 9)

The Court previously declined to dismiss Plaintiffs' claims for declaratory and injunctive relief, explaining that "the district court may, in its discretion, determine whether maintaining jurisdiction over the declaratory judgment action is appropriate," and that "Defendants articulate no prejudice that would result from these claims proceeding." Order at 13–14 (citing *Transamerica Life Ins. Co. v. Jurin*, No. C 14-01881 LB, 2015 WL 355717, at *5 (N.D. Cal. Jan. 27, 2015), and *Falk v. Nissan N. Am., Inc.*, No. 17-cv-04871-HSG, 2018 WL 2234303, at *10–11 (N.D. Cal. May 16, 2018)).

Although Defendant again moves for dismissal of these claims, it presents no new argument from which the Court might reconsider its prior ruling. *See* Mot. at 23–24. Presented with no new argument to consider, the Court finds that dismissal is again unwarranted. The Court thus **DENIES** Defendant's dismissal request as to these claims, with respect to those Plaintiffs with otherwise surviving claims.

### G. Unjust Enrichment (Claim 8)

The Court previously dismissed without leave to amend Plaintiffs DeVico and Walley's unjust enrichment claims because they "conferred no benefit upon Defendants because they purchased their cars from third parties." Order at 15. And the Court dismissed Plaintiffs Madani and Oushana's claims because "actions in quasi-contract cannot lie when an express contract between the same parties governs the subject matter in question." *Id.* (citing *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996)). Despite the Court's prior holdings, Plaintiffs present no new argument in opposition to the pending dismissal motion that the Court did not previously reject. *See* Opp. at 15–16. And because newly named Plaintiffs Chess and

1 Warchut had materially similar express contracts with Defendant as Plaintiffs Madani and
2 Oushana, dismissal of their unjust enrichment claims is warranted under the same logic. *See* SAC
3 ¶¶ 3, 96, 119, 121, 127,

4 The Court thus **DISMISSES** all Plaintiffs' unjust enrichment claims.

**IV. CONCLUSION**

The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion to dismiss the second amended complaint. And the Court finds that leave to amend is largely unwarranted, as Plaintiffs have previously had the opportunity to amend the complaint to add the requisite particularity but failed to cure defects identified by the Court in the prior dismissal order. *See Zucco Partners, LLC*, 552 F.3d at 1007. The only claims dismissed with leave to amend are Plaintiffs Madani and Oushana's CLRA and UCL claims, for the limited purpose of pleading reliance. Any amended complaint must be filed within fourteen days of this order.

All told, the following claims survive this dismissal order:

(1) Breach of Express Warranty, as to Plaintiffs Oushana and Chess;

(2) Magnuson-Moss Warranty Act, as to Plaintiffs Oushana and Chess;

(3) Song-Beverly Act, as to Plaintiff Madani;

(4) Declaratory Judgment, as to Plaintiffs Oushana, Chess, and Madani;

(5) Equitable Injunctive and Declaratory Relief, as to Plaintiffs Oushana, Chess, and Madani.

The parties are **DIRECTED** to meet and confer and submit a stipulation and proposed order by August 21, 2019, setting forth a schedule for the case through class certification. The proposed schedule should include a class certification hearing date in January 2021.

**IT IS SO ORDERED.**

Dated: 8/8/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge