UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN CHESS,<br><br>        Plaintiff,<br><br>    v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>        Defendant. | Case No. 17-cv-07287-HSG<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 124 |

Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by John Chess. *See* Dkt. No. 124. The parties have reached a settlement regarding Plaintiff's claims and now seek the required court approval. The Court held a telephonic hearing on September 30, 2021. For the reasons set forth below, the Court **GRANTS** Plaintiff's motion.

**I.   BACKGROUND**

    **A.   Factual Background**

Plaintiff brings this class action against Defendant Volkswagen Group of America, Inc. regarding direct-shift gearboxes, also referred to as "S-tronic transmissions," installed in 2010-2012 Audi S4 and S5 vehicles (the "Class Vehicles"). *See generally* Dkt. No. 119 ("Fourth Am. Compl."). Plaintiff alleges that the direct-shift gearbox ("DSG") transmissions in Class Vehicles are defective, causing sudden, rough, unexpected shaking and violent jerking—also referred to as "juddering" or "shuddering"—when drivers attempt to accelerate, shift into second, third, or fourth gear, or decelerate. *Id.* at ¶ 4. Plaintiff also alleges that Class Vehicles exhibit clunky downshifting and inhibited gear shifting. *Id.* According to Plaintiff's Fourth Amended Complaint, the Class Vehicles were sold or leased subject to express and implied warranties, and

Defendant knew or should have known about the safety hazard posed by the transmission defect before the sale of the first Class Vehicles. *See id.* at ¶¶ 3, 8.

Plaintiff brings this action on behalf of "all persons and entities who purchased or leased a Class Vehicle (i.e. 2010, 2011 or 2012 Audi S4; or, 2010, 2011 or 2012 Audi S5) with a DSG transmission in the United States or Puerto Rico," as well as a subclass of "all persons who purchased or leased a Class Vehicle (i.e., 2010, 2011 or 2012 Audi S4; or, 2010, 2011 or 2012 Audi S5) with a DSG transmission and who purchased or leased the vehicle in and/or reside in California." *Id.* at ¶¶ 84, 85. Plaintiff alleges causes of action for breach of express warranty; violation of the Magnuson-Moss Warranty Act, 15 U.S.C.A. §§ 2301, *et seq.*, the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, and Fed. R. Civ. P. 57; and equitable, injunctive, and declaratory relief. *See generally id.*

### B. Procedural History

Plaintiffs Brian Gillard, Mike Madani, Shant Bakalian, Eric Walley, and Richard DeVico filed a Class Action Complaint against Volkswagen Group of America, Inc., Volkswagen AG, and Audi AG on December 22, 2017. *See* Dkt. No. 1. Plaintiffs Brian Gillard and Shant Bakalian were voluntarily dismissed in March 2018. *See* Dkt. No. 12. On April 23, 2018, Plaintiffs filed a First Amended Complaint. *See* Dkt. No. 50. Defendants filed a motion to dismiss the First Amended Complaint, *see* Dkt. No. 56, which the Court granted in part and denied in part, *see* Dkt. No. 69.

On March 15, 2019, Plaintiffs filed a Second Amended Complaint. *See* Dkt. No. 71. The Second Amended Complaint added John Chess, Michael Warchut and Romsin Oushana as Plaintiffs and only named Volkswagen Group of America, Inc. as a Defendant. *See id.* Defendant filed a motion to dismiss the Second Amended Complaint, *see* Dkt. No. 72, which the Court granted in part and denied in part, *see* Dkt. No. 84. The Court also dismissed Plaintiffs Eric Walley, Richard DeVico, and Michael Warchut with prejudice, leaving Plaintiffs Mike Madani, Romsin Oushana, and John Chess to pursue the remaining claims. *See* Dkt. No. 84.

On August 19, 2019, Plaintiffs filed a Third Amended Complaint. *See* Dkt. No. 86. Defendant filed a motion to partially dismiss the Third Amended Complaint, *see* Dkt. No. 91,

which the Court granted without leave to amend, *see* Dkt. no. 99. The parties then entered into settlement negotiations. *See* Dkt. No. 123 ("Briet Decl.") at ¶ 7. The parties participated in a full-day mediation session with a professional, third-party, neutral mediator at JAMS, Bradley A. Winters, Esq. *Id.* at ¶ 16. After the mediation, the parties continued to engage in arms-length negotiations. *Id.* at ¶ 17.

