1
2
3
4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    JOHN CHESS,                           Case No. 17-cv-07287-HSG

8                  Plaintiff,              **ORDER GRANTING MOTION FOR
                                           FINAL APPROVAL OF CLASS
9         v.                               ACTION SETTLEMENT AND
                                           GRANTING IN PART AND DENYING
10   VOLKSWAGEN GROUP OF AMERICA,          IN PART PLAINTIFF'S COUNSEL'S
     INC.,                                 MOTION FOR ATTORNEYS' FEES
11                                         AND EXPENSES**
                  Defendant.
12                                         Re: Dkt. Nos. 139, 142

13

14        Pending before the Court is Plaintiff's motion for final approval of class action settlement,

15   Dkt. No. 142, and Plaintiff's counsel's motion for attorneys' fees and expenses, Dkt. No. 139.

16   Two individuals filed objections to the settlement, *see* Dkt. Nos. 140 and 141, and Defendant filed

17   a memorandum of law in response to the objections and in support of Plaintiff's motion for final

18   approval, *see* Dkt. No. 143.  The Court held a final fairness hearing on August 18, 2022.

19   Following the hearing, Plaintiff submitted two supplemental filings regarding the attorneys' fees

20   and service award requests, Dkt. Nos. 146 and 148, and the parties submitted a joint supplemental

21   brief in support of the motion for final approval, Dkt. No. 149.  For the reasons set forth below,

22   the Court **GRANTS** Plaintiff's motion for final approval and **GRANTS** in substantial part

23   Plaintiff's counsel's motion for attorneys' fees and expenses.

24   I.   **BACKGROUND**

25        A.   **Factual Allegations**

26        Plaintiff alleges that the direct-shift gearbox ("DSG") transmissions in 2010-2012 Audi S4

27   and S5 vehicles (the "Class Vehicles") are defective, causing sudden, rough, unexpected shaking

28   and violent jerking—also referred to as "juddering" or "shuddering"—when drivers attempt to

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

accelerate, shift into second, third, or fourth gear, or decelerate.  Dkt. No. 119 at ¶ 4.  Plaintiff also alleges that Class Vehicles exhibit clunky downshifting and inhibited gear shifting.  *Id.*  According to Plaintiff's Fourth Amended Complaint, the Class Vehicles were sold or leased subject to express and implied warranties, and Defendant knew or should have known about the safety hazard posed by the transmission defect before the sale of the first Class Vehicles.  *See id.* at ¶¶ 3, 8.

Plaintiff brings causes of action for breach of express warranty; violation of the Magnuson-Moss Warranty Act, 15 U.S.C.A. §§ 2301, *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*; and equitable, injunctive, and declaratory relief.  *See generally id.*  A summary of the case's procedural history is included in the Court's order granting preliminary approval of the class action settlement.  *See* Dkt. No. 135 at 2-3.

**B.    Settlement Agreement**

After engaging in months of arms-length negotiations, including a full-day mediation with third-party JAMS mediator Bradley A. Winters, Esq., the parties entered into a settlement agreement.  Dkt. No. 142 at 2-3; *see also* Dkt. No. 142-4.  Following the Court's preliminary approval hearing, the parties submitted an amended settlement agreement.  Dkt. No. 142-5 ("Amended Settlement Agreement" or "ASA").

Class Definition: The Settlement Class is defined as

> All persons and entities who purchased or leased a Settlement Class Vehicle, as defined in Section I.X. of this Agreement, in the United States of America or Puerto Rico.
>
> Excluded from the Settlement Class are (a) all Judges who have presided over the Action and their spouses; (b) all current employees, officers, directors, agents, and representatives of Defendant, and their family members; (c) any affiliate, parent, or subsidiary of Defendant and any entity in which Defendant has a controlling interest; (d) anyone acting as a used car dealer; (e) anyone who purchased a Settlement Class Vehicle for the purpose of commercial resale; (f) anyone who purchased a Settlement Class Vehicle with salvaged title and/or any insurance company who acquired a Settlement Class Vehicle as a result of a total loss; (g) any insurer of a Settlement Class Vehicle; (h) issuers of extended vehicle warranties and service contracts; (i) any Settlement Class Member who, prior to the date of this Agreement, settled with and released Defendant or any Released Patties from any Released Claims, and (j) any Settlement Class Member that files a timely and proper Request for Exclusion from the Settlement Class.

ASA at § I.Y.  A Settlement Class Vehicle means any model year 2010, 2011, or 2012 Audi S4 or Audi S5 vehicle that was imported and distributed by Volkswagen Group of America, Inc. for sale or lease in the United States or Puerto Rico.  *Id.* at § I.X.