On June 6, 2021, a Fourth Amended Complaint was filed dismissing Mike Madani and Romsin Oushana as Plaintiffs, and asserting claims for Plaintiff John Chess individually and on behalf of a putative class of all U.S. present and former owners and lessees of Class Vehicles. *See generally* Fourth Am. Compl.

The parties entered into a settlement agreement, fully executed on July 9, 2021. Dkt. No. 123, Declaration of Mitchell Breit, Ex. A. Plaintiff then filed an unopposed motion for preliminary approval, Dkt. No. 124, and the Court held a hearing on September 30, 2021. Following the hearing, the parties submitted an amended settlement agreement on October 6, 2021. Dkt. No. 131, Ex. A ("Amended Settlement Agreement" or "ASA").

### C. Settlement Agreement

The key terms of the parties' Amended Settlement Agreement are as follows:

<u>Class Definition</u>: The Settlement Class is defined as

> All persons and entities who purchased or leased a Settlement Class Vehicle, as defined in Section I.X. of this Agreement, in the United States of America or Puerto Rico.
>
> Excluded from the Settlement Class are (a) all Judges who have presided over the Action and their spouses; (b) all current employees, officers, directors, agents, and representatives of Defendant, and their family members; (c) any affiliate, parent, or subsidiary of Defendant and any entity in which Defendant has a controlling interest; (d) anyone acting as a used car dealer; (e) anyone who purchased a Settlement Class Vehicle for the purpose of commercial resale; (f) anyone who purchased a Settlement Class Vehicle with salvaged title and/or any insurance company who acquired a Settlement Class Vehicle as a result of a total loss; (g) any insurer of a Settlement Class Vehicle; (h) issuers of extended vehicle warranties and service contracts; (i) any Settlement Class Member who, prior to the date of this Agreement, settled with and released Defendant or any Released Patties from any Released Claims, and (j) any Settlement Class Member that files a timely and proper Request for Exclusion from the Settlement Class.

ASA at § I.Y. A Settlement Class Vehicle means any model year 2010, 2011, or 2012 Audi S4 or

3

Audi S5 vehicle that was imported and distributed by Volkswagen Group of America, Inc. for sale or lease in the United States or Puerto Rico. *Id.* at § I.X.

Settlement Benefits:

The parties have agreed that, subject to the limitations set forth in the Settlement Agreement, Defendant will reimburse class members for one repair (parts and labor) of a diagnosed condition of shuddering, juddering, rough shifting or improperly entering "limp mode" of a Settlement Class Vehicle's transmission. A repair means the replacement of either the transmission or mechatronics unit ("Covered Repair"). *Id.* at §§ I.K, II.A. To qualify for reimbursement, the Covered Repair must have been performed prior to the Notice Date and within nine years or ninety thousand miles (whichever occurred first) from the Settlement Class Vehicle's In-Service Date. *Id.* at § II.A. A Settlement Class Vehicle's "In-Service Date" means the date on which it was first delivered to either the original purchaser or original lessee; or if the vehicle was first placed in service as a "demonstrator" or "company" car, on the date it was first placed in service. *Id.* at § I.R. The cost of a Covered Repair is reimbursed on a sliding scale based on the Settlement Class Vehicle's age and mileage, as detailed in Table 1 of the Settlement Agreement. *Id.* at § II.A. If the Covered Repair was performed at an independent service center and not an authorized Audi dealer, then the invoice amount will be limited to $5,000 if the Covered Repair was a replacement of the mechatronics unit and $12,000 if the Covered Repair was a total transmission replacement. *Id.* To be reimbursed, within 140 days after the Notice Date, each class member must submit a Claim Form, proof of past paid out-of-pocket expenses incurred for a Covered Repair, and proof of the class member's adherence to the relevant aspects of the Settlement Class Vehicle's maintenance schedule (within a variance of ten percent of the scheduled time/mileage requirements). *Id.* at §§ I.T-U, II.A, II.B.; *see also* Dkt. No. 123, Ex. A. The Settlement Agreement imposes other miscellaneous requirements for reimbursement, including proof of class membership if the Claim Form is not addressed to the claimant and deductions for any discounts already received on Covered Repairs. ASA at § II.B.