Settlement Benefits:

Subject to the limitations set forth in the Amended Settlement Agreement, Defendant will reimburse class members for one repair (parts and labor) of a diagnosed condition of shuddering, juddering, rough shifting or improperly entering  "limp mode" of a Settlement Class Vehicle's transmission.  *Id.* at §§ I.K, II.A.  A repair means the replacement of either the transmission or mechatronics unit ("Covered Repair").  *Id.* at §§ I.K, II.A.  To qualify for reimbursement, the Covered Repair must have been performed prior to the Notice Date and within nine years or ninety thousand miles (whichever occurred first) from the Settlement Class Vehicle's In-Service Date. *Id.* at § II.A.  A Settlement Class Vehicle's "In-Service Date" means the date on which it was first delivered to either the original purchaser or original lessee; or if the vehicle was first placed in service as a "demonstrator" or "company" car, on the date it was first placed in service.  *Id.* at § I.R.  The cost of a Covered Repair is reimbursed on a sliding scale based on the Settlement Class Vehicle's age and mileage, as detailed in Table 1 of the Amended Settlement Agreement.  *Id.* at § II.A.  If the Covered Repair was performed at an independent service center and not an authorized Audi dealer, then the reimbursement will be limited to $5,000 for replacement of the mechatronics unit and $12,000 for a total transmission replacement.  *Id.*  To be reimbursed, within 140 days after the Notice Date, each class member must submit a Claim Form, proof of past paid out-of-pocket expenses incurred for a Covered Repair, and proof of the class member's adherence to the relevant aspects of the Settlement Class Vehicle's maintenance schedule (within a variance of ten percent of the scheduled time/mileage requirements).  *Id.* at §§ I.T-U, II.A, II.B.; *see also* Dkt. No. 142-2 Exhibits B and C.  The Amended Settlement Agreement imposes other requirements for reimbursement, including proof of class membership if the Claim Form is not addressed to the claimant and deductions for any discounts already received on Covered Repairs.  ASA at § II.B.

As an added benefit, Settlement Class Members may also still be covered by a 9 year/90,000 mile Extended Warranty, depending on the vehicle's In-Service Date.  *See id.* at §

3

II.C.  The Extended Warranty will cover a percentage of the cost of a Covered Repair on a sliding scale based on the mileage and age of the vehicle.  *Id.*  As with the reimbursement plan described above, a Settlement Class Member must submit Proof of Adherence to the Vehicle's Maintenance Schedule to qualify for the Extended Warranty.  *Id.*

Transmission shuddering, juddering, rough shifting, or improperly entering "limp mode" resulting from misuse, abuse, alteration or modification, a collision or crash, vandalism, lack of or improper maintenance, and/or damage from an environmental or outside source, are not reimbursable or covered by the Extended Warranty.  *Id.* at §§ II.B-C.

Release: Under the Amended Settlement Agreement, all class members will release:
> [A]ny and all claims, causes of action, demands, debts, suits, liabilities, obligations, damages, entitlements, losses, actions, rights of action and remedies of any kind, nature and description, whether known or unknown, asserted or unasserted, foreseen or unforeseen, regardless of any legal or equitable theory, existing now or arising in the future, by Plaintiff and any and all Settlement Class Members (including their successors, heirs, assigns, and representatives) which in any way relate to the transmissions of Settlement Class Vehicles, including all matters that were or could have been asserted in the Action, and all claims, causes of action, demands, debts, suits, liabilities, obligations, damages, entitlements, losses, actions, rights of action and remedies of any kind, nature and description, arising under any state, federal or local statute, law, rule and/or regulation, under any federal, state or local consumer protection, consumer fraud, unfair business practices or deceptive trade practices statutes or laws, under common law, and/or under any legal or equitable theories whatsoever including tort, contract, products liability, negligence, fraud, misrepresentation, concealment, consumer protection, restitution, quasi-contract, unjust enrichment, express and/or implied warranty, implied covenants, the Magnuson-Moss Warranty Act, California Consumer Legal Remedies Act, California Business and Professions Code, California Song-Beverly Consumer Warranty Act and any federal, state or local derivations thereof or similar laws, any state Lemon Laws, secret warranty and/or any other theory of liability and/or recovery, whether in law or in equity, and for any and all injuries, losses, damages, remedies, recoveries, or entitlements of any kind, nature and description, in law or in equity, under statutory and/or common law, including, but not limited to, compensatory damages, actual damages, economic losses or damages, exemplary damages, punitive damages, statutory damages, statutory penalties or rights, restitution, unjust enrichment, and any other legal or equitable relief. This Settlement Agreement expressly exempts claims for personal injuries and property damage (other than damage to the Settlement Class Vehicle itself).

*Id.* at § I.V.  Class members further agree to waive:
> [T]o the fullest extent permitted by law, the provisions, rights, and benefits of § 1542 of the California Civil Code, which provides:

4

> "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

*Id.* at § VIII.D(2).