Settlement Class Members may also benefit from an Extended Warranty. Effective on the Notice Date, Defendant will extend its New Vehicle Limited Warranties applicable to the

4

Settlement Class Vehicles to cover a percentage of the cost of one Covered Repair, by an authorized Audi dealer, during a period of nine years or ninety thousand miles (whichever occurs first) from the In-Service Date of the Settlement Class Vehicle. *Id.* at § II.C. The Extended Warranty will cover a percentage of the cost on a sliding scale based on the mileage and age of the vehicle. *Id.* To qualify for the Extended Warranty, a Settlement Class Member must submit to the dealer Proof of Adherence to the Vehicle's Maintenance Schedule. *Id.* The Extended Warranty is subject to the same terms and conditions in the Settlement Class Vehicle's original New Vehicle Limited Warranty and Warranty Information Booklet. *Id.* The Extended Warranty is fully transferable to later owners or lessees as long as the extended warranty period (time and/or mileage) has not expired. *Id.*

Transmission shuddering, juddering, rough shifting, or improperly entering "limp mode" resulting from misuse, abuse, alteration or modification, a collision or crash, vandalism, lack of or improper maintenance, and/or damage from an environmental or outside source, are not reimbursable or covered by the Extended Warranty. *Id.* at §§ II.B-C.

<u>Release</u>: Under the settlement agreement, all class members will release:
> [A]ny and all claims, causes of action, demands, debts, suits, liabilities, obligations, damages, entitlements, losses, actions, rights of action and remedies of any kind, nature and description, whether known or unknown, asserted or unasserted, foreseen or unforeseen, regardless of any legal or equitable theory, existing now or arising in the future, by Plaintiff and any and all Settlement Class Members (including their successors, heirs, assigns, and representatives) which in any way relate to the transmissions of Settlement Class Vehicles, including all matters that were or could have been asserted in the Action, and all claims, causes of action, demands, debts, suits, liabilities, obligations, damages, entitlements, losses, actions, rights of action and remedies of any kind, nature and description, arising under any state, federal or local statute, law, rule and/or regulation, under any federal, state or local consumer protection, consumer fraud, unfair business practices or deceptive trade practices statutes or laws, under common law, and/or under any legal or equitable theories whatsoever including tort, contract, products liability, negligence, fraud, misrepresentation, concealment, consumer protection, restitution, quasi-contract, unjust enrichment, express and/or implied warranty, implied covenants, the Magnuson-Moss Warranty Act, California Consumer Legal Remedies Act, California Business and Professions Code, California Song-Beverly Consumer Warranty Act and any federal, state or local derivations thereof or similar laws, any state Lemon Laws, secret warranty and/or any other theory of liability and/or recovery, whether in law or in equity, and for any and all injuries, losses, damages, remedies, recoveries, or entitlements of any

5

> kind, nature and description, in law or in equity, under statutory and/or common law, including, but not limited to, compensatory damages, actual damages, economic losses or damages, exemplary damages, punitive damages, statutory damages, statutory penalties or rights, restitution, unjust enrichment, and any other legal or equitable relief. This Settlement Agreement expressly exempts claims for personal injuries and property damage (other than damage to the Settlement Class Vehicle itself).

ASA at §§ I.V, II. Class members further agree to waive:

> [T]o the fullest extent permitted by law, the provisions, rights, and benefits of § 1542 of the California Civil Code, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

*Id.* at § VIII.D(2).

Class Notice: A third-party settlement administrator will mail class notices to all reasonably identifiable class members. *Id.* at § IV.B(1). To identify class members, the third-party settlement administrator will obtain from Defendant the VINs of the Settlement Class Vehicles, match the VINs to names and addresses of the last known owners and lessees via Polk/HIS Market, and confirm the addresses through the United States Postal Service's National Change of Address database. *Id.* at §§ IV.B(2)-(3). For any undeliverable notice packets, the third-party settlement administrator will re-mail the class notice using any forwarding addresses provided or, in the absence of a forwarding address, will perform an advance address search and re-mail to the extent any new addresses are found. *Id.* at §§ IV.B(3). Additionally, the third-party settlement administrator will establish a website (including instructions on how to submit a claim; instructions on how to contact the administrator, Class Counsel, and/or Defense Counsel; pdfs of the Claim Form, Class Notice, Settlement Agreement, and the Preliminary Approval Order among other key documents; and relevant deadlines) and a toll-free number to be staffed by the third-party settlement administrator. *Id.* at §§ IV.B(6)-(7).