**Class Notice**: A third-party settlement administrator mailed notices to all reasonably identifiable class members. *Id.* at § IV.B(1); Dkt. No. 142-2 at 2-3. To identify class members, the third-party settlement administrator obtained from Defendant the VINs of the Settlement Class Vehicles, matched the VINs to names and addresses of the last known owners and lessees via DMV records, and confirmed the addresses through the United States Postal Service's National Change of Address database. ASA at §§ IV.B(2)-(3); Dkt. No. 142-2 at 2-3. For any undeliverable notice packets, the third-party settlement administrator re-mailed the class notice using any forwarding addresses provided or, in the absence of a forwarding address, any address available via an advance address search. ASA at §§ IV.B(3); Dkt. No. 142-2 at 2-3. Additionally, the third-party settlement administrator established a website (including instructions on how to submit a claim; instructions on how to contact the administrator, Plaintiff's counsel, and/or Defense Counsel; pdfs of the Claim Form, Class Notice, Amended Settlement Agreement, and the Preliminary Approval Order among other key documents; and relevant deadlines) and a toll-free number. ASA at §§ IV.B(6)-(7); Dkt. No. 142-2 at 3-4.

**Service Award**: The named Plaintiff, John Chess, requests a service award of $5,000, as allowed by the Amended Settlement Agreement. Dkt. No. 139 at 16; ASA at § V.III.C(2).

**Attorneys' Fees and Costs**: Plaintiff's counsel requests $996,348.80 in attorneys' fees and expenses, as allowed by the Amended Settlement Agreement. *See* Dkt. No. 139 at 4, ASA at § V.III.C(1). Defendant does not oppose or object to Plaintiff's counsel's application, as the parties agreed. *See* ASA at § V.III.C(1)

## II.     ANALYSIS

### A.     Final Settlement Approval

#### i.     Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and

United States District Court
Northern District of California

1   (b).  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–1022 (9th Cir. 1998).  Because no facts that

2   would affect these requirements have changed since the Court preliminarily approved the class,

3   this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the

4   order granting preliminary approval.  *See* Dkt. No. 135 at 7-11.

5              **ii.     The Settlement**

6              "The claims, issues, or defenses of a certified class may be settled . . . only with the court's

7   approval."  Fed. R. Civ. P. 23(e).  "Adequate notice is critical to court approval of a class

8   settlement under Rule 23(e)."  *Hanlon,* 150 F.3d at 1025.  The Court may finally approve a class

9   settlement "only after a hearing and on finding that it is fair, reasonable, and adequate."  Fed. R.

10  Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San*

11  *Francisco,* 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed

12  settlement must be tailored to fulfill the objectives outlined above.  In other words, the court's

13  intrusion upon what is otherwise a private consensual agreement negotiated between the parties to

14  a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement

15  is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ").

16             **a.  Adequacy of Notice**

17             Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable

18  manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).

19  Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including

20  individual notice to all members who can be identified through reasonable effort."  The notice

21  must "clearly and concisely state in plain, easily understood language" the nature of the action, the

22  class definition, and the class members' right to exclude themselves from the class.  Fed. R. Civ.

23  P. 23(c)(2)(B).  Although Rule 23 requires that reasonable efforts be made to reach all class

24  members, it does not require that each class member actually receive notice.  *See Silber v. Mabon*,

25  18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable"

26  notice, not "actually received" notice).

27             The Court finds that the notice and notice plan previously approved by the Court was

28  implemented and complies with Rule 23(c)(2)(B).  *See* Dkt. No. 135 at 15-16; Dkt. No. 142 at 6-7;

United States District Court
Northern District of California

1    Dkt. No. 142-2 at 2-4.  Because the notice plan was carried out as preliminarily approved, this

2    order incorporates by reference the Court's prior evaluation of the adequacy of notice from the

3    order granting preliminary approval.  *See* Dkt. No. 135 at 15-16.  The Court finds that the parties

4    have sufficiently provided the best practicable notice to the Class Members.

5                        **b.  Fairness, Adequacy and Reasonableness**

6              To assess whether a proposed settlement comports with Rule 23(e), the Court "may

7    consider some or all" of the following factors:  (1) the strength of plaintiff's case; (2) the risk,

8    expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class

9    action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

10   completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the

11   presence of a governmental participant; and (8) the reaction of the class members to the proposed

12   settlement.  *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*,

13   150 F.3d at 1026.  "The relative degree of importance to be attached to any particular factor" is

14   case specific.  *Officers for Justice*, 688 F.2d at 625.

15                    **1.  Strength of Plaintiff's Case and Litigation Risk**

16             Approval of a class settlement is appropriate when plaintiffs must overcome significant

17   barriers to make their case.  *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D.