Service Award: The named Plaintiff, John Chess, may apply for a service award of no more than $5,000.00. *Id.* at § V.III.C(2).

Attorneys' Fees and Costs: Class Counsel will file an application for attorneys' fees not to exceed $1,050,00.00. *Id.* at § V.III.C(1). Defendant will not oppose or object to Class Counsel's application. *Id.*

## II. PROVISIAL CLASS CERTIFICATION

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Class certification is a two-step process. *First*, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349. *Second*, it must establish that at least one of the bases for certification under Rule 23(b) is met. Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), it must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) ("*Hyundai II*"). When deciding whether to certify a litigation class, a district court must consider manageability at trial. *Id*. However, this concern is not present in certifying a settlement class. *Id.* at 556–57. In deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses." *Id.* at 557.

### A. Rule 23(a) Certification

#### i. Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." The Court finds that the numerosity requirement is satisfied here because joinder of the thousands of estimated class members would be impracticable. *See* Dkt. No. 124 at 20-21. Plaintiff estimates that there are more than 11,000 Settlement Class Vehicles. *Id.* As each of those vehicles may have had more than one owner, the size of the class is even greater. *See id.*

#### ii. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A contention is sufficiently common where "it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each

one of the claims in one stroke." *Dukes*, 564 U.S at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions' ― even in droves — but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350. Even a single common question is sufficient to meet this requirement. *Id.* at 359.

Common questions of law and fact in this action include whether (1) the Settlement Class Vehicles' DSG transmissions contained a defect, (2) whether Defendant knew or should have known of the alleged defect before the Settlement Class Vehicles were sold or leased, and (3) whether Defendant's alleged conduct breached express warranties or applicable consumer statutes. *See* Dkt. No. 124 at 21. Although whether each class member is entitled to reimbursement or an Extended Warranty, and in what amounts the class member should be covered, will differ, the issues described above are common to the proposed Settlement Class. Accordingly, the Court finds that the commonality requirement is met in this case.

### iii. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted). That said, under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (quotation omitted).

The named Plaintiff's claims are both factually and legally similar to those of the putative class. Plaintiff Chess alleges that, like other class members, he purchased an Audi which had a defective DSG transmission that caused sudden, rough, unexpected lurching, shuttering, and bucking while accelerating and stopping. *See* Fourth Am. Compl. at ¶¶ 78-83. This is sufficient to satisfy the typicality requirement.

### iv. Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." The Court must address two legal questions: (1) whether the named Plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that either named Plaintiff or Plaintiff's Counsel have a conflict with other class members. Plaintiff's Counsel have been appointed as class counsel in numerous class actions across the country. *See* Dkt. No. 121, Ex. A. The Court finds named Plaintiff and Plaintiff's Counsel have prosecuted this action vigorously on behalf of the class to date, and will continue to do so. The adequacy of representation requirement, therefore, is satisfied.

### B. Rule 23(b)(3) Certification

To certify a class, a plaintiff must satisfy the two requirements of Rule 23(b)(3). First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). And second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*.

### i. Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quotations omitted). The Supreme Court has defined an individualized question as one where "members of a proposed class will need to present evidence that varies from member to member." *Id.* (quotations omitted). A common question, on the other hand, is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is

9

susceptible to generalized, class-wide proof." *Id.* (quotations omitted).

The Court concludes that, for purposes of settlement, common questions predominate here because the same key issues apply to each proposed class member. Each class member owned or leased a Settlement Class Vehicle. All Settlement Class Vehicles had a DSG transmission that Plaintiff alleges was defective and caused identical problems. *See* Dkt. No. 124 at 24; Fourth Am. Compl. at ¶¶ 2, 4. Whether the alleged defect existed in all the Settlement Class Vehicles is the predominant issue. Moreover, Plaintiff alleges that because Defendant knew or should have known of the alleged defect before the Settlement Class Vehicles were sold or leased, Defendant's alleged conduct breached express warranties and applicable consumer statutes on a class-wide basis. *See* Dkt. No. 124 at 24; Fourth Am. Compl. at ¶¶ 6-9. Although class members will need to rely upon individual evidence to show whether they are entitled to reimbursement or an Extended Warranty, the "mere fact that there might be differences in damage calculations is not sufficient to defeat class certification." *Hyundai II*, 926 F.3d at 560 (quotations omitted).