18   Cal. 2010).  Additionally, difficulties and risks in litigating weigh in favor of approving a class

19   settlement.  *Rodriguez*, 563 F.3d at 966.  "Generally, unless the settlement is clearly inadequate,

20   its acceptance and approval are preferable to lengthy and expensive litigation with uncertain

21   results."  *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D.

22   Cal. June 27, 2014) (quotations omitted).

23             The Court finds that the settlement is reasonable in light of the complexity of this litigation

24   and the substantial risk Plaintiff would face in litigating the case given the nature of the asserted

25   claims.  *See* Dkt. No. 142 at 16-18, *see also* Dkt. No. 143 at 3.  This case involves complex and

26   technical issues relating to the design and manufacture of DSG transmissions.  Defendant denies

27   Plaintiff's allegations, and argues that the subjective nature of the complaints and numerous

28   factors outside of Defendant's control (such as the manner in which a car is driven and a vehicle's

7

maintenance history) suggest that there is no malfunction or defect. *See* Dkt. No. 143 at 3; *see also* Dkt. No. 142 at 17. In order to prevail, Plaintiffs also would have to overcome Defendant's arguments that no warranties, express or implied, were breached; no statutes were violated; and some claims fall outside of the statute of limitations, among other defenses. *See* Dkt. No. 142 at 17. There is an appreciable chance that the result of further litigation would be that the Class Members receive no recovery at all. Moreover, litigation of complex automotive issues is often lengthy, as demonstrated by the three rounds of motions to dismiss already adjudicated in this case, and even a successful recovery following trial and appeal could be years away.

In reaching a settlement, Plaintiff has ensured at least some recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). These factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

## 2. Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. Certifying a class encompassing 11,733 Class Vehicles, with owners and lessees spread out across the nation with varying purchase/lease circumstances, car histories, and driving experiences presents complex issues that could undermine certification.[1] *See* Dkt. No. 142 at 18-19; *see also* Dkt. No. 143 at 4. Accordingly, this factor also weighs in favor of settlement.

## 3. Settlement Amount

The settlement benefit is another factor that weighs in favor of approval. The settlement benefit is the functional equivalent of an extended warranty for all Class Vehicles that more than doubles the vehicles' original warranties' time-limitation and almost doubles the original mileage limitation.[2] For those Settlement Class Members that already paid for a Covered Repair within 9 years or 90,000 miles of the vehicle's In-Service Date, Defendant will reimburse them for a

---

[1] Plaintiff notes that the number of Settlement Class Members is larger than the number of Class Vehicles because some vehicles have had multiple owners or lessees. Dkt. No. 142 at 15-16.
[2] The original new vehicle warranty was for 4 years or 50,000 miles. Dkt. No. 142 at 19.

1    covered percentage of the repair.  *See* Dkt. No. 142 at 8.[3]

2           Those Settlement Class Members who already incurred the cost of a Covered Repair were

3    required to submit a Claim by July 29, 2022.  Defendant reports that as of August 9, 2022, "the

4    estimated aggregate amount of the reimbursement claims submitted . . . totals $3,089,756.55,

5    representing 608 claims with an average amount claimed for reimbursement of $5,081.82 each."

6    Dkt. No. 143 at 15; *see also* Dkt. No. 142-2 (declaration by claims administrator reporting on

7    number of claims submitted as of July 26, 2022).[4]  This is not a final number, as the claims

8    administrator has not yet analyzed the claims for completeness and compliance with the

9    Settlement terms, but even assuming some number of claims may be rejected, the Settlement

10   Amount is a significant recovery for those who incurred the cost of a Covered Repair within the

11   age and mileage limitation.

12          The vast majority of class members will not receive any payment under this settlement.

13   But as further discussed below, the Court finds the settlement to be fair, adequate and reasonable

14   given the significant recovery available to those who paid for a Covered Repair within 9 years or

15   90,000 miles and the substantial risks of further litigation.  This factor therefore weighs in favor of

16   approval.

17                    **4.  Extent of Discovery Completed and Stage of Proceedings**

18          The Court finds that Plaintiff's counsel had sufficient information to make an informed

19   decision about the merits of the case.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459

20   (9th Cir. 2000).  The parties reached this settlement after nearly four years of litigation, including

21   multiple amended complaints and multiple motions to dismiss.  *See* Dkt. No. 139-5.  Plaintiff's

22   counsel reports that they conducted significant investigation of their own (including investigating

23   issues related to Defendant's representations, advertising, marketing, business practices, and

24   engineering decisions), interviewed multiple Class Members, and received substantial information

25   _____

26   [3] Although the settlement also results in an "Extended Warranty" for 9 years or 90,000 miles, Plaintiff's counsel acknowledged at the final fairness hearing that he is not aware of anyone who

27   still qualifies given the age and milage limits.  Plaintiff notes that reimbursement for past Covered Repairs is the "primary benefit" of the Settlement.  *See* Dkt. No. 142 at 10.