### ii. Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

Here, the Court concludes that a class action enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them. Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

The Court finds that the predominance and superiority requirements of Rule 23(b)(3) are met.

### iii. Class Representative and Class Counsel

Because the Court finds that named Plaintiff meets the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints the named Plaintiff as class representative. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Factors that courts must consider when making that decision include:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Plaintiff's Counsel have efficiently investigated and litigated this case. As noted above, Plaintiff's counsel have extensive experience as class counsel in litigating complex class actions, including consumer fraud and defective product cases. *See also* Dkt. No. 122 at 2. The Court appoints Milberg Coleman Bryson Phillips Grossman, PLLC and Simmons Hanly Conroy, LLC as class counsel.

## III. PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional class certification is appropriate, the Court considers whether it should preliminarily approve the parties' class action settlement.

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required

11

1 under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotations omitted).
2 Such settlement agreements "'must withstand an even higher level of scrutiny for evidence of
3 collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing
4 the court's approval as fair.'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir.
5 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)).  A
6 more "exacting review is warranted to ensure that class representatives and their counsel do not
7 secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a
8 duty to represent." *Id*. (quotations omitted).

9 Courts may preliminarily approve a settlement and notice plan to the class if the proposed
10 settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does
11 not grant improper preferential treatment to class representatives or other segments of the class;
12 (3) falls within the range of possible approval; and (4) has no obvious deficiencies.  *In re Lenovo*
13 *Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018)
14 (citation omitted).  Courts lack the authority, however, to "delete, modify or substitute certain
15 provisions.  The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

### B. Analysis

#### i. Evidence of Conflicts and Signs of Collusion

18 The first factor the Court considers is whether there is evidence of collusion or other
19 conflicts of interest.  *See Roes*, 944 F.3d at 1049.  The Ninth Circuit has directed district courts to
20 look for "subtle signs of collusion," which include whether counsel will receive a disproportionate
21 distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (*i.e.*, an
22 arrangement where defendant will not object to a certain fee request by class counsel)," and
23 whether the parties agree to a reverter that returns unclaimed funds to the defendant.  *Id*.

#### a. Attorney's Fees

25 The Settlement Agreement does not establish a fund from which claims will be paid.
26 Therefore, reversion is not an issue in this case.  Additionally, without a designated amount being
27 set aside for the settlement, it is not possible to calculate with certainty at this point whether
28 counsel are receiving a disproportionate distribution of the settlement.  Given the size of the class

and the amount each class member would be reimbursed for a Covered Repair, the attorneys' fees are not obviously disproportionate to the expected size of the settlement and the potential benefits conferred. The parties did negotiate a "clear sailing" arrangement, with Defendant agreeing not to object to the fee request by Class Counsel. Nonetheless, the Court recognizes that Plaintiff's Counsel obtained significant results for the prospective class members, as discussed below in Section III.B.iii. And Class Counsel's proposed fees will not prevent any class member from receiving the full benefit of the class settlement because the Settlement Agreement does not establish a settlement fund. The Court is cognizant of its obligations to review class fee awards with particular rigor, and at the final approval stage will carefully scrutinize the circumstances and determine what attorneys' fees award is appropriate in this case. Accordingly, the Court finds that this factor does not preclude preliminary approval.

### ii. Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*, 2018 WL 6099948, at *8 (quotations omitted).

Although the Settlement Agreement authorizes the named Plaintiff to seek an incentive award of no more than $5,000 for his role in this lawsuit, the Court will ultimately determine whether he is entitled to such an award and the reasonableness of the amount requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiffs must provide sufficient evidence to allow the Court to evaluate their award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in

13

1    pursuing the litigation . . . .'" *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  The
2    Court will consider the evidence presented at the final fairness hearing and evaluate the
3    reasonableness of any incentive award request.  Nevertheless, because incentive awards are not
4    per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval.  *See*
5    *Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action
6    cases" and "are discretionary" (emphasis omitted)).