28   [4] On September 7, 2022, the parties informed the Court that Class Members had submitted additional claims, bringing the total number of claims to 617.

United States District Court
Northern District of California

1  from Defendant under the settlement and mediation privilege.  Dkt. No. 142 at 20; *see* Dkt. No.

2  139-5 ¶¶ 5-9; Dkt. No. 139-6 ¶ 8.  The Court finds that the parties received, examined, and

3  analyzed information, documents, and materials sufficient to allow them to assess the likelihood of

4  success on the merits.  This factor weighs in favor of approval.

### 5.  Experience and Views of Counsel

6        The Court next considers the experience and views of counsel.  Plaintiff's counsel has

7  substantial experience in automobile defect class actions and favors this settlement.  *See* Dkt. No.

8  139 Exhibits B-D.  The Court recognizes, however, that courts have diverged on the weight to

9  assign counsel's opinions.  *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8

10 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-*

11 *Hoon*, 716 F. Supp. 2d at 852 ("[T]his court is reluctant to put much stock in counsel's

12 pronouncements. . . .").  This factor's impact is therefore modest, but favors approval.

### 6.  Reaction of Class Members

14       Finally, the Court considers the reaction of the Class Members.  "[T]he absence of a large

15 number of objections to a proposed class action settlement raises a strong presumption that the

16 terms of a proposed class settlement action are favorable to the class members."  *Nat'l Rural*

17 *Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin*

18 *User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and

19 objections in comparison to class size is typically a factor that supports settlement approval.").

20       The class notice, which was served on over 30,000 Settlement Class Members in

21 accordance with the method approved by the Court, advised the Class of the requirements to

22 object or opt out of the settlement.   Seven individuals requested to be excluded from the

23 settlement, *see* Dkt. No. 142-2 Exh. D, and two individuals objected, *see* Dkt. Nos. 140, 141.

24       The first objector, Edward Havas, objects to the settlement because it "provides no actual

25 benefit to [him] and other similarly situated class members, even though [they] are affected by the

26 transmission defect."  Dkt. No. 140.  Mr. Havas reports that he owns a 2010 S5 Cabriolet with

27 over 90,000 miles on it, and that although he experiences the performance issues described in this

28 action he has not incurred repair expenses for the transmission because he "was told little could be

United States District Court
Northern District of California

United States District Court
Northern District of California

1    done to solve the issues, and that the very expensive repairs that might be attempted were unlikely

2    to fix the problem." *Id.* Mr. Havas also objects that the Extended Warranty will not benefit many

3    class members, as "by definition" the Settlement Class Vehicles are more than nine years past

4    their In-Service Dates. *Id.*

5          The second objector, Zack Sinemus, objects to the settlement because "for nearly all

6    Settlement Class Members who have not yet had Covered Repairs made, [there will be] no

7    material warranty extension." Dkt. No. 141 at 3. Mr. Sinemus reports that he worked as an Audi

8    car salesman from 2010 through 2012, and knew the Settlement Class Vehicles were prone to

9    rough shifting but thought that it was a "harmless cosmetic defect." *Id.* at 2. According to Mr.

10   Sinemus, he purchased a 2011 Audi S4 in 2017 when it had 63,694 miles, and the car now has

11   approximately 85,000 miles. Mr. Sinemus asserts that his car often enters "limp mode," in which

12   the engine does not respond to the gas pedal and it is not possible to accelerate, requiring an entire

13   transmission replacement. *Id.* at 2-3. Mr. Sinemus argues that "[a]pproving the proposed

14   Settlement rewards the Defendant for having denied the existence of a widespread mechanical

15   issue in the Settlement Class Vehicles" and that because the Extended Warranty only covers nine

16   years most Settlement Class Members who have not already paid out-of-pocket for a Covered

17   Repair will not benefit from this settlement. *See id.* at 3.

18         The Court understands the objectors' desire to receive a greater settlement benefit, but a

19   settlement is, in essence, a compromise that reflects the risk, expense, complexity and likely

20   duration of further protracted litigation. And the Court is charged not with ensuring each class

21   member receives the exact remedy they prefer, but that the settlement as a whole is fair,

22   reasonable, and adequate. *See Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of

23   compromise; the question we address is not whether the final product could be prettier, smarter or

24   snazzier, but whether it is fair, adequate and free from collusion.").

25         The Court recognizes that not all Settlement Class Members will receive repairs or cash in

26   this settlement. But given the prospect of protracted litigation and the serious risks that could

27   result in no recovery at all, a near doubling of the Settlement Class Vehicles' original warranties is

28   a fair and adequate recovery.