### iii.  Settlement within Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval.  To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8.  This requires the Court to evaluate the strength of Plaintiffs' case.

Plaintiff has explained the significant risks that they would face in continuing to litigate this case.  *See* Dkt. No. 124 at 24-26.  The claims involve highly technical issues relating to the design and manufacture of the Settlement Class Vehicles.  According to Plaintiff, litigation of these claims through trial will require complex, disputed proof which could be susceptible to different interpretations.  *Id.* at 25.  Defendant has also asserted numerous defenses.  *Id.* at 25.  In particular, Defendant's statute of limitations defense could preclude recovery by all or many of the Settlement Class Members absent a settlement, *id.*, and has already resulted in the dismissal of some of Plaintiff's claims, *see* Dkt. No. 99 at 3-5.  The Court finds that, given these risks, the settlement amount weighs in favor of granting preliminary approval.

### iv.  Obvious Deficiencies

The Court also considers whether there are obvious deficiencies in the settlement agreement.  The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

*     *     *

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.  The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when

14

submitting their motion for final approval.

## IV. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;
(vi) the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed that a third-party settlement administrator, Angeion Group, will mail class notice to those members of the class that may be identified through reasonable efforts. ASA at § IV.B(1). To identify class members, the parties have agreed that Angeion Group will obtain from Defendant the VINs of the Settlement Class Vehicles. *Id.* at § IV.B(2). Angeion Group will then match VINs to names and addresses of the last known owners and lessees via Polk/HIS Market, and confirm the address through the United States Postal Service's National Change of Address database. *Id.* at §§ IV.B(2)-(3). For any undeliverable notice packets, Angeion Group will re-mail the class notice using any forwarding addresses provided or, if there is no forwarding address, will perform an advanced address search and re-mail to any new addresses. *Id.* at §§ IV.B(3). Angeion Group will also establish a case-specific website and a toll-free number dedicated to this settlement. *Id.* at §§ IV.B(6)-(7).

The Court finds that the proposed notice process is "reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement." *Roes, 1-2 v. SFBSC*

*Mgmt., LLC*, 944 F.3d 1035, 1045 (9th Cir. 2019) (quotation omitted).

As to the substance of the notice, the parties have attached a copy of their proposed class notice. *See* Dkt. No. 123, Declaration of Mitchell Briet Exhibit A, Exhibit B. The notice includes information on the definition of the class, the settlement benefits, how to submit a Claim for Reimbursement, how to request exclusion from the Settlement, how to support or object to the Settlement, and the final fairness hearing. *See id.* The notice also informs Settlement Class Members that Class Counsel will file a motion with the Court for attorneys' fees, not to exceed a total sum of $1,050,000, and for a service award in the amount of $5,000 for the named Plaintiff. *See id.*

The Court finds that the proposed notice provides sufficient information about the case and thus conforms with due process requirements. *See Hyundai II*, 926 F.3d at 567 ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (quotation omitted)).

## V.  CONCLUSION

The Court **GRANTS** Plaintiffs' motion for preliminary approval. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order. The final fairness hearing and hearing on any motions for fees and incentive awards shall not be held until at least 140 days after the Claims Administrator mails individual Class Notice to reasonably identifiably Settlement Class Members. To the extent Defendant has suggested holding the final fairness hearing before the end of the claims period, the Court declines that request as unwarranted under the circumstances. As a part of the final approval process, the parties shall submit to the Court information regarding Settlement Class Members' claims, including the information described in the Northern District of California's class action guidance and the aggregate estimated value of the claims submitted.

The Court notes the parties' request "that the claims administrator's review and processing of the reimbursement claims be deferred until after the Court has decided the issue of final approval . . . ." Dkt. No. 133 at 3. But the Court needs the information above to conclusively

16

assess whether the settlement is fundamentally fair, adequate, and reasonable so as to warrant final approval, as well as to evaluate any motion for fees and incentive awards. While that may not require full "review and processing," the parties will need to do enough to obtain and provide this information for the Court's consideration at the final fairness hearing.

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment, at least 45 days after the filing of the motion for attorneys' fees and incentive payments | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated: 11/24/2021

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

17