United States District Court
Northern District of California

1    As other courts have recognized, "[a]ge and mileage limitations are common in automotive

2    defect cases, and reflect manufacturers' strong arguments that vehicles ordinarily fail after a number

3    of years or miles due to wear and tear." *Seifi v. Mercedes-Benz USA, LLC*, Case No. 12-cv-05493,

4    2015 WL 12964340, at *2 (N.D. Cal. Aug. 18, 2015) (citations omitted); *see also Herremans v.*

5    *BMW of N.A., LLC*, 2016 WL 6780349 (C.D. Cal. November 28, 2016) (approving a settlement that

6    extended the warranty period for 2006-2012 BMW Mini-Coopers from 4 years or 50,000 miles to

7    7 years or 84,000 miles); *Zakskorn v. Am. Honda Motor Co., Inc.,* 2015 WL 3622990, at *5 (E.D.

8    Cal. June 9, 2015) (approving a settlement that reimbursed out-of-pocket expenses for 2006-2011

9    Honda Civics that were incurred by class members within the New Vehicle Limited Warranty Period

10   of 3 years or 36,000 miles). Defendant cannot be expected to warranty all transmission problems

11   in perpetuity when many factors can impair a vehicle's transmission performance. The Settlement

12   ameliorates the cost for those Settlement Class Members who may have experienced the alleged

13   defect and sought a repair within 9 years or 90,000 miles of the vehicle's in-service date. This is a

14   reasonable and objective standard meant to aim the settlement benefit at those most likely to have

15   experienced the alleged defect, as opposed to transmission problems due to other causes. And as

16   Defendant argues in its memorandum, reimbursing for Covered Repairs *performed* within 9 years

17   or 90,000 miles, as opposed to those Covered Repairs *identified* in that same period, is an industry

18   standard meant to avoid subjective, and possibly unverifiable, claims about when an issue first arose.

19   *See* Dkt. No. 143; *see also In re Toyota Motor Corp. Unintended Acceleration*, 754 F. Supp. 2d

20   1145, 1179 (C.D. Cal. 2010) (concluding that those plaintiffs who did not seek repairs for the alleged

21   latent, automobile defect within the warranty period could not pursue a claim for breach of express

22   warranty).

23   For these reasons, the Court **OVERRULES** the two objections. Although seven

24   individuals requested to be excluded from the Settlement, the Court does not find that a 0.02%

25   exclusion rate militates against approving the settlement.[5] The Court finds that this factor weighs

26

27   _____

     [5] Notice was mailed to 36,328 Settlement Class Members, 5,410 Notice Packets were returned as
     undeliverable, and 3,465 of the undeliverable Notice Packets were remailed to new addresses.
28   Assuming 34,383 Settlement Class Members received notice, 7 objections from those who
     received notice is approximately 0.02%.

in favor of approval.

**B.      Attorneys' Fees, Costs and Expenses, and Class Representative Enhancement Payment**

Plaintiff's counsel asks the Court to approve an award of $996,348.80 in attorneys' fees and $25,908.65 in costs.  Dkt. No. 139 at 7; Dkt. No. 148 at 2.[6]  Plaintiff's counsel also seeks a $5,000 incentive award for the Class Representative.  *Id.* at 16-17.

    **i.      Attorneys' Fees**

       **a.   Legal Standard**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  In a state law claim—like this one—state law also governs the calculation of attorneys' fees.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees.  *See Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th 1253, 1264 n.4 (2005) ("California courts may look to federal authority for guidance on matters involving class action procedures.").

"The two primary methods for determining reasonable fees in the class action settlement context are the 'lodestar/multiplier' method and the 'percentage of recovery' method."  *Wershba v. Apple Computers, Inc.*, 91 Cal. App. 4th 224, 254 (2001) (*overruled on other grounds by Hernandez v. Restoration Hardware, Inc.*, 4 Cal. 5th 260 (2018)).

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."  *In re Bluetooth*, 654 F.3d at 941 (citation omitted).  "[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation."  *Camacho v. Bridgeport Fin., Inc.*, 523

---

[6] Plaintiff's counsel originally requested an award of $1,050,000.00 in attorneys' fees.  Dkt. No. 139 at 7.  Due to technical issues, Plaintiff's counsel cannot access some timekeeper records, and seeks "a lower amount in fees than originally requested because the full hours worked cannot be substantiated at this time."  Dkt. No. 148 at 2.

F.3d 973, 979 (9th Cir. 2008) (quotation omitted).  Generally, "the relevant community is the forum in which the district court sits." *Id.* (citation omitted).  And typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  "[O]ther evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases." *Schuchardt v. Law Off. of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

Under the percentage-of-the-fund method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards.  *See, e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

"Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth*, 654 F.3d at 942.  To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations under one method against those under another method.  *Vizcaino*, 290 F.3d at 1050–51.

### b.  Analysis

Plaintiff's counsel asks the Court to approve an award of $996,348.80 in attorneys' fees.  Dkt. No. 148 at 2.  The Court finds this amount substantially reasonable, with a slight adjustment for the reason explained below.

Plaintiff's counsel's attorneys' fee request is the equivalent of their lodestar.[7]  *See Lowery*

---

[7] Despite initially representing that they were requesting a "reduced lodestar" and a "downward adjustment, also known as a negative multiplier," Plaintiff's counsel subsequently revised their fee request to reflect all hours Plaintiff's counsel could substantiate via timekeeper records.  *See* Dkt. No. 139 at 7-11; Dkt. No. 148.

United States District Court
Northern District of California

*v. Rhapsody Int'l, Inc.*, No. 16-cv-01135-JSW, 2021 WL 7448610, at *3 (N.D. Cal. Sept. 20, 2021) ("In a claims-made settlement, the lodestar method is typical.").  At the Court's request, Plaintiff's counsel submitted two supplemental filings identifying their lodestar and summarizing timekeepers' rates and hours worked.  According to these supplemental filings, Plaintiff's counsel worked 1,281.30 hours equating to $996,348.80 in fees.  *See* Dkt. Nos. 146, 148.  Timekeepers' hourly rates range from $1,100 for partners with over 30 years of experience to $550-800 for associates with multiple years of experience.  *See* Dkt. No. 139 at 14-16; Dkt. No. 139-5 ¶¶ 15-18; Dkt. No. 148.[8]  Requested hourly rates for staff and paralegals range from $150 to $250.  *See* Dkt. No. 148.  The Court finds Plaintiff's counsel's billing rates in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation.  *See, e.g., Carlotti v. ASUS Computer Int'l*, No. 18-cv-03369-DMR, 2020 WL 3414653, *5 (N.D. Cal. June 22, 2020) (finding hourly rates of $950 to $1025 for partners, $450 to $900 for other attorneys, and $225 to $275 for legal assistants to be reasonable); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. March 17, 2017) (finding rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals as reasonable).  Given the four years of litigation and multiple rounds of motions in this case, the Court finds the lodestar reasonable.

"Though the lodestar figure is 'presumptively reasonable,' the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, 'including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'"  *In re Bluetooth*, 654 F.3d at 941-42 (citations omitted).  The Court recognizes that Plaintiff's counsel litigated this case skillfully and professionally.  Over multiple years, Plaintiff's counsel has engaged in factual

---

[8] In the motion for attorneys' fees, Plaintiff's counsel lists John Bryson's rate as $550 per hour. Dkt. No. 139 at 15.  But in the supplemental filings, which serve as the basis for the $996,348.80 attorneys' fees request, Plaintiff's counsel lists John Bryson's rate as $575.00 an hour.  Dkt. No. 148 at 3.  No explanation for this difference is offered.  Based on Plaintiff's counsel's representation in its original motion for attorneys' fees, the Court finds that hours worked by John Bryson should be compensated at $550 an hour.  Plaintiff's counsel represents that Mr. John Bryson worked 152.6 hours, and the Court therefore reduces Plaintiff's attorneys' fee award by $3,815.00, resulting in a total fee award of $992,533.80.  *See* Dkt. No. 148 at 3.

United States District Court
Northern District of California

investigation, briefed three motions to dismiss, and participated in six months of negotiations.  *See* Dkt. No. 139 at 13-14; Dkt. No. 139-6 ¶ 8.  As reflected in the motion to dismiss briefing, this case presented complex issues regarding statutes of limitations, statutory interpretation, permissible remedies, and allegations of fraud.  *See, e.g.*, Dkt. Nos. 45, 56, 58, 61, 72, 78, 79, 91, 94, 96.  Choice-of-law issues, managing a nationwide class, proving the existence of the defect, and causation are additional issues that increased the litigation risk, and thus the risk of no fee recovery, in this case.  *See* Dkt. No. 139 at 6-7.  "Foremost among these considerations, however, is the benefit obtained for the class."  *In re Bluetooth*, 654 F.3d at 942.  Here, the Court finds that the result and benefit obtained for the class are fair, reasonable, and adequate, but unexceptional.  Assuming their claims are approved, approximately six hundred class members will receive a substantial payment, averaging approximately $5,000.  *See* Dkt. No. 149 at 2.  The vast majority of the class, however, as a practical matter will receive nothing at all.  For these reasons, the Court finds that essentially awarding Plaintiff's counsel their lodestar as requested, with no positive or negative multiplier, is reasonable.

Cross-checking the requested fees compared to the benefit being paid to the Class, the Court confirms that the requested fees do not raise cause for concern.  *Lowery*, 2021 WL 7448610, *8 (finding that although the Ninth Circuit has not set a bright-line rule whether a percentage-of-the-fund calculation in a claims-made settlement should be based on the total available funds or the claimed amount, the Ninth Circuit has noted that a district court cannot ignore the amount actually claimed).  Six hundred seventeen class members have made claims at an average of $5,081.82 requested reimbursement per claim.  Dkt. No. 149 at 2.  As of August 9, 2022, when only 608 claims had been submitted, the aggregate amount of reimbursement claims totaled $3,089,746.56.  Dkt. No. 143 at 15.

In light of the risks of litigation, the financial burden assumed by Plaintiffs' counsel, and the work invested, Plaintiff's counsel's request is substantially reasonable and the Court **GRANTS** attorneys' fees of $992,533.80. [9]

---

[9] In his objection to the settlement, Mr. Havas writes that he objects to the proposed settlement and "to the fees, expenses, and Settlement Class Representative service awards proposed in it."  Dkt.

United States District Court
Northern District of California

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### ii.    Costs and Expenses

"In a certified class action, the court may award . . . nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  The parties' Amended Settlement Agreement allows Plaintiff's counsel to apply "for a combined award of reasonable attorneys fees', costs, and expenses . . . to be paid by Defendant separate and apart from any benefits to the Settlement Class . . . in an amount up to, but not exceeding . . . One Million and Fifty Thousand Dollars and No Cents ($1,050,000.00)."  Dkt. No. 142-5 at 24.  Plaintiff's counsel requests reimbursement of $25,908.65 in litigation costs, which includes filing fees, expert fees, travel, and research costs.  *See* Dkt. No. 139 at 16, Dkt. No. 139-5 ¶ 20.  The Court finds that counsel's requested expenses are reasonable and allowed under the Amended Settlement Agreement, and the Court **GRANTS** costs and expenses of $25,908.65.

### iii.    Service Award

Lastly, Plaintiff's counsel requests a service award of $5,000 for the Class Representative. "Service awards as high as $5,000 are presumptively reasonable in this judicial district."  *See Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *12 (N.D. Cal. Apr. 19, 2021).  However, the Court shares the Ninth Circuit's concern that "if class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard."  *See Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003); *Radcliffe v. Experian Information Sols. Inc.*, 715 F.3d 1157, 1163–64 (9th Cir. 2013) (noting that the Ninth Circuit has "expressed disapproval of these incentive agreements" and that "in some cases incentive awards may be proper but . . . awarding them should not become routine practice").  The Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe*, 715 F.3d at 1165 (quotations omitted).  This is particularly true where "the proposed

---

No. 140 at 1.  The majority of Mr. Havas' objection notes his disagreement with the substance of the settlement, and he does not offer further detail on his objection to the requested fees, expenses, and award.  As explained, the Court finds the requested attorneys' fees, costs, and service award to be reasonable, and **OVERRULES** Mr. Havas's objection.

service fees greatly exceed the payments to absent class members." *Id.*

Plaintiff's counsel represents that Class Representative Chess invested significant time into this litigation. *See* Dkt. No. 139 at 17. According to Plaintiff's counsel he "consistently invested personal time to seek out and speak with Plaintiff's Counsel, search for relevant evidence, review and approve various documents for filing, respond to discovery, keep apprised of the progress of the litigation, prepare for mediation, evaluate the settlement proposals during and following mediation, and read through and discuss drafts of the Settlement Agreement before ultimately approving and executing the Agreement." Dkt. No. 139-5 ¶ 22. These representations are supported by Class Representative Chess's declaration, which states he spent about 35 hours on relevant factual and legal issues after becoming involved in the lawsuit. *See generally* Dkt. No. 146-1. Although not all class members will receive payment under the Settlement, those who will receive payment have an average claim size greater than the requested service award. The Court concludes that given the time invested by Class Representative and the circumstances of this case, the requested service award is justified and reasonable to compensate Class Representative for his efforts.

//
//
//
//
//
//
//
//
//
//
//
//
//

### III.    CONCLUSION

For the foregoing reasons it is hereby ordered that:

1.      Plaintiff's Motion for Final Approval of Class Action Settlement is hereby **GRANTED**.

2.      Plaintiff's counsel's Motion for Attorneys' Fees and Expenses is hereby **GRANTED IN PART AND DENIED IN PART**, as adjusted for the billing rate discrepancy described in footnote 8.

3.      The Court approves the settlement, including attorneys' fees in the amount of $992,533.80; costs in the amount of $25,908.65; and an incentive fee for the Named Plaintiff in the amount of $5,000.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the Amended Settlement Agreement.  The parties are further directed to file a short stipulated final judgment of two pages or less within 7 days from the date of this Order.  The judgment need not, and should not, repeat the analysis in this order.

**IT IS SO ORDERED.**

Dated:   9/12/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge